## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| STEWARD HEALTH CARE SYSTEM LLC, | ) | |
| *Plaintiff*, | ) | |
| | ) | Civ. No. _____ |
| v. | ) | |
| | ) | |
| SOUTHCOAST HEALTH SYSTEM, INC., | ) | JURY TRIAL REQUESTED |
| *Defendant*. | ) | |
| | ) | |

## <u>COMPLAINT</u>

## INTRODUCTION

1.      Plaintiff Steward Health Care System LLC ("Steward") brings this civil action against Defendant Southcoast Health System, Inc. ("Southcoast"), alleging antitrust and tort claims and seeking monetary damages and injunctive relief.

2.      The residents of Southeastern Massachusetts, a region comprised of the Greater Fall River and New Bedford Areas, suffer disproportionately high rates of cardiac illnesses and mortality from such illnesses.  Thus, the need for high-quality, affordable, comprehensive, cardiac care services in these communities is, quite literally, a matter of life or death.

3.      Presently, however, only two hospitals in Southeastern Massachusetts—Charlton Memorial Hospital in Fall River and St. Luke's Hospital in New Bedford—provide cardiac catheterization services, which are an important component of comprehensive cardiac care. Southcoast owns and operates both facilities, and as a result, Southcoast has a complete monopoly on these critical health care services, thereby limiting patient choice, increasing prices and reducing quality.

4.      In order to meet the growing cardiac care needs of the residents of Southeastern Massachusetts, Steward has proposed, and requested approval from the Massachusetts

Department of Public Health ("DPH"), to offer diagnostic cardiac catheterization services at Saint Anne's Hospital in Fall River, a member hospital of Steward's Accountable Care Organization ("ACO").

5.      Unfortunately, in an unlawful effort to maintain its complete monopoly over cardiac catheterization services in Southeastern Massachusetts, and to the detriment of the residents of Southeastern Massachusetts, Southcoast has sought to prevent, or at least delay, Steward from opening its proposed center at Saint Anne's Hospital, by engaging in improper exclusionary conduct, including filing a "sham" lawsuit against Steward and DPH in state court, defaming Steward in the media, and interfering with business relationships between Steward and third-parties.

6.      Through its monopolistic conduct, Southcoast has revealed that its top priority concerning cardiac care services in Southeastern Massachusetts is not promoting high-quality, affordable services for patients in these medically underserved communities but, instead, squelching any potential business competition from Steward and maximizing its own profits.

**PARTIES**

7.      Plaintiff Steward Health Care System LLC is a community-based ACO that offers a wide range of health care services to patients in Massachusetts.  Steward is incorporated in Delaware, headquartered in Massachusetts, and maintains its principal place of business at 500 Boylston Street, 5th Floor, Boston, Massachusetts, 02116.  Steward operates nine hospitals with ten campuses in Massachusetts, including Saint Anne's Hospital in Fall River.

8.      Defendant Southcoast Health System, Inc. is also a community-based ACO, and it offers a variety of health care services to patients in Southeastern Massachusetts and parts of Rhode Island.  Southcoast is incorporated as a public charity in Massachusetts and maintains its

B4492269.1

principal place of business at 101 Page Street, New Bedford, Massachusetts, 02740. Southcoast

operates three community hospitals, as "the Southcoast Hospitals Group," including Charlton

Memorial Hospital in Fall River and St. Luke's Hospital in New Bedford.

## JURISDICTION AND VENUE

9.     This Court has subject matter jurisdiction, pursuant to 28 U.S.C. §§ 1331 and

1337(a), over claims arising under federal law, specifically Section 2 of the Sherman Act, 15

U.S.C. § 2, and Section 4 of the Clayton Act, 15 U.S.C. § 15, and also supplemental jurisdiction,

pursuant to 28 U.S.C. § 1367, over claims arising under state statutory law, including Section 5

of the Massachusetts Antitrust Act, M.G.L. c. 93, § 5, and state common law.

10.     Southcoast is engaged in interstate commerce and activities substantially affecting

interstate commerce. For example, as advertised on its website, Southcoast provides health care

services, including cardiac services, to patients "throughout Southeastern Massachusetts and East

Bay, Rhode Island." Southcoast also recently announced that it has entered into a letter of intent

to explore an affiliation with Care New England Health Systems of Rhode Island. Moreover, the

wrongful conduct by Southcoast alleged in this action substantially affects interstate commerce.

11.     This Court has personal jurisdiction over Southcoast because it resides in

Massachusetts, maintains its principal place of business in Massachusetts, and has at all relevant

times systematically and continuously transacted a substantial portion of its business in

Massachusetts.

12.     Venue is proper in this Court, pursuant to 28 U.S.C. § 1391(b) and 15 U.S.C.

§ 5(a), because Steward and Southcoast maintain their principal places of business in the District

of Massachusetts and because a substantial part of the acts or omissions by Southcoast giving

rise to the claims by Steward occurred in the District of Massachusetts.

- 3 -

## FACTS

**Steward's Model for High-Quality, Affordable Health Care**

13.     Steward is an ACO established to offer high-quality, affordable health care in community-based settings in order to improve patient outcomes and lower health care costs, and it owns and operates a health care system of integrated community-based hospitals and physicians that serve patients in local communities.

14.     Steward engages in a care management system and coordinates provider contracting arrangements, such as the global payment contracts envisioned by 2012 Mass. Acts 224.  The global payment contracts encourage and incentivize coordination of patient care to increase communication among providers in order to improve care and lower costs.

15.     Through the ACO, Steward is able to offer comprehensive health care services across the continuum of care, from the patients' homes to the physicians' offices and hospitals as well as post-acute care settings.

16.     By increasing care coordination among providers and delivering more local services, Steward has improved the quality and reduced the costs of health care for its patients.

17.     A fundamental part of Steward's model is the revitalization of community hospitals.  To lower health care costs, the ACO encourages physicians to provide high-quality care at community hospitals, such as Saint Anne's Hospital, rather than refer patients to more expensive academic medical centers in larger cities, such as Boston and Providence.

18.     By making substantial investments in technology and infrastructure, Steward has transformed community hospitals throughout Massachusetts into high-quality affordable alternatives to major academic medical centers and demonstrated the benefits of its ACO.

- 4 -

B4492269.1

**The Need for Cardiac Catheterization Services
in Southeastern Massachusetts**

19.     In Southeastern Massachusetts, a region that includes the Greater Fall River and
New Bedford Areas, residents suffer disproportionately high rates of cardiac illness.

20.     According to public health data, the incidence of cardiac-related illness in
Southeastern Massachusetts is almost twice that of Massachusetts as a whole.

21.     Indeed, the Greater Fall River Area has the highest rates of heart disease and
mortality due to heart disease in Massachusetts.

22.     The leading cause of hospitalization in the Greater Fall River Area is for cardiac-
related services and treatments.

23.     Cardiac catheterization, an out-patient procedure in which a physician inserts a
catheter through a major blood vessel into the heart to perform diagnostic tests and/or provide
therapeutic treatments (e.g., coronary angioplasty), is a critical component of comprehensive
cardiac care.

24.     Despite the considerable need for cardiac care in Southeastern Massachusetts,
there are currently only two facilities that offer cardiac catheterization services in the region:
Charlton Memorial Hospital in Fall River and St. Luke's Hospital in New Bedford, which are
both owned and operated by Southcoast.

25.     Accordingly, for these important procedures, if Steward's patients in Fall River
and New Bedford want to receive services locally, they are forced to leave their ACO, which
they have chosen for convenience, affordability and quality.

26.     Overall, the ratio of hospitals that offer cardiac catheterization services per
100,000 residents is 0.79 in the Greater Boston Area (where there are 10 such hospitals), but the

- 5 -

ratio per 100,000 residents is 0.037 in Southeastern Massachusetts (where there are only 2 facilities).

27.     Put another way, as a function of their respective populations, there are more than twenty times as many cardiac catheterization centers in the metropolitan Boston area than in the Fall River and New Bedford areas combined, where the rate of cardiac disease is far higher.

**Steward's Plan to Provide Cardiac
Catheterization Services at Saint Anne's Hospital**

28.     To provide high-quality, affordable cardiac care to patients in the underserved region of Southeastern Massachusetts, Steward sought approval from DPH to provide diagnostic cardiac catheterization services at Saint Anne's Hospital in Fall River.

29.     Specifically, Steward established, and proposed to DPH, a plan to transfer the cardiac catheterization service license within its ACO from an existing but under-utilized facility at the Quincy Medical Center to a new and much-needed catheterization center at Saint Anne's Hospital.

30.     Although DPH had established, on May 5, 2008, a limited moratorium on new cardiac catheterization centers within 30 minutes of a hospital that provided such services, *see* Circular Letter DHCQ 08-05-486 ("Moratorium Circular") (attached as Exhibit A), DPH created, on July 14, 2014,  an additional exception to that moratorium for ACOs, like Steward, that sought to transfer cardiac catheterization services within their networks, *see* Circular Letter DHCQ 14-6-617 ("ACO Exception Circular") (attached as Exhibit B).

31.     On August 21, 2014, and pursuant to the ACO Exception Circular, Steward submitted to DPH a notice of its intent to transfer the existing cardiac catheterization services from Quincy Medical Center to Saint Anne's Hospital.

32.     In its "intent to transfer" notice to DPH, Steward stated:

- 6 -

> As part of its commitment to deliver integrated care in community-based settings, Steward is dedicated to the provision of high-quality cardiovascular services.  Steward is seeking to offer diagnostic cardiac catheterization services at Saint Anne's Hospital, a licensed hospital located at 795 Middle Street in Fall River, in order to enhance its cardiac service offerings in the greater Fall River community.  In order to do so, the Steward ACO will transfer the existing cardiac catheterization service license at Quincy Medical Center, located a[t] 114 Whitwell Street in Quincy.  Quincy Medical Center's cardiac catheterization service is underperforming and the transfer of location will allow cardiac catheterization services to remain within the Steward ACO.  The transfer of the existing license to Saint Anne's Hospital will allow Steward to better meet the needs of its patient population with a demonstrated demand for such services and to ensure that patients have access to high-quality, comprehensive cardiac services.

33.     In 2012, 2013 and 2014, the cardiac catheterization center at Quincy Medical Center had failed to meet DPH's minimum volume requirements for diagnostic procedures (300 per year), and the number of procedures was actually decreasing from year to year.

34.     In contrast, Steward projected that, beginning in its very first year, the proposed cardiac catheterization center at Saint Anne's Hospital would satisfy, and likely exceed, DPH's minimum volume requirements, and that physicians at that new facility would perform nearly 400 diagnostic procedures per year.

35.     Rather than continue to operate an under-utilized center in Quincy, Steward decided to provide those same cardiac services at a new center in Fall River, where there was greater patient need for them.

36.     On December 26, 2014, Steward ceased business operations at Quincy Medical Center and closed the hospital.

37.     During the closure process, Steward submitted a request to DPH that "its license to operate a cardiac catheterization service at [Quincy Medical Center] be preserved notwithstanding the closure of the Hospital's facility," because "[s]ubject to regulatory

B4492269.1

approval," and pursuant to the ACO Exception Circular, "Steward intends to relocate such cardiac catheterization service to Steward St. Anne's Hospital Corporation in Fall River."

38.     Then, on January 20, 2015, under the new leadership of Governor Baker, DPH issued a memorandum that suspended the ACO Exception Circular pending a thorough review of that guidance "in the context of best practices, national guidelines, patient outcomes, safety and quality for cardiac catheterization."  DPH "expect[ed] to conduct its review" for four to six months and, at the conclusion of that process, "bring[] recommendations to the Public Health Council for input and guidance."

39.     Consistent with its memorandum, DPH conducted a thorough review of the ACO Exception Circular, and based on that assessment, on April 28, 2015, DPH issued an updated memorandum that immediately revoked its prior memorandum and reinstated the ACO Exception Circular with no changes.

40.     On May 13, 2015, senior representatives of DPH, including the Director of Health Care Safety and Quality, the Director of Health Care Integration, and the Deputy General Counsel, made presentations to the Massachusetts Public Health Council ("PHC") regarding cardiac catheterization services.

41.     During that open meeting, DPH explained that the proposal from Steward to transfer its cardiac catheterization services from Quincy Medical Center to Saint Anne's Hospital was still "under review," and DPH also made clear that "[t]he licensing component would not come back to the Public Health Council as it would go through the Bureau of Health Care Safety and Quality."

- 8 -

42.     On July 24, 2015, to proceed with the transfer of its cardiac catheterization services from Quincy to Fall River, Steward submitted to DPH its plans to renovate the existing vascular lab at Saint Anne's Hospital.

43.     On September 11, 2015, after Saint Anne's Hospital satisfied all of the regulatory requirements, DPH approved Steward's renovation plans for its proposed cardiac catheterization center at Saint Anne's Hospital.

44.     After receiving this approval, Steward submitted its license application to DPH which included extensive documents to certify that the proposed cardiac catheterization center at Saint Anne's Hospital would comply with DPH standards.

45.     On October 5 and 15, 2015, Steward submitted supplements to its application to DPH which included additional documents to demonstrate that the proposed cardiac catheterization center at Saint Anne's Hospital was prepared to open and provide cardiac catheterization services in Fall River.

46.     Steward has also made the facility at Saint Anne's Hospital available to DPH for an on-site inspection.

47.     As of this filing, Steward has not yet started to offer diagnostic services at its proposed cardiac catheterization center at Saint Anne's Hospital.

**Southcoast's Monopoly on the Relevant Markets for Cardiac Catheterization Services in Southeastern Massachusetts**

*The Relevant Product Market*

48.     The relevant product market at issue is the market for cardiac catheterization services, including diagnostic testing.

49.     Cardiac catheterization services offered at a particular hospital can be readily substituted, from the patient's perspective, for services offered at a different hospital.

B4492269.1

50.     Indeed, Southcoast claims to operate "state-of-the-art cath labs" at Charlton Memorial Hospital and St. Luke's Hospital that "offer heart patients the same level of advanced diagnostic facilities available in Boston or Providence."

51.     In attempting to prevent, or at least delay, Steward from opening its proposed cardiac catheterization center at Saint Anne's Hospital, Southcoast has projected, in its written submissions to DPH, that a significant percentage of patients who currently use Southcoast's facilities for cardiac catheterization services would, instead, use Steward's facility.

52.     If Steward opens its own cardiac catheterization center, Steward's patients would be able to receive services from their own doctors in a more convenient, less expensive, high-quality setting and within the ACO that they have already chosen for a range of health care services.  In this way, the proposed cardiac catheterization center at Saint Anne's Hospital would lower health care costs and improve the quality of cardiac care services.

53.     Pursuant to filings that the Steward and Southcoast ACOs have made with the federal government, the Total Medical Expense Per-Member-Per-Month costs for Fall River residents are much greater at Southcoast than at Steward.  Likewise, according to these filings, patients gave the Steward ACO greater quality scores than patients gave the Southcoast ACO.

*The Relevant Geographic Market*

54.     The relevant geographic market at issue is Southeastern Massachusetts, a health care market that includes the Greater Fall River and New Bedford Areas and is sometimes known as the "Southcoast Region" of Massachusetts.

55.     The Dartmouth Atlas of Health Care recognizes the Greater Fall River and New Bedford Areas as "Health Services Areas," local health care markets for hospital care based on

collections of ZIP codes whose residents receive most of their hospitalizations from the hospitals in those areas.

56.    In addition, the Health Policy Commission identifies this market, comprised of the Greater Fall River and New Bedford Areas, as representing two of the 15 major medical regions in Massachusetts, based on patterns of patient travel for in-patient care.

*Southcoast's Complete Monopoly*

57.    Charlton Memorial Hospital in Fall River, which is owned and operated by Southcoast, has a full-service cardiac catheterization center, and it offers diagnostic tests and therapeutic treatments, including cardiac angioplasty, for patients with cardiac illnesses.

58.    St. Luke's Hospital in New Bedford, which is also owned and operated by Southcoast, has a cardiac catheterization center, and it offers diagnostic tests in that facility.

59.    Presently, no other hospitals or health care providers in Southeastern Massachusetts provide cardiac catheterization services.

60.    In the relevant geographic market of Southeastern Massachusetts, Southcoast has a complete monopoly over cardiac catheterization services, as it provides 100 percent of those services.

61.    The closest cardiac catheterization centers that offer comparable services to patients in Southeastern Massachusetts are the centers at Brockton Hospital in Brockton, South Shore Hospital in Weymouth, and at hospitals in Newport and Providence, Rhode Island.

**Southcoast's Unlawful Conduct to Maintain
Its Monopoly Through Sham Litigation**

62.    In a wrongful effort to prevent, or at least delay, Steward from opening its proposed cardiac catheterization center at Saint Anne's Hospital, and thereby unlawfully

maintain its complete monopoly over cardiac catheterization services in Southeastern

Massachusetts, Southcoast has brought a "sham" lawsuit against Steward and DPH.

63.     On October 16, 2015, Southcoast filed a civil action in Suffolk Superior Court

against DPH, its Commissioner Monica Bharel M.D., Saint Anne's Hospital and Steward,

seeking declaratory and injunctive relief.  *See Southcoast Hospital Group, Inc. v. the*

*Massachusetts Department of Public Health ("DPH"), Monica Bharel, M.D., Steward Saint*

*Anne's Hospital Corporation, and Steward Health Care System, LLC*, Civ. Action SUCV-2015-

03139-D.

64.     Southcoast has sought, among other things, a declaration that "DPH may not

approve, and Steward St. Anne's may not establish and operate, a cardiac catheterization service

at St. Anne's hospital pursuant to the [ACO Exception] Circular."  Southcoast Compl. ¶ 7.

65.     Southcoast has also sought, among other things, a preliminary injunction, during

the pendency of its lawsuit, to enjoin "Steward St. Anne's from operating a cardiac

catheterization service at St. Anne's."  Southcoast Compl. ¶ 8.

66.     This "sham" lawsuit by Southcoast is objectively baseless for several reasons,

including but not limited to the following:

a.      Southcoast lacks standing to challenge any decision by DPH to permit

Steward to transfer, pursuant to the ACO Exception Circular, its cardiac

catheterization services from the closed facility at Quincy Medical Center

to a renovated center at Saint Anne's Hospital;

b.      There is no actual controversy between Southcoast and Steward, because

as of this filing, Steward has yet not opened its proposed center or started

to offer cardiac catheterization services at Saint Anne's Hospital;

    c.       The underlying challenge by Southcoast lacks any merit because DPH acted in accordance with the law in revising its sub-regulatory guidance concerning cardiac catheterization centers—Circular Letter DHCQ 08-05-486 established a moratorium on new cardiac catheterization centers, and Circular Letter DHCQ 14-4-617 lawfully and appropriately created an exception for ACOs to that moratorium; and

    d.       The request by Southcoast for preliminary and permanent injunctive relief is improper because, if Southcoast could prove any damages, in the form of reduced profits to its own cardiac catheterization centers, as a result of any breach of duty, violation of contract or other legal wrong by Steward (as opposed to mere economic competition from Steward), Southcoast could seek to recover such economic damages.

67.    As its pleading makes clear, however, Southcoast filed its lawsuit against DPH and Steward with the subjective motivation to stop, or at least delay, any entry by Steward into the market for cardiac catheterization services in Southeastern Massachusetts.

68.    Indeed, the unlawful purpose of the state court proceeding is for Southcoast to maintain its complete monopoly, maximize its profits, and prevent any competition by Steward—all at the expense of providing high-quality, affordable health care and patient choice for the residents of Southeastern Massachusetts, who desperately need cardiac services and care.

69.    According to Southcoast's submission to the Health Policy Commission, Southcoast's commercially insured cardiology program generated a 31.9% profit margin in 2013.

70.     In an October 16, 2015 letter to Southcoast employees, Southcoast President and CEO Keith Hovan noted, "An additional cardiac catheterization lab in the region would significantly threaten St. Luke's cardiac catheterization volume."

71.     On December 17, 2015, the Suffolk Superior Court (MacLeod, J.), denied the motion by Southcoast for preliminary injunctive relief against Steward and DPH, finding that Southcoast "failed to demonstrate a likelihood of success on the merits of its claims" against Steward and DPH, because there are "legitimate questions" concerning "[Southcoast]'s standing" and "the appropriateness of this Court's intruding into a matter affecting public policy that is within the exclusive domain of DPH."  (Attached as Exhibit C).

72.     The state court also found that Southcoast's motion for preliminary injunctive relief against Steward and DPH lacked merit because Southcoast "failed to demonstrate that any harm it may suffer cannot be repaired or adequately compensated should it ultimately attain success on its claims."

73.     Finally, the state court found that, "[t]o the extent that . . . the public interest is implicated, . . . the public interest is better served by denial of a preliminary injunction," so that Steward can open its new center at Saint Anne's Hospital and provide cardiac catheterization services to patients within the ACO.

74.     Nevertheless, Southcoast has made clear, in public statements about the denial of its motion for a preliminary injunction, that it fully intends to proceed with its sham lawsuit against Steward and DPH.

75.     Southcoast's filing, and continued pursuit, of its sham lawsuit, is a waste of assets that, by law, should be dedicated to Southcoast's charitable mission.

**Southcoast's Defamation of Steward's Business and Conduct
Regarding Its Proposed Cardiac Catheterization Center**

76.     In a further unlawful effort to protect its complete monopoly over cardiac catheterization services in Southeastern Massachusetts, Southcoast has also defamed Steward in connection with its proposed catheterization center at Saint Anne's Hospital.

77.     On November 10, 2015, Southcoast's Chief Executive Officer Keith Hovan published a "Guest Opinion" column in *The Herald News*, titled "With cardiac cath lab arrangement, no reason to fix what isn't broken."  (Attached as Exhibit D.)

78.     Hovan's column included a number of defamatory and false statements.

79.     In his column, and on behalf of Southcoast, Hovan stated, "Steward is seeking state approval to spend millions of dollars to establish a catheterization center at Saint Anne's Hospital in Fall River *without Public Health Council approval or a public process*."  (Emphasis added.)

80.     The assertion by Southcoast that Steward has acted "without Public Health Council approval" was false.

81.     As Southcoast and Hovan knew, Steward requested approval from DPH, pursuant to the ACO Exception Circular, to transfer its cardiac catheterization services from the closed facility at Quincy Medical Center to the newly renovated vascular lab at Saint Anne's Hospital.

82.     The PHC plays no role in that transfer process, which is a licensing matter for DPH, and accordingly, no "approval" from PHC is required.

83.     In fact, the Deputy General Counsel of DPH explained, at an open meeting of the PHC which representatives of Southcoast attended, that approval of cardiac catheterization services at Saint Anne's Hospital is a "licensing issue" within the jurisdiction of DPH, not PHC.

- 15 -

84.     The Deputy General Counsel further explained that Steward would need approval from the PHC only if it wanted to provide cardiac catheterization services in a newly constructed "shell space" on the campus of Saint Anne's Hospital, but Steward has not pursued that plan.

85.     Nevertheless, through its defamatory statements, Southcoast has falsely suggested to the public that Steward has acted without required approval from the PHC.

86.     In addition, the assertion by Southcoast that Steward has sought to open its catheterization center "without . . . a public process" was also false.

87.     As Southcoast and Hovan knew, Steward has submitted, and DPH has approved, detailed plans for its proposed catheterization center at Saint Anne's Hospital, and Steward has also made its new facility available for on-site inspection by DPH.

88.     The entire process by Steward of transferring its cardiac catheterization services from Quincy Medical Center to Saint Anne's Hospital has been done with the knowledge, participation and approval of DPH, the public regulator responsible for overseeing these activities and licensing hospital services.

89.     Nevertheless, through its defamatory statements in the media, Southcoast has falsely suggested to the public that Steward has secretly schemed to open its proposed cardiac catheterization center at Saint Anne's Hospital without appropriate oversight and approval from DPH or the PHC.

90.     In his column, and on behalf of Southcoast, Hovan also referred to John Polanowicz, a senior Steward executive, and stated, "[i]t was a former Steward hospital president—who was appointed Secretary of Health and Human Services in 2013, and has since returned to Steward as a senior executive—who *played a key role* in creating a special exception" for ACOs to the moratorium on new cardiac catheterization centers, and "[r]ecords

- 16 -

show that the then-Secretary *was instrumentally involved* in developing a significant rule change *directly beneficial to Steward*."  (Emphasis added.)

91.     The assertion by Southcoast that Polanowicz "played a key role" and "was instrumentally involved" in approving the ACO Exception Circular was false.

92.     The ACO Exception Circular was reinstated with no changes after a thorough review by the Baker Administration, well after Mr. Polanowicz's tenure as Secretary ended at the conclusion of the Patrick Administration.

93.     In addition, Mr. Polanowicz recused himself from involvement in any matter related to Steward in August 2014, and he appropriately filed a disclosure statement as required by the Massachusetts State Ethics Law, M.G.L. c. 268A.

94.     Furthermore, Mr. Polanowicz ended his tenure as Secretary in January 2015, and it was nine months later in September 2015 that DPH approved the renovation plans for the proposed cardiac catheterization center at Saint Anne's Hospital and reviewed whether the center met industry standards.

95.     Likewise, the assertion that the ACO Exception Circular was directly beneficial to Steward in particular was false.

96.     As Southcoast and Hovan knew, the ACO Exception Circular applies to all 19 ACOs in Massachusetts, including Southcoast.

97.     Nevertheless, through its defamatory statements in the media, Southcoast has falsely suggested that, through Polanowicz, Steward has manipulated the regulations regarding cardiac catheterization centers for the unfair and exclusive benefit of Steward itself.

98.     Moreover, on May 14, 2015, Southcoast's Chief Financial Officer Linda Bodenmann was quoted in an article in *The Boston Globe*, titled "State to rewrite rules on cardiac procedure."  (Attached as Exhibit E.)

99.     In the article, and on behalf of Southcoast, Bodenmann stated Southcoast's "significant concerns . . . regarding the process [for approving Steward's cardiac catheterization center] and *Steward's attempts to circumvent existing regulation.*"  (Emphasis added.)

100.    The assertion by Southcoast that Steward has attempted to "circumvent existing regulations" concerning its proposed cardiac catheterization center, or any other regulations, was false.

101.    As Southcoast and Bodenmann knew, Steward has at all times complied with all applicable regulations for its catheterization center, and it has not attempted to circumvent any regulations.

102.    Nevertheless, through its defamatory statements in the media, Southcoast has falsely suggested that Steward does not comply with health care regulations, a damning accusation that harms Steward's reputation as a major health care system that complies with applicable laws and regulations.

### CAUSES OF ACTION

### Count I
### (Monopolizing the Market for Cardiac Catheterization Services in Southeastern Massachusetts in Violation of 15 U.S.C. § 2)

103.    Steward re-alleges and incorporates by reference paragraphs 1 to 102 above.

104.    15 U.S.C. § 2 prohibits "monopoliz[ing] or attempt[ing] to monopolize, or combin[ing] or conspir[ing] with any other person or persons to monopolize any part of the trade or commerce among the several States, or with foreign nations."

- 18 -

B4492269.1

105.    The relevant product market at issue is the market for cardiac catheterization services, including diagnostic services.

106.    The relevant geographic market at issue is Southeastern Massachusetts, a region comprised of the Greater Fall River and New Bedford Areas.

107.    Southcoast has a complete monopoly, and exercises complete monopoly power, over cardiac catheterization services in the Southeastern Massachusetts.

108.    In order to unlawfully maintain its monopoly, Southcoast has engaged in exclusionary conduct directed at Steward, including but not limited to engaging in sham litigation to prevent, or at least delay, Steward from opening its proposed cardiac catheterization center at Saint Anne's Hospital, and defaming Steward and its executives in connection with their efforts to open that new center.

109.    By engaging in wrongful exclusionary conduct to maintain its monopoly over cardiac catheterization services in the Southeastern Massachusetts, Southcoast has violated Section 2 of the Sherman Act.

110.    As a direct and proximate result of the violation of Section 2 of the Sherman Act by Southcoast, Steward has suffered, and will continue to suffer, damages to its business and property in an amount to be determined at trial.

### Count II
### (Monopolizing the Market for Cardiac Catheterization Services in Southeastern Massachusetts in Violation of M.G.L. c. 93, §5)

111.    Steward re-alleges and incorporates by reference paragraphs 1 to 110 above.

112.    M.G.L. c. 93, § 5 states that "[i]t shall be unlawful for any person or persons to monopolize, or attempt to monopolize or combine or conspire with any other person or persons to monopolize any part of trade or commerce in the commonwealth."

- 19 -

113.    The relevant product market at issue is the market for cardiac catheterization services, including diagnostic services.

114.    The relevant geographic market at issue is Southeastern Massachusetts, a region comprised of the Greater Fall River and New Bedford Areas.

115.    Southcoast has a complete monopoly, and exercises complete monopoly power, over cardiac catheterization services in the Southeastern Massachusetts.

116.    In order to unlawfully maintain its monopoly, Southcoast has engaged in exclusionary conduct directed at Steward, including but not limited to engaging in sham litigation to prevent, or at least delay, Steward from opening its proposed cardiac catheterization center at Saint Anne's Hospital, and defaming Steward and its executives in connection with their efforts to open that new center.

117.    Southcoast has engaged in this exclusionary conduct against Steward with the malicious intent to injure Steward.

118.    By engaging in wrongful exclusionary conduct to maintain its monopoly over cardiac catheterization services in the Southeastern Massachusetts, Southcoast has violated Section 5 of the Massachusetts Antitrust Act.

119.    As a direct and proximate result of the violation of Section 5 of the Massachusetts Antitrust Act by Southcoast, Steward has suffered, and will continue to suffer, damages to its business and property in an amount to be determined at trial.

### Count III
**(Defamation)**

120.    Steward re-alleges and incorporates by reference paragraphs 1 to 119 above.

121.    Southcoast has published statements in the media about Steward and its proposed cardiac catheterization center at Saint Anne's Hospital.  Specifically, Southcoast has claimed:

a.  "Steward is seeking state approval to spend millions of dollars to establish a catheterization center at Saint Anne's Hospital in Fall River *without Public Health Council approval or a public process*."  (Emphasis added.)

b.  "It was a former Steward hospital president—who was appointed Secretary of Health and Human Services in 2013, and has since returned to Steward as a senior executive—who *played a key role* in creating a special exception" for ACOs to the moratorium on new cardiac catheterization centers, and "[r]ecords show that the then-Secretary *was instrumentally involved* in developing a significant rule change directly benefit to Steward."  (Emphasis added.)

c.  "*Steward [had] attempt[ed] to circumvent existing regulation*" in connection with its new cardiac catheterization center at Saint Anne's Hospital.  (Emphasis added.)

122.  These statements by Southcoast were defamatory and false, and they discredited Steward and harmed its reputation as a health care provider that complies in good faith with applicable laws and regulations, that appropriately engages public processes concerning its facilities and services and that provides high-quality affordable care for its patients.

123.  Southcoast knew, or reasonably should have known, that its statements about Steward were defamatory and false.

124.  As a result of the defamation by Southcoast, Steward has suffered, and will continue to suffer, damages to its business and property in an amount to be determined at trial.

B4492269.1

**Count IV**
**(Tortious Interference with Advantage Business Relations)**

125.    Steward re-alleges and incorporates by reference paragraphs 1 to 124 above.

126.    At all relevant times, Southcoast knew about the advantageous business relationships between Steward and various third-parties, including physicians, patients and insurers, in connection with the proposed cardiac catheterization center at Saint Anne's Hospital.

127.    Southcoast has intentionally interfered with those advantageous business relationship by engaging in sham litigation to prevent, or at least delay, Steward from opening a new cardiac catheterization center at Saint Anne's Hospital, and defaming Steward and its executives in connection with their efforts to open that new center.

128.    As a result of the tortious interference by Southcoast, Steward has suffered, and will continue to suffer, damages to its business and property in an amount to be determined at trial.

**JURY TRIAL DEMAND**

129.    Steward demands a jury trial on all issues so triable.

**PRAYER FOR RELIEF**

WHEREFORE, Steward prays that this Court:

a.      Enter judgment for Steward on all counts of this Complaint;

b.      Award Steward damages in an amount to be proven at trial, with damages for the violations of Section 2 of the Sherman Act, 15 U.S.C. § 2, and Section 5 of the Massachusetts Antitrust Act, M.G.L. c. 93, § 5, to be trebled with interest;

c.      Order that Southcoast immediately and voluntarily dismiss its "sham" civil action in Suffolk Superior Court against Steward and DPH, captioned *Southcoast Hospital Group, Inc. v. the Massachusetts Department of Public Health ("DPH"), Monica Bharel, M.D., Steward*

- 22 -

B4492269.1

*Saint Anne's Hospital Corporation, and Steward Health Care System, LLC*, Civ. Action SUCV-2015-03139-D;

  c.   Award Steward the costs of this action, including its attorneys' fees; and

  d.   Award Steward such other and further relief as the Court deems just and proper.

        Respectfully submitted,

        STEWARD HEALTH CARE SYSTEM LLC

        By its attorneys,

        */s/ Daniel N. Marx*
        Daniel N. Marx (BBO#674523)
        Kevin C. Conroy (BBO#644894)
        Jeremy W. Meisinger (BBO#688283)
        FOLEY HOAG LLP
        155 Seaport Boulevard
        Boston, MA  02210
        Tel: (617) 832-1000
        Fax: (617) 832-7000
        dmarx@foleyhoag.com

Dated: December 21, 2015

B4492269.1