# EXHIBIT 17



December 11, 2014



DONOGHUE
BARRETT
& SINGAL

<u>Via Email and Hand Delivery – Return Receipt Requested</u>

Deborah Allwes, Director
Bureau of Health Care Safety and Quality
Department of Public Health
99 Chauncy Street, 2nd Floor
Boston, MA 02111

Re:  <u>Quincy Medical Center, A Steward Family Hospital, Inc. – Cardiac Catheterization</u>

Dear Ms. Allwes:

As you know, our office represents Quincy Medical Center, A Steward Family Hospital, Inc. ("QMC") and Steward Health Care System LLC ("Steward"). Steward respectfully requests that the license to operate a cardiac catheterization service at QMC be preserved notwithstanding the anticipated closure of QMC. Steward intends to relocate such cardiac catheterization service to Steward St. Anne's Hospital Corporation ("SAH"). As you may be aware, attached hereto, please find a copy of Steward's correspondence to the Department of Public Health ("DPH") dated August 21, 2014, which details its plan to relocate the QMC cardiac catheterization service to SAH consistent with the requirements of the July 14, 2014 circular letter DHCQ14-6-617. In addition, at present, Steward has also submitted a Determination of Need ('DoN") relating to the matter. The DoN application, relating only to the location for said lab is now pending approval with DPH. Therefore, we are seeking DPH confirmation that the transfer of the QMC cardiac catheterization service to SAH is effective subject to only location and without regard to the proposed closure of QMC.

Thank you for your attention to this matter. Your confirmation is appreciated. Please contact me if you have any questions.

Sincerely,

Andrew Levine

Enclosure

cc:    M. Biondiolillo, M.D., DPH
       C. Balulescu, Esq., DPH
       J. Maher, Esq.
       N. Hibble, Esq.
       K. Whelan
       T. O'Brien, DPH
       B. Plovnick, DoN

Donoghue Barrett & Singal
One Beacon Street, Suite 1320
Boston, MA 02108–3106
T 617.598.6700
F 617.722.0276
www.dbslawfirm.com

340800.1

# EXHIBIT 18

**Allwes, Deborah (DPH)**

| | |
|---|---|
| **From:** | Andrew Levine <ALevine@dbslawfirm.com> |
| **Sent:** | Friday, December 26, 2014 1:53 PM |
| **To:** | Allwes, Deborah (DPH) |
| **Cc:** | Nelson, Lauren (DPH); Palmeri, Gail (DPH) |
| **Subject:** | Re: Cardiac Cath Right to operate preseved post closure of QMC |

Hi Deborah. I just wanted to check on this. Any feedback.?  Andy

Sent from my iPhone

On Dec 24, 2014, at 5:36 AM, Allwes, Deborah (DPH) <deborah.allwes@state.ma.us> wrote:

> Andy, I will be reviewing this today and discussing with legal on Friday.
>
> I will update you on Friday regarding the status of your request at that time.
>
> Thank you Andy,
>
> Deborah
>
> Deborah S. Allwes, BS, BSN, RN, MPH
> Director, Bureau of Health Care Safety and Quality
> MA Department of Public Health
> 617-753-8100
>
> On Dec 23, 2014, at 10:02 AM, Andrew Levine <ALevine@dbslawfirm.com> wrote:
>
>> Good morning Lauren:
>>
>> I hope you are well. I am following up on this request regarding the cardiac cath service at Quincy. As the correspondence indicates, we are requesting the following:
>>
>> confirmation from DPH that the transfer of the QMC cardiac catheterization service to St Anne's is effective subject to location only and without regard to the proposed closure of QMC.
>>
>> With the planned closure of QMC it is critical that this understanding be confirmed as soon as possible.
>>
>> Thank you.  Andy



**Andrew Levine, Esq.**

One Beacon Street
Suite 1320
Boston, MA 02108-3106
T 617-598-6700
F 617-722-0276
alevine@dbslawfirm.com

77

**Allwes, Deborah (DPH)**

| | |
|---|---|
| **From:** | Allwes, Deborah (DPH) |
| **Sent:** | Monday, December 29, 2014 7:26 PM |
| **To:** | Andrew Levine |
| **Cc:** | Nelson, Lauren (DPH); Palmeri, Gail (DPH); Balulescu, Carol (DPH) |
| **Subject:** | RE: Cardiac Cath Right to operate preseved post closure of QMC |

Andy, as of now we do not have an update as this is still under review. As soon as a determination has been made I will let you know.

Thank you Andy,

Deborah

Deborah S. Allwes, BS, BSN, MPH
Director of Bureau of Health Care Safety and Quality
Massachusetts Department of Public Health

---

**From:** Andrew Levine [ALevine@dbslawfirm.com]
**Sent:** Monday, December 29, 2014 7:15 PM
**To:** Allwes, Deborah (DPH)
**Cc:** Nelson, Lauren (DPH); Palmeri, Gail (DPH); Balulescu, Carol (DPH)
**Subject:** Re: Cardiac Cath Right to operate preseved post closure of QMC

Dear Deborah. I just wanted to check on this. Any feedback? I have early meeting with Steward  tomorrow.   Andy
Sent from my iPhone

On Dec 24, 2014, at 5:36 AM, Allwes, Deborah (DPH) <deborah.allwes@state.ma.us> wrote:

> Andy, I will be reviewing this today and discussing with legal on Friday.
>
> I will update you on Friday regarding the status of your request at that time.
>
> Thank you Andy,
>
> Deborah
>
> Deborah S. Allwes, BS, BSN, RN, MPH
> Director, Bureau of Health Care Safety and Quality
> MA Department of Public Health
> 617-753-8100
>
> On Dec 23, 2014, at 10:02 AM, Andrew Levine <ALevine@dbslawfirm.com> wrote:
>
> > Good morning Lauren:
> >
> > I hope you are well. I am following up on this request regarding the cardiac cath service
> > at Quincy. As the correspondence indicates, we are requesting the following:

*confirmation from DPH that the transfer of the QMC cardiac catheterization service to St Anne's is effective subject to location only and without regard to the proposed closure of QMC.*

With the planned closure of QMC it is critical that this understanding be confirmed as soon as possible.

Thank you.  Andy



Andrew Levine, Esq.

One Beacon Street
Suite 1320
Boston, MA 02108-3106
T 617-598-6700
F 617-722-0276
alevine@dbslawfirm.com
www.dbslawfirm.com

---

This electronic message and any files attached hereto contain confidential or privileged information from the law firm of Donoghue, Barrett, and Singal. This information is intended to be for the use of the individuals or entities to whom it is addressed only. If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of the contents of this information is strictly prohibited. If you have received this transmission in error, please notify the sender by reply email and destroy all copies of this message. To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.

<mime-attachment>

<mime-attachment>

# EXHIBIT 19

**Allwes, Deborah (DPH)**

| | |
|---|---|
| **From:** | Terry Healy <THealy@dbslawfirm.com> on behalf of Andrew Levine <ALevine@dbslawfirm.com> |
| **Sent:** | Tuesday, December 30, 2014 3:14 PM |
| **To:** | Lohnes, Sherman (DPH) |
| **Cc:** | Allwes, Deborah (DPH); Balulescu, Carol (DPH); DiNatale, Paul (DPH); Faysal, Patrice (DPH); Kinkead, Lizbeth (DMH); O'Brien, Tom (DPH); Youmans, Jay (DPH); Andrew Levine; Andrew Ferrer |
| **Subject:** | Quincy Medical Center, A Steward Family Hospital, Inc. - Facility Closure |
| **Attachments:** | Ltr-S. Lohnes, Esq. - Quincy Medical Center, A Steward Family Hospital, Inc. - Facility Closure - 12-30-14.pdf |

Please advise if you have any questions regarding the attached letter.  Thank you.



This electronic message and any files attached hereto contain confidential or privileged information from the law firm of Donoghue, Barrett, and Singal. This information is intended to be for the use of the individuals or entities to whom it is addressed only. If you are not the intended recipient, be aware that any disclosure, copying, distribution or use of the contents of this information is strictly prohibited. If you have received this transmission in error, please notify the sender by reply email and destroy all copies of this message. To ensure compliance with requirements imposed by the IRS, we inform you that any U.S. federal tax advice contained in this communication (including any attachments) is not intended or written to be used, and cannot be used, for the purpose of (i) avoiding penalties under the Internal Revenue Code or (ii) promoting, marketing or recommending to another party any transaction or matter addressed herein.



December 30, 2014

Via Email and Hand Delivery – Return Receipt Requested

Sherman Lohnes, Esq.
Assistant Director – Compliance Unit
Bureau of Health Care Safety and Quality
Department of Public Health
99 Chauncy Street, 2nd Floor
Boston, MA 02111

Re:     Quincy Medical Center, A Steward Family Hospital, Inc. – Facility Closure

Dear Attorney Lohnes:

We write on behalf of Steward Health Care System LLC ("Steward") and the licensee, Quincy Medical Center, A Steward Family Hospital, Inc. ("Hospital"), regarding the closure of its business operations at 114 Whitwell Street, Quincy, MA 02169. The Hospital submitted a notice to the Department of Public Health ("Department") on November 6, 2014 regarding its closure. A public hearing was also conducted by the Department on December 2, 2014. Thereafter, the Department issued written approval of the Hospital's closure plan on December 23, 2014.

The Hospital ceased all business operations at its facility on December 26, 2014. Pursuant to the Department's requirements, the Hospital submits the enclosed Facility Closure Form with a copy of the Hospital's license. (Attachments 1 and 2, respectively). Accordingly, the Hospital has now completed the closure process. Former patients of the Hospital may contact Steward Carney Hospital, Inc. in Dorchester, MA regarding their prior medical records.

In addition, as set further in its letter of December 11, 2014 (Attachment 3), Steward reiterates its request that its license to operate a cardiac catheterization service at the Hospital be preserved notwithstanding the closure of the Hospital's facility. Subject to regulatory approval, Steward intends to relocate such cardiac catheterization service to Steward St. Anne's Hospital Corporation ("SAH") in Fall River, MA and has submitted an application to the Department, which is pending approval. Consequently, the closure of the Hospital should not affect Steward's license to operate the cardiac catheterization service under these circumstances. Also attached hereto, please find a copy of Steward's correspondence to the Department dated August 21, 2014 (Attachment 4), which details its request to relocate the cardiac catheterization service to SAH.

Donoghue Barrett & Singal
One Beacon Street, Suite 1320
Boston, MA 02108–3106
T  617.598.6700
F  617.722.0276
www.dbslawfirm.com

342038

Sherman Lohnes, Esq.
Assistant Director – Compliance Unit
Bureau of Health Care Safety and Quality
December 30, 2014
Page 2



On behalf of Steward and the Hospital, we thank you for your patience and understanding in these matters and throughout this process. Please do not hesitate to contact me if you have any questions or require additional information.

Sincerely,

Andrew S. Levine

Enclosures

cc:     D. Allwes, Director, DPH-BHCSQ
        C. Balulescu, Esq., DPH-OGC
        P. DiNatale, DPH-DHCFLC
        P. Faysal, DPH-DHCFLC
        L. Kinkead, DMH
        T. O'Brien, Esq., DPH-OGC
        N. Hibble, Esq.
        K. Whelan

342038

# Attachment/Exhibit

## 1



## FACILITY CLOSURE FORM

*Dear Facility/Agency Administrator:  Please complete this form at the time of closure, and return it to:  Closure Coordinator, DPH-Division of Health Care Quality, 99 Chauncy Street, 11ᵗʰ Floor, Boston, MA 02111.  If this is a full facility closure, please return your license with this form.*

*The Department will review your closure form, notify interested agencies, and update your licensure and/or certification status with us as appropriate.*

### A.  CLOSING FACILITY/AGENCY INFORMATION:

1.  Quincy Medical Center, A Steward Family Hospital, Inc.
    Closing Facility or Agency Name

2.  114 Whitwell Street, Quincy, MA 02169
    Closing Facility or Agency Address (Street, City/Town, ZIP)

3.  Donna Rubinate, President
    Administrator's/Closure Coordinator's Name

4.  508-427-2833            5.  Donna.Rubinate@steward.org
    Telephone Number            Email Address

6.  DPH License/Registration number  2 1 5 1

7.  Is this a satellite, branch, campus or other subset of a licensed/certified provider?

        No X; Yes ___. If "Yes", License/Registration number of parent: __ __ __ __

8.  Steward Health Care System LLC, 500 Boylston Street, Boston, MA 02116
    Parent Agency/Facility Address (Street, City/Town, ZIP)

### B.  CLOSURE INFORMATION:

1.  Effective Date of Closure: December 26, 2014

2.  Have all services been closed:  No ___; Yes X.  Specify services closed if partial closure:  As set forth in its letter dated December 11, 2014, the Hospital has requested that the right to operate its cardiac catheterization service be preserved notwithstanding the closure of the Hospital.  Hospital has a pending filing before the Department for the right to transfer the right to operate cardiac catheterization to St. Anne's Hospital, pursuant

3.  Has all signage been removed:  No ___; Yes X.                to Circular Letter: DHCQ14-6-617.

### C.  LICENSE INFORMATION (Please return your license to DPH by mail):

  X   Original license will be returned, no new license needed (full closure).

_____  Revised license requested (closure of services, or branch/satellites).

Page 1 of 2

D.  MEDICAL RECORD STORAGE INFORMATION:

1.  Medical records will be stored for 20 years (or otherwise required by law) years at:

2.  Steward Carney Hospital, Inc. (Carney Hospital),
    2100 Dorchester Avenue, Dorchester, MA 02124
    Medical Records Storage Site Address (Street, City/Town, State, ZIP)

3.  Caroline Morgan, Medical Records Department
    Contact Person's Name/Title

4.  2100 Dorchester Avenue, Dorchester, MA 02124
    Contact Person's Address (Street, City/Town, State, ZIP)

5.  (617) 296-4000
    Contact Person's Telephone Number

E.  MEDICATION DISPOSAL INFORMATION:

1.  Were medications stored on-site by closing facility/agency:  No __; Yes X.

2.  If yes: Date of disposal:  December 26, 2014

3.  Method of disposal: Medications were disposed of consistent with the letter sent to the DPH Drug Control Program on or about 12/15/14. This process was approved by said Program.

4.  Persons Responsible: Mariann O'Brien, R. Ph., Director of Pharmacy

F.  RESIDENT/PATIENT NOTIFICATION INFORMATION:

1.  Were residents/patients notified of closure:  No __; Yes X.

2.  Method of notification: By mailing, public hearing, and website notice.

G.  RESIDENT/PATIENT ROSTER AND MDS:

1.  NURSING HOME, REST HOME OR HOSPICE:  Attach resident roster indicating resident/patient name and transfer information.

2.  NURSING HOME ONLY Were discharge MDS assessments successfully processed for all applicable nursing home residents? Yes___ No___  (If no, please contact Andrew Sinatra, DPH MDS Automation Coordinator, at 617-753-8188, to provide explanation for lack of MDS discharges.)

SIGNED UNDER THE PENALTIES OF PERJURY, this __30th__ day of

December_____, 20 14

_____
Administrator or Closure Coordinator's Signature

Donna Rubinate, President

_____
Administrator or Closure Coordinator's Printed Name and Title

## Attachment/Exhibit

### 2



# The Commonwealth of Massachusetts
## DEPARTMENT OF PUBLIC HEALTH
### HOSPITAL LICENSE

In accordance with the provisions of the General Laws, Chapter 111, Sections 51-56 inclusive, and the regulations promulgated, thereunder, a license is hereby granted to:

**Quincy Medical Center, A Steward Family Hospital, Inc.**

Name of Applicant

for the maintenance of _____ **Quincy Medical Center** _____ at ____ **114 Whitwell Street, Quincy, MA 02169**

and satellites as listed below. The license is valid until _____ **September 30, 2015** _____ subject to revocation or

suspension, either wholly or with respect to a specific service or specific services, or a part or parts thereof.

|                                | SERVICES LICENSED TO DELIVER INDICATED BY AN X | BEDS |
|--------------------------------|:---:|:---:|
| **HOSPITAL SERVICES**          |     |     |
| Medical/Surgical               |  X  | 156 |
| Intensive Care Unit            |  X  | 14  |
| Pediatric Service              |  X  | 4   |
| Psychiatric Service            |  X  | 22  |
|                                |     |     |
| TOTAL NUMBER OF BEDS           |     | 196 |
| Ambulatory Care Services       |  X  |     |
| Emergency Services             |  X  |     |
| Primary Stroke Services        |  X  |     |
| Cardiac Catheterization Services |  X  |     |
| Medical Control Service        |  X  |     |

*Chery Bartlett*

Commissioner of Public Health

October 1, 2013

Date Issued

LICENSE No _____ 2151 _____

# Attachment/Exhibit

## 3



December 11, 2014



<u>Via Email and Hand Delivery – Return Receipt Requested</u>

Deborah Allwes, Director
Bureau of Health Care Safety and Quality
Department of Public Health
99 Chauncy Street, 2nd Floor
Boston, MA 02111

Re:   <u>Quincy Medical Center, A Steward Family Hospital, Inc. – Cardiac Catheterization</u>

Dear Ms. Allwes:

As you know, our office represents Quincy Medical Center, A Steward Family Hospital, Inc. ("QMC") and Steward Health Care System LLC ("Steward"). Steward respectfully requests that the license to operate a cardiac catheterization service at QMC be preserved notwithstanding the anticipated closure of QMC. Steward intends to relocate such cardiac catheterization service to Steward St. Anne's Hospital Corporation ("SAH"). As you may be aware, attached hereto, please find a copy of Steward's correspondence to the Department of Public Health ("DPH") dated August 21, 2014, which details its plan to relocate the QMC cardiac catheterization service to SAH consistent with the requirements of the July 14, 2014 circular letter DHCQ14-6-617. In addition, at present, Steward has also submitted a Determination of Need ('DoN") relating to the matter. The DoN application, relating only to the location for said lab is now pending approval with DPH. Therefore, we are seeking DPH confirmation that the transfer of the QMC cardiac catheterization service to SAH is effective subject to only location and without regard to the proposed closure of QMC.

Thank you for your attention to this matter. Your confirmation is appreciated. Please contact me if you have any questions.

Sincerely,

Andrew Levine

Enclosure

cc:   M. Biondiolillo, M.D., DPH
      C. Balulescu, Esq., DPH
      J. Maher, Esq.
      N. Hibble, Esq.
      K. Whelan
      T. O'Brien, DPH
      B. Plovnick, DoN

Donoghue Barrett & Singal
One Beacon Street, Suite 1320
Boston, MA 02108–3106
T 617.598.6700
F 617.722.0276
www.dbslawfirm.com

340800.1

**Attachment/Exhibit**

<u>4</u>



August 21, 2014



DONOGHUE
BARRETT
& SINGAL

<u>Via Email and Hand Delivery -- Return Receipt Requested</u>

Deborah Allwes, Director
Bureau of Health Care Safety and Quality
Department of Public Health
99 Chauncy Street
Boston, MA 02111

Re:   <u>Notice of Intent to Transfer Cardiac Catheterization Service</u>

Dear Ms. Allwes:

We write on behalf of Steward Health Care System ("Steward"), a recognized Pioneer Accountable Care Organization ("ACO"). Steward hereby submits this notice to the Department of Public Health ("Department") of its intent to transfer an existing cardiac catheterization service license to establish a new diagnostic cardiac catheterization service at another hospital within its ACO. Steward seeks to transfer the cardiac catheterization service currently operated by Quincy Medical Center, A Steward Family Hospital, Inc. ("Quincy Medical Center") to Steward St. Anne's Hospital Corporation ("St. Anne's Hospital") to establish a new diagnostic cardiac catheterization service. This notice is filed in accordance with the requirements of Circular Letter DHCQ 14-6-617 issued by the Department on July 14, 2014 ("Circular Letter").

The Steward ACO was established to offer high-quality medical care in community-based settings to lower health care costs and improve patient outcomes. Steward engages in a care management system and coordinates provider contracting arrangements, such as the global payment contracts envisioned by Chapter 224 of the Acts of 2012. The global payment contracts encourage and incentivize coordination of patient care to increase communication among providers in order to improve care and lower costs. The Steward ACO is comprised of nine (9) acute care hospitals, one (1) rehabilitation hospital, and multiple physician practices. Through the ACO, Steward is able to offer comprehensive health care services to meet patient needs.

As part of its commitment to deliver integrated care in community-based settings, Steward is dedicated to the provision of high quality cardiovascular services. Steward is seeking to offer diagnostic cardiac catheterization services at St. Anne's Hospital, a licensed hospital located at 795 Middle Street in Fall River, in order to enhance its cardiac service offerings in the greater Fall River community. In order to do so, the Steward ACO will transfer the existing cardiac catheterization service license at Quincy Medical Center, located a 114 Whitwell Street in Quincy. Quincy Medical Center's cardiac catheterization service is underperforming and the transfer of location will allow cardiac catheterization services to remain within the Steward ACO. The transfer of the existing license to St. Anne's Hospital will allow Steward to better meet the needs of its patient population with a demonstrated demand for such services and to ensure that patients have access to high quality, comprehensive cardiac services.

Donoghue Barrett & Singal
One Beacon Street, Suite 1320
Boston, MA 02108–3106
T 617.598.6700
F 617.722.0276
www.dbslawfirm.com



Deborah Allwes, Director
Bureau of Health Care Safety and Quality
Department of Public Health
August 21, 2014
Page 2



Request

This notice is filed in accordance with the requirements of the Circular Letter to transfer Quincy Medical Center's cardiac catheterization service to St. Anne's Hospital. The transfer will allow Steward to implement a cardiac catheterization program at a location where the need for such services exists within the Steward ACO. In furtherance of this request, Steward offers the following information per the requirements of the Circular Letter:

1.  In developing the foregoing request, Steward identified that diagnostic cardiac catheterization volume at Quincy Medical Center did not meet the Department's minimum requirements. The volume for Quincy Medical Center's service is below the threshold and has continued to decrease over the past few years. Quincy Medical Center's historical volume is reflected in the following chart:

**Quincy Medical Center Diagnostic Cardiac
Catheterization Historical Procedure Volume**

| Year | Procedures |
|---|---|
| 2012 | 65 |
| 2013 | 47 |
| Year-to-date 2014* | 15 |

*Through May 2014

As the chart shows, Quincy Medical Center's volume is well below the required 300 procedures per year. Due to the low number of procedures performed, Steward will transfer its license to St. Anne's Hospital to establish a service in accordance with the requirements of the Circular Letter. The license for Quincy Medical Center will be transferred to St. Anne's Hospital as part of the Steward ACO's plans to provide comprehensive cardiac care services to St. Anne's Hospital's service area.

2.  St. Anne's Hospital developed projections for the first four years of operations for the new cardiac catheterization to be opened at its facility. The majority of patients will be referred through St. Anne's Hospital physicians or by physician practices affiliated with the Steward ACO. Volume projections will increase gradually, in keeping with the growth projected for a new service that is becoming fully operational. St. Anne's Hospital volume projections are set forth in the following chart:



Deborah Allwes, Director
Bureau of Health Care Safety and Quality
Department of Public Health
August 21, 2014
Page 3



**Saint Anne's Hospital Diagnostic Cardiac
Catheterization Procedure Volume Projections**

| Year | Projected Procedures |
|------|---------------------|
| Year 1 | 379 |
| Year 2 | 377 |
| Year 3 | 385 |
| Year 4 | 393 |

As indicated above, St. Anne's Hospital assumed growth for the diagnostic cardiac catheterization service. For the first year of operations, St. Anne's Hospital assumes an average growth rate of approximately 2% for the cardiac catheterization service. This projected growth accounts for the time related for the program to ramp up as well as for the Steward ACO's continued growth. Steward seeks to reduce leakage and outmigration over time through the use of St. Anne's Hospital's cardiac catheterization service. St. Anne's Hospital will experience greater demand for its services as it achieves these goals.

3.  As part of the development of projections for the proposed cardiac catheterization service at St. Anne's Hospital, both the hospital and Steward examined where the projected patient population currently receives cardiac catheterization services. It was identified that many of St. Anne's Hospital patients are currently in need of cardiac catheterization and are often forced to travel out of the Steward network just to receive such care. Steward determined that a majority of patient volume will come from the prevention of outmigration to Boston and Providence, where many patients currently seek care. Offering cardiac catheterization services at St. Anne's Hospital will allow the hospital's patients to remain within the Steward network, decreasing fragmentation of care. This will also yield savings as anticipated by Ch. 224 through the appropriate provision of care within the local community, avoiding unnecessary use of high cost academic medical centers.. The major source of patients, however, will be those attributable to outmigration.

4.  The Steward ACO was designed to provide a broad scope of health care services, ensuring that patients utilize services within the ACO. Goals for the Steward ACO include providing high quality health care in lower cost, community based settings as well as coordinating care delivery to reduce overall healthcare costs. Steward implemented a highly integrated community care model in the greater Fall River service area that includes St. Anne's Hospital. One key service required for such a model is comprehensive cardiovascular services. Steward lacked the ability to provide cardiac catheterization services as part of this care model due to the Department's moratorium on the establishment of new providers of cardiac catheterization services.



Deborah Allwes, Director
Bureau of Health Care Safety and Quality
Department of Public Health
August 21, 2014
Page 4



Steward has continued to develop the community care model in place within St. Anne's Hospital service area. By December 2013, Steward was caring for approximately 350,000 residents of this area. Since Steward assumed ownership of St. Anne's Hospital in 2010, the number of affiliated providers has greatly increased. Steward has also increased the number of patients to whom it provides care through its Steward Medical Group which serves as a significant source of patients. A key care demographic is cardiovascular care, which is essential to a fully integrated care model. Part of a successful cardiovascular service includes diagnostic cardiac catheterization, an important diagnostic tool. Without this service, physicians must disrupt care to send patients to other local providers of cardiac catheterization services.

Through its ACO affiliations, Steward will ensure St. Anne's Hospital cardiac catheterization service will be fully utilized. Prima CARE, Hawthorn Medical Associates, Steward Medical Group, and Steward Health Care Network ("SHCN") affiliated physicians experience sufficient patient demand for diagnostic cardiac catheterization services. These physicians now will have the option to have patients treated within the ACO network at St. Anne's Hospital as a local provider of services in the Fall River area. Patients currently have to be referred to non-Steward ACO local providers or seek care at hospitals in Boston and Providence. Offering diagnostic cardiac catheterization services will allow the Hospital and Steward to retain these patients who are forced to leave the ACO to receive care. This will have the added result of reducing leakage and outmigration of patients to other providers.

5.  Steward will submit a plan to address any other facility within its ACO that does not meet current minimum volume requirements per 105 C.M.R. 130.900-130.982. If any other facility within Steward that provides cardiac catheterization service has not met or does not meet the Department's volume requirements for two (2) years in a row, that hospital will develop a plan to meet volume requirements within one (1) year. Such plan will be subject to the Department's approval. Any plan will be in addition to meeting the In-house Evaluation of Quality standards set forth in 105 C.M.R. 130.965.

6.  Steward will provide the Department with information on St. Anne's Hospital diagnostic cardiac catheterization procedure volume data quarterly for the first twenty-four months of operations. Upon the expiration of the initial twenty-four months of operations, St. Anne's Hospital will monitor its compliance with the minimum volume requirements for such a service. If St. Anne's Hospital does not meet the minimum volume requirements, quarterly quality assessment and performance improvement program report findings, recommended actions, progress on implementation and supporting data will be submitted

Deborah Allwes, Director
Bureau of Health Care Safety and Quality
Department of Public Health
August 21, 2014
Page 5



to the Department. These reports will continue to be provided until the Department notifies St. Anne's Hospital and Steward to discontinue the submission of the reports.

Based on the foregoing reasons, Steward respectfully requests the Department's consent to transfer Quincy Medical Center's diagnostic cardiac catheterization service to St. Anne's Hospital license. The establishment of a diagnostic cardiac catheterization services at St. Anne's Hospital will allow for clinical alignment of local physicians, the hospital, and a fully integrated network for cardiovascular care. Patients will benefit from the availability of providers who can collaborate within the ACO on best practices for care and quality outcomes. Offering cardiac catheterization services at St. Anne's Hospital will represent a local, high quality, lower cost option for patients. This request complies with the requirements set forth the Circular Letter and Chapter 224 of the Acts of 2012.

We thank you for your consideration of this request. Please do not hesitate to contact Nicole Sexton, Esq. or me if you have any questions or require additional information.

Sincerely,

Andrew S. Levine

cc:     N. Hibble, Esq.
        C. Labins
        J. Maher, Jr, Esq.
        P. Murphy
        K. Whelan
        N. Sexton

# EXHIBIT 20



# The Commonwealth of Massachusetts
## Executive Office of Health and Human Services
## Department of Public Health
### 250 Washington Street, Boston, MA 02108-4619

CHARLES D. BAKER
Governor

KARYN E. POLITO
Lieutenant Governor

MARYLOU SUDDERS
Secretary

EILEEN M. SULLIVAN
Acting Commissioner

Tel: 617-624-6000
www.mass.gov/dph

TO:          Hospital CEO/President

FROM:        Deborah Allwes, BS, BSN, RN, MPH
             Director, Bureau of Healthcare Safety and Quality

RE:          Memo on Cardiac Catheterization

DATE:        January 20, 2015

The Department of Public Health (the Department) issued a Circular Letter, **DHCQ 14-6-617,** to hospitals in July of 2014 related to the provision of hospital-based cardiac catheterization services.

At this time, the entirety of circular letter DHCQ 14-6-617 ("the July Circular Letter") has been suspended, including the guidance on volume minimums and the sanctioned transfer of cardiac catheterization facilities within Accountable Care Organization (ACO) networks. The Department has suspended the July Circular Letter to allow the Department to re-evaluate the July Circular Letter guidance in the context of best practices, national guidelines, patient outcomes, safety and quality for cardiac catheterization.  The Department expects to conduct its review during the next four to six months.  At the conclusion of the Department's review, the Department plans to bring recommendations to the Public Health Council for input and guidance.

Please note:  the suspension of the July Circular Letter does not in any way limit or alter any other DPH rules or guidance applicable to cardiac catheterization, including, but not limited to, the Minimum Workload Requirements contained in 105 CMR 130.935.

Questions about this letter should be directed to: Gail Palmeri at
Gail.Palmeri@massmail.state.ma.us.



# EXHIBIT 21



# The Commonwealth of Massachusetts
### Executive Office of Health and Human Services
### Department of Public Health
### 99 Chauncy Street, Boston, MA 02111

CHARLES D. BAKER
Governor

KARYN E. POLITO
Lieutenant Governor

MARYLOU SUDDERS
Secretary

MONICA BHAREL, MD, MPH
Commissioner

April 2, 2015

<u>VIA EMAIL</u>

Andrew S. Levine, Esq.
Donoghue Barrett & Singal
One Beacon Street, Suite 1320
Boston, MA 02108-3106
ALevine@dbslawfirm.com

Howard Hawkins
Southcoast Health System
363 Highland Avenue
Fall River, MA 02720
Hawkinsh@southcoast.org

Re: Steward St. Anne's Hospital
Corporation
Request for Significant Change to Approved
DoN Project Number 5-3C08

Dear Messrs. Levine and Hawkins:

At their meeting of December 10, 2014, then Commissioner Cheryl Bartlett and the Public
Health Council, acting together as the Department, voted pursuant to M.G.L. c.111, § 25C and
105 CMR 100.520 to take preliminary action on the request for a significant change to the
approved Determination of Need ("DoN") referenced above pending further staff review and for
a period not to exceed six months.

On behalf of the Department, we regret the delay that has ensued in issuing this formal request
for information to you.

In response to questions raised by Public Health Council members, I am writing to request
specific items from Steward St. Anne's Hospital Corporation ("St. Anne's" or "Applicant") and
from Southcoast Health System/Southcoast Hospitals Group ("Southcoast" or "Interested
Party").

A. <u>Questions for both St. Anne's and Southcoast:</u>

1. Please provide updated procedure volume for CY 2014 for diagnostic cardiac
   catheterization procedures. For St. Anne's, please update projection that was based
   upon annualized CY 2014 data.

    2. Please provide a description of services being provided or planned to address the higher than average incidence of coronary heart disease in the service area. If available, please provide evidence of the efficacy of the services.

B. Questions for St. Anne's:

    1. What portion of the CY 2014 and projected cardiac catheterization volume is represented by Steward Medicare ACO patients? For patients not in the Medicare ACO, please identify the number/percentage covered by other global payment contracts.

    2. What is the estimated cost differential in providing diagnostic cardiac catheterization within the Steward system as proposed versus maintaining the status quo?

    3. If the diagnostic service opens at St. Anne's, where will patients needing interventional cardiac services be referred?

    4. How does the closure of Quincy Medical Center affect the need or potential patient population at St. Anne's?

C. Questions for Southcoast:

    1. What adverse consequences to the public health of the service area, if any, may result if the proposed service at St. Anne's is approved?

    2. What adverse consequences would Southcoast suffer if the proposed service at St. Anne's is approved, specifically, what would be the effect on Southcoast's existing cardiac catheterization services?

To facilitate timely resolution of the DoN pending amendment request and achieve the Department's goal of presenting to Public Health Council on May 13, 2015, please expedite, to the extent possible, your response to this information request. Pursuant to 105 CMR 100.354 (B), the requested information shall be due within fourteen (14) days following the date of this letter.

Additionally, please be aware that the DoN regulation contains prohibitions on improper contacts while a DoN application is pending. Specifically, the regulation provides that the applicant may not communicate with the Commissioner or any member of the Public Health Council, nor may it seek to exert undue influence upon the Commissioner, any member of the Public Health Council, or a member or employee of the Executive Office of Health and Human Services ("EOHHS"). (See 105 CMR 100.110(C) and 105 CMR 100.531(B) (3).) The prohibition applies equally to any interested party or party of record to the application.

Please contact me at 617-753-7344 or bernard.plovnick@state.ma.us if you have any questions.

Sincerely,

Bernard Plovnick
Director, Determination of Need Program

# EXHIBIT 22



www.southcoast.org

**Delivered via email**

April 16, 2015

Bernard Plovnick
Director Determination of Need Program
Department of Public Health
99 Chauncy Street
Boston, MA 02111

Re:  Steward St. Anne's Hospital Corporation – Request for Significant Change
     to Approved DoN Project Number 5-3C08

Dear Mr. Plovnick:

Please accept this letter filed on behalf of Southcoast Hospitals Group/Southcoast Health
System ("Southcoast") in response to the request by the Department of Public Health (the
"Department") for information as set out in your letter dated April 2, 2015 related to the
above referenced DoN Significant Change Amendment.  In your letter dated April 2, 2015,
you indicate that the Department's request is being made pursuant to 105 CMR 11.354(B)
and reflects your understanding of questions raised by members of the Public Health
Council ("PHC") at its meeting held on December 10, 2014.

In your letter, you direct questions to and request information from both Southcoast and the
Steward St. Anne's Hospital Corporation (the "Applicant").  The following are Southcoast's
responses to the requests and questions directed to it.

### A.  1. Please provide updated procedure volume for CY 2014 for diagnostic cardiac catheterization procedures.

The following chart sets forth the requested procedure volume for both the Charlton
Memorial (Fall River) and St. Luke's (New Bedford) campuses of Southcoast for CY 2014.

| Charlton | St. Luke's | |
|---|---|---|
| 1,766 | 440 | Total Performed at Southcoast |
| (634) | (199) | Performed by Steward MD's |
| 1,132 | 241 | Performed by Southcoast MD's |

At these volume levels, St. Luke's is operating at 22% of capacity and Charlton is operating
at 51% of capacity in CY2014.  In fact, given the low volume at St. Luke's, one of the two
rooms was closed this past November. At these utilization rates, Charlton has the capacity
to perform an additional 1,560 procedures and St. Luke's has capacity to perform an
additional 1,697 procedures.



***A. 2. Please provide a description of services being provided or planned to address the higher than average incidence of coronary heart disease in the service area. If available, please provide evidence of the efficacy of the services.***

Southcoast has a significant number of programs and services to address the incidence of coronary heart disease within its service area. Southcoast's efforts start with its comprehensive full service cardiac care program and extend to community centered programs that focus on both prevention and rehabilitation.

### Comprehensive Cardiac Program

Five years ago, Southcoast Health implemented a Care Center model for the organization of health services. The Cardiovascular Care Center (CVCC) brings together cardiology, cardiac surgery, and vascular surgery into a single Care Center with shared resources and leadership. The concept of bringing together physicians who treat similar disease processes, rather than separating "surgery" from "medicine" is forward thinking and increasing in popularity nationally. The lines have truly blurred as procedures have become less invasive and more percutaneous. Under the umbrella of the CVCC, Southcoast provides comprehensive cardiac and vascular services. Specific to coronary artery disease and its risk factors, Southcoast has acute cardiac care capabilities as well as programs that address the risk factors associated with coronary disease, and its consequences.

With regard to acute care, Southcoast has a robust interventional cardiology program, performing 725 therapeutic coronary interventions last year (CY2014). Of those patients, approximately 24% were experiencing an active acute myocardial infarction (STEMI). This volume is higher than several of the academic Boston programs and Southcoast's outstanding results are well known to the Department. Providing this service locally is of the utmost importance due to the time sensitivity in the treatment of heart attack patients. Since 2002, Southcoast has had a cardiac surgery program which treats patients with extensive coronary disease locally. Southcoast has the capability to support patients on a left ventricular Impella device for severe acute heart failure due to coronary disease or non-coronary disease. Unlike many programs, the Southcoast cardiac surgery program has maintained a steady volume with excellent outcomes, performing 298 inpatient open heart procedures in FY 2013 and 303 inpatient open heart procedures in FY 2014. Of the 725 interventional procedures performed at the Charlton Memorial site during CY2014, 209 were performed by Steward physicians.

Ever since the interventional program started at Charlton Memorial, the physician on-call STEMI coverage has been a collaboration of physicians from different groups to cover the cath service. Currently there are 8 doctors involved (three are non-Southcoast) who share the evening, weekend, holiday and daytime assignments equally, amicably and equitably. Further, we do not delineate the STEMI patients by their originating group, but rather treat each other's patients in this emergency setting; patients are covered by the STEMI MD on-call without regard to the patient's affiliation in order to expedite their care. It is only after the procedure is complete that the patients are assigned to their primary team based upon the patient's physician affiliation. This collaborative and cooperative working relationship is indicative of the comprehensive program Southcoast operates and the existing collaboration among physicians irrespective of their affiliation.

2

Less acute patient care and disease management such as chronic coronary disease, a common cause of heart failure, is treated under the umbrella of the CVCC through Southcoast Heart Failure Services. Southcoast operates heart failure programs on an inpatient and outpatient basis at both of our larger campuses (St. Luke's and Charlton). These programs have physician medical directors and are staffed by nurse practitioners. In fact, the Medical Director at the St. Luke's campus is a Steward physician. Patients are seen in the inpatient settings and followed up in the heart failure clinic. The nurse practitioners educate patients and families, contact cardiologists and primary care providers regarding changes in their condition such as worrisome weight gains and provide an extra resource to help manage these complex patients. Our success with this program was instrumental in Southcoast receiving a recent CHART Grant award to extend this approach to other chronic disease states such as diabetes and COPD.

## Community Focused Programs

In addition to its comprehensive CVCC, Southcoast has undertaken or participated in a number of community based prevention initiatives to target and reduce the risk factors for cardiovascular disease. Southcoast's efforts have focused on education, risk factor screening, smoking cessation, diabetes and hypertension management, and obesity.

### Education and Screening

Southcoast's Cardiac Prevention Programs target schools, worksites, public housing and settings that serve at risk populations facing language, cultural and other barriers to care. These programs provide education and, through screenings, identify individuals with risk factors for cardiovascular disease. Southcoast's Health Van averages approximately 7,000 visits annually and targets service area residents who, because of certain ethnicities and demographics, have a higher incidence of cardiovascular disease. The Southcoast Van coordinates care with local housing authorities and the Massachusetts Fishing Partnership, which provides services to over 5,000 local fishermen and their families.

Since their inception, the Southcoast screening programs have screened over 210,000 service area residents. Screenings have resulted in the referral of approximately 63,000 residents for further treatment. The Southcoast education and screening programs have contributed to a decline in the cardiovascular death rate in the Southcoast service areas from 152.1 per thousand in 2000 to 134 per thousand in 2013.

### Smoking Cessation

Southcoast has been actively involved in efforts to reduce cardiovascular disease risk through the cessation of smoking. Southcoast was the first recipient of the Massachusetts "Make Smoking History Award" (2009) for the highest number of referrals to Quitworks. (Quitworks is a free, evidence-based stop-smoking service developed by the Massachusetts Department of Public Health in collaboration with all major health plans in Massachusetts.)

Southcoast also conducts smoking prevention programs at area schools, reaching thousands of students over the past ten years, and has advocated for regulations to limit smoking in a number of service area communities. Southcoast is a co-leader in a coalition implementing a federal community transformation grant to stem smoking in public housing in Fall River, New Bedford and Wareham. Southcoast is the only regional health system to offer free smoking cessation support to residents of its service area.

3

Southcoast smoking cessation efforts have resulted in the referral of approximately 5,000 smokers to Quitworks. Southcoast has supported approximately 1,400 of these residents in a quit attempt. This support includes conducting free cessation classes, the Health Van traveling to public housing and providing one to one education through trained Health Van staff. Southcoast has provided smoking cessation education to over 3,000 service area residents.

With Southcoast's support, a widespread community collaboration has resulted in a documented 33% decline in smoking rates in Greater New Bedford in the past several years (from close to 30% to 19.8%). Southcoast, with the departments of public housing in Fall River and Wareham, are developing plans to enact smoke free housing regulations within the next several years.

### Diabetes Management

Southcoast operates the largest and most comprehensive Diabetes Management program in the region with outpatient sites at four locations and inpatient services at all three hospitals. This past year, Southcoast conducted several grant-funded programs that link Community Health Workers (CHWs) with our Diabetes Management program and several primary care physicians. The CHWs, many of whom are bilingual/bicultural, provide an important link for patients between community and clinical resources.

Southcoast's efforts have led to an average reduction of 4.5 points in A1C levels of patients in this program (A1C is a blood test that provides a three-month average of a patient's blood sugar levels to determine if a patient's diabetes is being adequately managed). Patients also experienced an average decline of 14 points in LDL ("bad cholesterol") levels while Diabetes Self Management "no shows" decreased from 47% to 10%.

### Hypertension Management

The Southcoast Stroke Outreach Team, which includes staff from the Health Van, provides multilingual education for area residents about early recognition of the signs and symptoms of stroke (FAST). Staff has worked to expand regular hypertension screenings in the region, providing screenings on the van and in public housing as part of the American Heart Association's Check.Change.Control program.

The Stroke Outreach Team has distributed over 20,000 multilingual educational materials based on the Massachusetts Department of Public Health's FAST campaign. In addition, Southcoast has trained 25 public housing residents as American Heart Association hypertension coaches through the Check.Change.Control Program.



<u>Obesity and Physical Activity</u>

Southcoast has undertaken a number of initiatives to deal with the problem of obesity and encourage healthy levels of physical activity. Southcoast conducts monthly walking programs with physicians and sponsors a major walking path at a state park in Fall River. Southcoast is the co-leader in the regional Voices for a Healthy Southcoast Coalition, which has advocated for creation of bike and walking paths and improved nutrition. Southcoast established regular Farmers Markets and a CSA program in 2012, giving employees and the community the opportunity to purchase fresh vegetables and fruits from local farmers at a reasonable cost. Markets are held weekly at our many service sites throughout the region. Southcoast operates one of the state's busiest Bariatric Surgery Programs at Tobey Hospital and, at Charlton Memorial. Bariatric Surgery is a surgical procedure that can significantly improve cardiovascular risk factors such as diabetes and the chronic maladies of obesity. Support is ongoing post-surgery and patients, on average, have maintained 80% of their weight loss.

Southcoast has helped form and actively supports regional community bike and walking pathways and helped organize an annual, regional Bike Summit. Southcoast has also participated in organizing a healthy vending machine training for local worksites to reduce the amount of sugary sodas and other beverages offered in vending machines and cafeterias and has reduced the availability of sugared beverages in our Southcoast cafeterias and vending machines by over 50%.

5

***C.1. What adverse consequences to the public health of the service area, if any, may result if the proposed service at St. Anne's is approved?***

Performing diagnostic catheterization in a stand-alone facility without advanced cardiac services is not ideal and, as the Department is aware, the number of cardiac catherization procedures performed in stand-alone diagnostic cardiac cath labs is decreasing for several reasons, including improved medical therapy, improved interventional therapies, increased professional society scrutiny and stricter appropriate use guidelines aimed at diminishing unwarranted procedures.  Patients in a stand-alone diagnostic only cardiac cath lab cannot be "treated" by undergoing a therapeutic procedure but must be transferred to another facility. A patient receiving cardiac catheterization at St. Anne's would require transfer to another full-service facility for advanced cardiac care, interventional procedures, and surgical consults. Such fragmentation of cardiac care does not support patient convenience and access and, more importantly, hinders collaborative clinical decision-making, an important element of high quality cardiac care.

In 2014 at Southcoast, there were 725 Percutaneous Coronary Interventions (PCIs) while there were 2,206 diagnostic cardiac catheterizations, i.e., 33% of the diagnostic procedures were followed with a PCI.  Based on this experience, approximately 30% of all patients who receive a diagnostic cardiac catheterization proceed to an interventional procedure, including the potential for open heart surgery.  If cardiac catheterization services are permitted at St. Anne's, it would be reasonable to project that approximately 30% of the patients who receive diagnostic cardiac catheterization there would need to be transferred to another facility for an interventional procedure.  This would result in additional costs in connection with the transfer of patients, not to mention significant inconvenience and heightened risk to patients.

In addition, physician peers and surgical consultants who are qualified to review therapeutic options are not likely to be present in a low volume setting with no advanced cardiac services.  As a result, patients are less likely to receive the benefit of the "real time" discussion and consultation between physicians that occurs naturally in comprehensive cardiac programs. Furthermore, the transporting of patients with arterial access sutured in place from the diagnostic procedure to another facility for PCI puts the patient at risk at the access site for bleeding and local complications.  Removing the access and performing another puncture is not a good option either, as the patient is exposed again to the risk of that invasive procedure.

The status of existing diagnostic only cardiac catheterization programs was discussed at the April 17, 2014 meeting of the Department's Invasive Cardiac Services Advisory Committee (ICSAC).  At that meeting, ICSAC members expressed concern that nine of the then existing twelve diagnostic only programs had volume levels well below the level required by the Department's licensure regulations.  This level of underperformance raises quality questions with implications for the public's health.  It follows that the creation of a new program within an area already served by two cath labs with significant available capacity is likely to result in more labs underperforming.

Approving the applicant's request for cardiac catheterization services at St. Anne's would have a significantly negative effect on patients in our region, particularly those who reside in the Greater New Bedford and Wareham areas and are currently served by the St. Luke's site. If approved, the impact on our cardiac catheterization services at St. Luke's could be

6

devastating, with the strong likelihood that volume would fall below the minimum 300 procedure threshold and necessitate the closure of cardiac cath services at St. Luke's. (As noted earlier, of the 440 procedures performed in CY 2014, 199 were performed by Steward physicians.) At St. Luke's, 77% of the cath lab patients have either Medicare or Medicaid coverage.  These elderly and low-income patients rely heavily on public transportation. The closure of the St. Luke's service would cause additional hardship for this vulnerable population for whom transportation to Fall River is  not only an extreme inconvenience, but also financially straining.

Southcoast Health provides comprehensive cardiovascular services for the Greater Fall River, New Bedford and Wareham regions. Southcoast is concerned that the proposed service at St. Anne's will not only diminish the current volume of diagnostic cardiac catheterization procedures at both St. Luke's and Charlton Memorial hospitals, but have a detrimental "ripple effect" and threaten the viability of other cardiovascular services provided at Southcoast.  In addition to the regional dilution of cardiac catheterization procedures, the diagnostic catheterization laboratory at St. Anne's is likely to significantly reduce the number of electrophysiology device procedures (pacemakers and defibrillators) performed at Southcoast. These device procedures can be performed under fluoroscopy in a cath lab or EP lab setting (and occasionally an operating room with fluoro capability).  Steward physicians perform approximately over 50% of our electrophysiology device procedures at St. Luke's in New Bedford, and approximately 17% of the device procedures At Charlton Memorial in Fall River.  Migration of these electrophysiology device procedures from Southcoast to St. Anne's cath lab would have a significant impact on our ability to maintain our comprehensive arrhythmia services for the region, especially for those patients who reside in the Greater New Bedford and Wareham regions.

*C.2. What adverse consequences would Southcoast suffer if the proposed service at St. Anne's is approved, specifically, what would be the effect on Southcoast's existing cardiac catheterization services?*

If the proposed service at St. Anne's is approved, the catheterization volume at Southcoast's existing cardiac catheterization service at St. Luke's Hospital would most likely decrease to a level below the minimum threshold mandated by Department regulations. In CY 2014, the St. Luke's Cath Lab performed 440 diagnostic catheterizations, of which 199 were performed by Steward cardiologists. Without the Steward volume, the St. Luke's overall volume is 241, below the minimum threshold of 300. Additionally, given the high fixed costs associated with operating a cath lab, the lower volume and corresponding lower revenues would not cover the cost of operating the St. Luke's Lab and would pull financial resources from other programs to support the continuation of the service.

As such, a new facility at St. Anne's will significantly threaten the viability of the St. Luke's lab and negatively impact other cardiovascular services such as Electrophysiology and Arrhythmia Services, especially for patients in both our Greater New Bedford and Wareham regions.

We appreciate the opportunity to provide you with the information set forth above; however, we have serious questions about how the Department can proceed with the applicant's significant change amendment request without first addressing the serious policy and regulatory issues that were set forth in our previous submissions and noted by members of the Public Health Council (PHC) at the PHC's meeting on December 10, 2014. These policy questions and issues include but are not limited to:

- The impact of the moratorium on the creation of new cardiac catheterization programs imposed by Circular Letter DHCQ 08-05-586 in light of the suspension of Circular Letter DHCQ 14-6-617 on January 20, 2015.
- The necessity of completing the review of Circular Letter DHCQ 14-6-617, as announced in the January 20, 2015 memorandum to Hospital CEOs from Deborah Alwes, Director, Bureau of Health Care Safety and Quality, "in the context of best practices, national guidelines, patient outcomes, safety and quality for cardiac catheterization"
- The need for the Department to clarify the role of Circular Letters and the involvement of the Public Health Council in the rule making process in a manner consistent with existing law.

Thank you again for the opportunity to provide responses to the questions you outlined. We are hopeful that this information will assist you in ultimately making a recommendation to the Public Health Council that is in the best interest of the patients in our region. We look forward to hearing from you and further answering any additional questions you may have.

Sincerely,

*Linda Bodenmann*

Linda Bodenmann
Executive Vice President and Chief Operating Officer
Southcoast Health

8

# EXHIBIT 23

April 15, 2015



Via Email and Hand Delivery – Return Receipt Requested

Bernard A. Plovnick, Program Director
Department of Public Health
Determination of Need Program
99 Chauncy Street
Boston, MA 02111

Re:     Steward St. Anne's Hospital Corporation ("Applicant") Request for Significant
        Change to Approved Determination of Need ("DoN") Project Number 5-3C08
        ("Project")

Dear Mr. Plovnick:

We write on behalf of the Applicant in response to your letter dated April 2, 2015 requesting
additional information in connection with the DoN Program review of the above-referenced
request for a significant amendment to the approved Project. The Applicant submits the
following data in an effort to expedite resolution of its pending DoN amendment to build out
shell space.

Please note that this letter addresses the following:
1. Historical context for the requested DoN change, as well as background regarding the
   unwarranted action by the Public Health Council;
2. Authority of the Department of Public Health ("Department") and the DoN Program to
   request additional information regarding the Applicant's pending amendment request;
3. Absence of duplication of services by the Applicant;
4. Importance of diagnostic cardiac catheterization to the Fall River community and to
   Steward Health Care System's ("Steward") Medicare Pioneer ACO beneficiaries; and
5. The Applicant's responses to additional questions posed by the Department and the DoN
   Program on April 2, 2015.

Background and Context

The Applicant's DoN amendment request to build out shell space has been pending since August
16, 2013, and was improperly stayed by the Public Health Council on December 10, 2014 under
a prior executive administration. After over four months of inaction, on April 2, 2015, the DoN
Program posed a series of questions to the Applicant, as well as to Southcoast Health System, a
so-called "Interested Party."

As you know, the DoN statute set forth at M.G.L. c. 111, § 25C serves the narrow purpose of
ensuring new clinical services in the Commonwealth are supported by a minimum level of need

Donoghue Barrett & Singal
One Beacon Street, Suite 1320
Boston, MA 02108–3106
T 617.598.6700
F 617.722.0276
www.dbslawfirm.com

370303.6

Bernard A. Plovnick, Program Director
Determination of Need Program
Department of Public Health
April 15, 2015
Page 2



in the community and do not unnecessarily duplicate existing services. The DoN statute was not intended to create or protect a monopoly. The Department deemed its original purpose to have been served when it issued approval for the Project to the Applicant on April 11, 2012, which included approval for shell space to be fit out at a later time. As a condition of approval and consistent with 105 C.M.R. 100.753(D), the build out of the approved shell space required the submission of a DoN significant amendment request.

On July 14, 2014, the Department's Circular Letter DHCQ 14-6-617 created an exception to the moratorium on cardiac catheterization services by which a Pioneer ACO, a Medicare Shared Savings Plan ACO, or other ACO designation determined by the Department may transfer a license from an existing cardiac catheterization service that does not meet minimum volume requirements to another facility within the ACO. Under these terms, at least 10 providers within Massachusetts could qualify for the exemption created by the Circular Letter. As a Medicare Pioneer ACO, Steward Health Care System ("Steward") submitted a Notice of Intent to Transfer Cardiac Catheterization Services from Quincy Medical Center to Saint Anne's Hospital ("Hospital") on August 21, 2014. It is clear from both the DoN Program's November 19, 2014 staff report and the Applicant's correspondence with the Department pursuant to this updated policy that the Applicant's request to build out shell space is for a medical service that could obtain licensure from the Department.

The proposed use of the shell space at the Hospital for cardiac catheterization services was expressly permitted at the time the Applicant's request was considered before the Public Health Council for approval. While the proposed amendment of that existing DoN requires an analysis of the same factors relevant to this initial determination, the original decision to issue the DoN is no longer at issue and recent concerns regarding the Department's cardiac catheterization policy should not pose an obstacle or a barrier to approval of the DoN amendment.

The issue before the Public Health Council ("Council") on December 10, 2014 was whether the Applicant met the construction and capital expenditure requirements relative to the build out of shell space at the Hospital. The DoN Program's staff reviewed the relevant information and unequivocally approved the shell space build out in its report. The Council, however, failed to reach the issue of the propriety of the build out of the shell space at the hearing and ignored the DoN Program's staff report of approval that evaluated precisely these factors.

The Council focused instead on the recent change in policy set forth in Circular Letter DHCQ 14-6-617 permitting an ACO to transfer cardiac catheterization services from one facility to another within its network. The very first question posed by the Council at the hearing related to the reasons for the recent change in Department policy, not the proposed build out of shell space, which properly was the only issue before the Council for decision that day. A copy of the December 10, 2014, Public Health Committee Hearing Minutes is attached at Exhibit A. Despite

Bernard A. Plovnick, Program Director
Determination of Need Program
Department of Public Health
April 15, 2015
Page 3



the Department's efforts to constrain the Council to the narrow issue before it—the build out of shell space under the DoN amendment—the Council continued to probe the Applicant about licensing of cardiac catheterization services, and evidenced great concern with the issuance of Circular Letter DHCQ 14-6-617. As cardiac catheterization services are not DoN regulated, the proposed licensure of such a service is not within the purview of either the DoN Program or the Council to decide. In "tabling" the proposed amendment, the Council ignored the DoN criteria it was charged to administer.

We implore the Department and the Council to apply the proper factors to the build out itself, rather than its proposed clinical use, to approve that build out, and to bring this delay and damage to an immediate halt so that the Hospital may meet the urgent needs of any and all patients served by Steward who need cardiac catheterization.

<u>Authority to Request Additional Information Regarding Cardiac Catheterization Services</u>

The Department's April 2, 2015 letter once again conflates the DoN requirements and the regulation of cardiac catheterization in Massachusetts, which is not regulated by the DoN Program. A final determination of the Applicant's DoN amendment request should be made on the existing record presently before the Department, the same record that was before the Council on December 10, 2014.

The most recent correspondence once again ignores the clearly defined parameters of the DoN statute and seeks information regarding cardiac catheterization services of the projected population. We strongly believe that the DoN Program is overstepping its authority by requesting such information regarding a service that is not DoN regulated. The analysis must begin and end with the DoN factors. To date, the Applicant's amendment request has been tabled for reasons entirely unrelated to the DoN program. The practical result of this extended delay is the widespread denial of cardiac catheterization services to Fall River residents and patients who seek cardiac services at the Hospital.

The information requested by the Department is very concerning and inappropriate for several reasons: the request is beyond the scope of the Applicant's requested DoN amendment; it intrudes on the exclusive jurisdiction of the Division of Health Care Facility Licensure relative to licensed medical services; and the questions posed to the Applicant reflect a fundamental misapplication of the DoN process and an improper expansion of the DoN program criteria.

Nonetheless, the Applicant furnishes this information in an effort to bring this process to a swift conclusion so that the Applicant may address the significant need for cardiac catheterization and overall cardiac care needs of Steward Saint Anne's patients in the Fall River community.

370303.6

Bernard A. Plovnick, Program Director
Determination of Need Program
Department of Public Health
April 15, 2015
Page 4



DONOGHUE
BARRETT
& SINGAL

No Duplication of Services

The Applicant notes that the DoN Program mandate is to ensure no duplication of existing resources in the projected primary service area. In accordance with 105 C.M.R. 100.533(B)(2), a DoN request must show that, upon completion, the project will satisfy health care requirements of the projected primary service area population without duplicating services or other adverse service consequences. However, the same requirement to prevent duplication of services should not be used to enable a monopoly by one provider or otherwise prevent other providers from operating the same kind of service within the service area, especially in a community like Fall River that faces a public health crisis. In fact, the rate of coronary heart disease in Fall River is almost 75% higher than the rate of Massachusetts as a whole (Exhibit B, page 3). Applying the logic above would result in the closure of half of the cardiac catheterization programs in Boston since Boston has 0.79 hospitals with cardiac catheterizations per 100,000 residents, while Fall River has .037 hospitals with cardiac catheterizations per 100,000 residents.

At present, Southcoast is the only provider of cardiac catheterization services in the Applicant's projected service area. The prohibition on duplication of services requires an applicant to account for existing services of the same nature in the service area and ensure that the proposed service will be able to exist alongside the existing service. As you will note in pages 3 through 9 of Exhibit B, the Applicant has sufficiently demonstrated that Fall River underperforms across the social determinants of health, has the highest prevalence of multiple chronic disease for residents age 65 and older, has the highest rate of heart disease as well as the highest rate of mortality due to heart disease in the Commonwealth of Massachusetts. Moreover, the leading cause of hospitalization in the Fall River area is cardiac-related services. The Applicant's presentation clearly illustrates that the establishment of this service is not duplicative of cardiac catheterization services, but that these services will help meet a critical need in the Fall River community.

Unfortunately, Southcoast's opposition to the Applicant's request is rooted in its attempt to preserve its monopoly in cardiac catheterization services in the Fall River area. This shortsighted and discriminatory opposition interprets the prohibition on duplication of services as a means to secure a monopoly on cardiac catheterization in a community that desperately needs more access to comprehensive cardiac care services, not less. In no way should the requirement to prevent duplication of services be interpreted as preventing a competitor service to operate if the existing and projected patient need indicate that the service area can support additional services, especially if the service will ensure the utmost quality in medical care. As the Applicant demonstrated in its amendment request, the existing cardiac catheterization services in the greater Fall River service area is at near full capacity and is not sufficient to meet the existing need that exists in the community. The Applicant urges the DoN Program to continue to interpret the prohibition on duplication of services so as to not secure or protect monopolies on health care

370303.6

Bernard A. Plovnick, Program Director
Determination of Need Program
Department of Public Health
April 15, 2015
Page 5



services, but offer more choice for patients who desperately need comprehensive cardiac services in Fall River.

The Applicant strives to provide the highest quality of care to its patients, which requires seamless transitions and an integrated approach to their cardiac care. Without cardiac catheterization services, the Applicant cannot provide fully integrated, comprehensive cardiac care to its cardiac patients. The Applicant's patients are forced to go outside of its accountable care network, which causes disruptions to patient care, lower quality scores, as well as higher costs incurred by the Applicant for sending its patients out-of-network. This gap in service also limits the Applicant's ability to care for Medicare and commercial patients under full clinical and financial risk, as described in the following section.

Steward's Integrated Accountable Care Model and Medicare Pioneer ACO

Through its integrated accountable care model and the Medicare Pioneer ACO program, the Applicant is committed to delivering high quality, comprehensive cardiac health care services to patients in a cost efficient manner. Moreover, the Applicant has already demonstrated that it can achieve better quality and lower cost in cardiac services at other locations within the Steward system, as shown in Exhibit B, pages 15 to 19.

As an integrated care organization with over 90% of its commercial lives under risk and over 75,000 Medicare members in the Medicare Pioneer ACO under full financial and clinical risk, Steward is a patient-centered medical network of providers that provide care for patients across the care spectrum. By providing health care services in coordinated and more efficient manner, Steward is able to control costs and improve quality, eliminate care fragmentation and reduce duplication of services in the delivery of health care. Steward's model in particular encourages patients to obtain care locally at community providers and when appropriate, obtain care at a tertiary academic medical center for complex medical needs. In this way, patients receive a large share of their health needs through a provider system that coordinates medical and wellness services by sharing medical data and leveraging patient care navigators to assist patients.

Moreover, by accepting full clinical and financial risk for patient care, Steward is incented to deliver better services while reducing their cost. The Steward model also prioritizes shared resources across their provider system. As such, the need for each facility to be fully equipped with high cost services and the latest technologies is not necessary since the system integrates care by leveraging resources across its provider system. This also applies to a service like cardiac catheterization, which is not available at all Steward member hospitals or locations. The integrated care model moves away from all hospitals seeking licensure of the exact same services in order to "keep up with other competitors," flooding the market with technology and services that may not be fully utilized and ultimately add cost. The Steward model in particular directs its

370303.6

Bernard A. Plovnick, Program Director
Determination of Need Program
Department of Public Health
April 15, 2015
Page 6



efforts toward lowering costs by eliminating duplicative services and improving unneeded utilization or duplication of services. The Applicant is pursuing cardiac catheterization because it is a basic diagnostic tool not presently available within the Steward ACO network in the greater Fall River area. To be clear, Fall River is the only area where comprehensive cardiac services are not available within Steward's integrated care system. Because Fall River has the highest heart disease death rate in Massachusetts and cardiac services is a leading cause of hospitalizations in the Fall River area, Steward's patients should have access to such an important benefit. Without a cardiac catheterization program at Saint Anne's Hospital, Steward will continue to fail to offer comprehensive cardiac services to its commercially insured or Medicare Pioneer ACO patients in Fall River and unnecessarily disrupt the medical care its patients require.

Responses to Requests for Additional Information

A1.   Please provide updated procedure volume for CY 2014 for diagnostic cardiac catheterization procedures. For St. Anne's, please update projection that was based upon annualized CY 2014 data.

The Applicant estimates that the potential diagnostic cardiac catheterization procedure volume for CY 2014 is greater than 1,500 cases in Steward's patient network within the greater Fall River area. After completing a thorough review of the CY 2014 utilization data, the Applicant did not revise its initial volume projections for the first four years of service. The CY 2014 data supports the Applicant's proposed volume projections based on the number of procedures that occurred for its patients under risk-based arrangements. As these numbers are consistent with previous projection and annualized data, the Applicant has not altered its volume projections. The projections show modest growth, with 379 procedures anticipated in Year 1 and rising to 393 procedures by Year 4. The following chart restates volume projections previously provided to the DoN Program.

**Saint Anne's Hospital Diagnostic Cardiac
Catheterization Procedure Volume Projections**

| Year | Projected Procedures |
|------|---------------------|
| Year 1 | 379 |
| Year 2 | 377 |
| Year 3 | 385 |
| Year 4 | 393 |

Bernard A. Plovnick, Program Director
Determination of Need Program
Department of Public Health
April 15, 2015
Page 7



DONOGHUE
BARRETT
& SINGAL

A2.   <u>Please provide a description of services being provided or planned to address the higher
than average incidence of coronary heart disease in the service area. If available, please
provide evidence of the efficacy of the services.</u>

The Hospital is located in Fall River, Massachusetts, which has the highest rate of heart disease
in Massachusetts. Please see <u>Exhibit B</u>, page 5. In reviewing inpatient discharge data, cardiac
services are the leading cause of inpatient hospital admissions in the Fall River area. Please see
<u>Exhibit B</u>, page 6.

Furthermore, Bristol County (which includes Fall River) experiences the highest mortality rate
from heart disease deaths in Massachusetts. Please see <u>Exhibit B</u>, page 7. In accordance with the
Steward model for the provision of integrated care, the Applicant offers a range of population
health management services aimed at reducing the incidence of coronary heart disease in the
service area. These services are designed to comprehensively care for community members
within a community setting. However, without a cardiac catheterization program, the Applicant
is unable to offer truly integrated and comprehensive cardiac services in Fall River.

Cardiac catheterization is an important part of a comprehensive cardiac care strategy and
facilitates a comprehensive examination of the heart and surrounding blood vessels. The tool
enables a provider to take angiograms, record blood flow as well as evaluate the heart's health.
Diagnostic catheterization would also improve care for patients with congenital heart defects,
and patients who may have experienced acute myocardial infarction.

Finally, cardiac catheterizations can also be leveraged as a prevention tool to understand whether
patients have other conditions, including enlargement of the left ventricle, ventricular aneurysms,
narrowing of the aortic valve, or septal defects that may disrupt the flow of blood from one side
of the heart to the other.

The Applicant also offers the following services as part of a comprehensive cardiac care
program, which also is reflected in <u>Exhibit B</u>, page 21.

1.  Chronic and Complex Care Management
    - This service involves nurse care management for high-risk cardiovascular
      patients, including those with multiple co-morbidities.
    - Close collaboration of the Hospital, primary care providers, and specialists to
      coordinate patients as they undergo transitions of care.
    - Identification of so-called high-utilizers of urgent and emergent care to ensure
      patients are connected and engaging with primary care providers and appropriate
      specialists.

370303.6

Bernard A. Plovnick, Program Director
Determination of Need Program
Department of Public Health
April 15, 2015
Page 8



2. Cardiovascular Clinical Integration
   - Involves close collaboration between primary care providers and specialists in the region to coordinate patient care.
   - The Applicant promotes evidence-based protocols and care plans across the care continuum.
   - A broad care team cares for all of a patient's needs, including pharmacists, health coaches, social workers, and inpatient and ambulatory care managers.
   - This initiative focuses on prevention and medical management of cardiovascular patients to avoid acute episodes of care.

3. Readmission Prevention Program
   - This is a nurse care management readmission prevention program that involves regional skilled nursing facilities that coordinate care with Steward.
   - The goal of this initiative is aimed at reducing readmissions, including readmissions for cardiac treatment.
   - This program implements a post-discharge in-home medication optimization plan.

4. Healthy Transitions & Wellness Initiatives
   - The Hospital engages in ongoing patient outreach programs to encourage annual preventative visits and close relationships with primary care providers.
   - Providers coordinate transition of care and discharge care plans.
   - Providers coordinate appropriate at-home services as needed as well as primary care and specialty follow-up.
   - Through these initiatives, the Hospital offers a farmer's market voucher program to encourage healthy eating, which is linked to coronary heart disease.

These cardiac care management initiatives have produced strong results throughout the Steward provider network that demonstrate the efficacy and cost-efficiency of these services. For example, Steward patients in the Readmission Prevention Program who are discharged from a Steward facility have as much as 25% lower readmission rates at 30, 60, and 90 days compared to patients discharged from non-Steward facilities, as shown in Exhibit B, page 19. Steward patients receiving chronic and complex care management at home have 21% fewer visits to the emergency room, as shown in Exhibit B, page 19.

Moreover, Steward patients participating in the Farmer's Market Voucher program experienced an average decrease in A1C levels of 1.3 points and an average body weight decrease of 1.2 pounds over 20 weeks, both of which are linked to cardiac conditions. As these statistics show, the Steward model is demonstrating success in its cardiac care wellness initiatives and can also

370303.6

Bernard A. Plovnick, Program Director
Determination of Need Program
Department of Public Health
April 15, 2015
Page 9



demonstrate further benefits for patients in the greater Fall River community under a comprehensive cardiac care program.

B1.  What portion of the CY 2014 and projected cardiac catheterization volume is represented by Steward Medicare ACO patients? For patients not in the Medicare ACO, please identify the number/percentage covered by other global payment contracts.

As stated consistently by the Applicant, diagnostic cardiac catheterization services at the Hospital will allow the Applicant to offer comprehensive cardiac care services to patients where Steward is at full clinical and financial risk for their medical outcomes and cost. The Applicant projects that nearly all of the estimated 379 cases in Year 1 will be patients covered by risk arrangements; the Applicant estimates that approximately half will be Medicare Pioneer ACO patients, while the other half will be patients covered by commercial risk contracts.

B2.  What is the estimated cost differential in providing diagnostic cardiac catheterization within the Steward system as proposed versus maintaining the status quo?

The Applicant estimated the cost differential in two ways, as shown in Exhibit B, pages 15 and 16. First, the Applicant compared the average total cost of care for 90 days following diagnostic cardiac catheterization for Steward patients who receive diagnostic cardiac catheterization at a Steward facility to Steward patients who receive diagnostic cardiac catheterization at Southcoast. For both Steward's Medicare Pioneer ACO patients and commercial patients under clinical and financial risk arrangements, the total cost of care within 90 days of diagnostic cardiac catheterization was determined to be 30% higher at Southcoast than at a Steward facility.

In addition, the Applicant compared the per-member-per-month total medical expense of Medicare members attributed to Steward's Pioneer ACO who receive 75% or more of their care at Southcoast against those who receive 75% or more of their care from a Steward facility. Overall, the Pioneer ACO patients receiving 75% or more of their care at Southcoast averaged 78% higher total medical expense than patients receiving 75% or more of their care from Steward. When isolating this analysis to Steward's Pioneer ACO members with cardiac disease, the same trend holds true; namely, that cardiac patients receiving 75% or more of their care at Southcoast have 56% higher total medical expense than patients receiving 75% or more of their care from Steward.

As these calculations demonstrate, there is a significant cost difference depending on where patients receive their diagnostic cardiac catheterization services – at a Steward facility or Southcoast. Medical care costs are lower for patients who can access and receive care through the Steward ACO model. There is a much higher cost when patients seek diagnostic cardiac

Bernard A. Plovnick, Program Director
Determination of Need Program
Department of Public Health
April 15, 2015
Page 10



catheterization services at Southcoast. In addition, the quality improvements Steward has achieved are also evidence that a cardiac catheterization program at Saint Anne's will help to further advance better care, lower cost, and better quality. For example, as shown in Exhibit B, page 18, Steward has achieved exceptional quality scores in the Medicare Pioneer ACO program, a program designed only for those providers that are able to successfully accept 100% clinical and financial risk for their attributed Medicare patients. Steward has demonstrated high quality performance in the cardiac related quality measures in the Medicare Pioneer ACO program, including: Blood Pressure Control, Coronary Artery Disease Composite, ACE Inhibitor Therapy, Adult Weight Screening and Follow-Up and Hospital Readmissions, among others.

B3.  If the diagnostic service opens at St. Anne's, where will patients needing interventional cardiac services be referred?

Most interventional cardiac services are scheduled and elective. In the case of elective procedures, patients will be referred for interventional services to another Steward facility. This allows patients to remain within the Steward system for care and reap the quality benefits of the integrated ACO model. Seeking interventional services within the Steward network prevents fragmentation of care that can result when a patient seeks care with a different provider. Elective interventional cardiac services will thus be referred within the Steward network, though patients may choose a facility that best meets their needs.

In isolated instances where urgent interventional need arises, patients will be transferred to the closest provider of interventional services, in accordance with Steward's integrated care model protocols and practice guidelines. Transfer will be dictated by a patient's medical need for such emergency services.

B4.  How does the closure of Quincy Medical Center affect the need or potential patient population at St. Anne's?

The closure of Quincy Medical Center is immaterial to the Applicant's request for significant amendment to build out DoN-approved shell space. Circular Letter DHCQ 14-6-617 allows an ACO to transfer a cardiac catheterization service license from an underperforming hospital to another hospital within the ACO. Steward submitted a Notice of Intent to Transfer Cardiac Catheterization Services on August 21, 2014 in accordance with the requirements of Circular Letter DHCQ 14-6-617. The request indicated that Steward would transfer the cardiac catheterization service license from Quincy Medical Center to the Hospital. This request related to the transfer of a cardiac catheterization service license only and was not sought with the intention that Quincy Medical Center patients would seek such services at the Hospital. As a result, there is no correlation between the closure of Quincy Medical Center and the need or potential patient population at the Hospital.

Bernard A. Plovnick, Program Director
Determination of Need Program
Department of Public Health
April 15, 2015
Page 11



B5.     Please provide a breakdown of capital expenditure and space (in gross square feet)
associated with a) the cardiac catheterization service and b) the outpatient cardiology
service.

The amendment requested the build out of 11,476 GSF of shell space. This space is allocated as
follows: 7,176 GSF for the cardiac catheterization lab suite and 4,300 GSF for the outpatient
cardiology service.

The following chart provides a breakdown of the capital expenditure as allocated between the
cardiac catheterization service and the outpatient cardiology service.

| Category of Expenditure | New Constr Costs Allocated to Cardiac Cath | New Constr Costs Allocated to Cardiac Outpatient Program | Requested Renovation (8/13$) |
|---|---|---|---|
| Land Costs | | | |
| Land Acquisition | $0 | $0 | $0 |
| Non Depreciable Land Dev. | $0 | $0 | $0 |
| Site Survey and Soil Invest. | $0 | $0 | $0 |
| Total Land Costs | $0 | $0 | $0 |
| Construction Costs | | | |
| Depreciable Land Dev. Costs | $0 | $0 | $1,134 |
| Construction Contract | $2,389,500 | $802,000 | $119,590 |
| Fixed Equip. Not in Contract | $0 | $0 | $0 |
| Architect. & Engineering Costs | $286,740 | $96,239 | $15,056 |
| Pre-filing Planning and Dev. | $38,000 | $12,000 | $551 |
| Post-filing Planning and Dev. | $38,000 | $12,000 | $333 |
| Other: PM Fee, PreCon CM Fee | $197,000 | $26,410 | $5,813 |
| Other: furnishings, move, clean, builders risk, signs | $134,800 | $45,200 | $832 |
| Net Interest Exp. During Constr. | $0 | $0 | $0 |
| Major Movable Equipment | $1,425,000 | $1,020,000 | $0 |
| Total Construction Costs | $5,534,250 | $1,003,589 | $143,309 |
| Financing Costs | | | |
| Costs of Securing Financing | $0 | $0 | $0 |
| Total Financing Costs | $0 | $0 | $0 |
| Total Capital Expenditure | | | $143,309 |

Notes:
1.   Both the Cardiac Cath Lab and the planned Cardiac Outpatient Program are all new construction within the
shell space included in the original DoN; no renovation is required for these new programs.



370303.6

Bernard A. Plovnick, Program Director
Determination of Need Program
Department of Public Health
April 15, 2015
Page 12



<u>Questions for Southcoast</u>

As part of the April 2, 2015 request for additional information, questions were asked specifically to Southcoast. The questions are also of interest to the Applicant as they concern the impact of the proposed cardiac catheterization service. At this time, the Applicant offers the following brief responses.

C1.    <u>What adverse consequences to the public health of the service area, if any, may result if the proposed service at St. Anne's is approved?</u>

The Applicant's proposed service should not adversely affect the public health of the primary service area. As described throughout this response and detailed in <u>Exhibit B</u> pages 3 through 9, the Applicant's proposed service should improve public health in this service area to address the community's crisis of high rates of heart disease and mortality due to heart disease in the Fall River area.

C2.    <u>What adverse consequences would Southcoast suffer if the proposed service at St. Anne's is approved, specifically, what would be the effect on Southcoast's existing cardiac catheterization services?</u>

The establishment of a cardiac catheterization service by the Applicant will not adversely impact Southcoast's program. The Applicant's volume projections for the first four years of operations represent a small amount of the total potential procedures in the greater Fall River area. Based on these projections, sufficient procedure volume in the service area will remain to allow Southcoast to meet and even exceed the minimum volume requirements.

The Applicant anticipates modest volume for the proposed cardiac catheterization service. The Applicant's projections demonstrate that it expects to perform 379 diagnostic cardiac catheterization procedures in Year 1 of operations, increasing to only 393 diagnostic cardiac catheterization procedures by Year 4. For comparison purposes, Southcoast performed a total of 2,915 cardiac catheterizations in 2012, including PCI and diagnostic catheterization. Even if Southcoast's volume is reduced by the Applicant's projections, Southcoast would continue to perform sufficient procedures to meet its minimum volume requirements for PCI and diagnostic cardiac catheterization. Moreover, the Applicant estimates that it would result in the closure of half of the cardiac catheterization programs in Boston since Boston has 0.79 hospitals with cardiac catheterizations per 100,000 residents, while Fall River has 0.37 hospitals with cardiac catheterizations per 100,000 residents. In short, even if the Applicant's service results in some loss of volume to Southcoast, the effect would be minor and would not have an adverse impact on Southcoast's PCI or diagnostic cardiac catheterization services.

370303.6

Bernard A. Plovnick, Program Director
Determination of Need Program
Department of Public Health
April 15, 2015
Page 13



We again urge the Department and the Council to apply the proper factors to the build out itself –
rather than its proposed clinical use – to approve that build out, and to bring this delay and
damage to an immediate halt so that the Hospital may meet the urgent needs of any and all
patients served by Steward who need cardiac catheterization.

Sincerely,

Andrew S. Levine

Enclosures

cc:     C. Balulescu, Esq.
        N. Hibble, Esq.
        C. Jesiolowski
        J. Maher, Jr. Esq.
        D. Morales
        B. Singal, Esq.
        K. Whelan

370303.6

# Attachment/Exhibit

## A

MINUTES OF THE PUBLIC HEALTH COUNCIL

Meeting of December 10, 2014

MASSACHUSETTS DEPARTMENT OF PUBLIC HEALTH

PUBLIC HEALTH COUNCIL
MASSACHUSETTS DEPARTMENT OF PUBLIC HEALTH
Henry I. Bowditch Public Health Council Room, 2nd Floor
250 Washington Street, Boston MA

Docket: Wednesday, December 10, 2014 9:00 AM

1. **ROUTINE ITEMS:**
   a. Introductions
   b. Record of the Public Health Council Meeting November 12, 2014 (Vote)

2. **DETERMINATION OF NEED**
   a. Steward St. Anne's Hospital Corporation Request for Approval of Significant Change Amendments to Previously Approved Project #5-3C08- Southcoast Hospitals Group's Response to the Staff Recommendation Issued November 19, 2014. (Vote)

3. **FINAL REGULATION**
   Request for Approval to Promulgate Final Regulations: 105 CMR 222.000: *Massachusetts Immunization Information System* (Vote)

4. **FINAL REGULATION**
   Request for Approval to Promulgate Final Regulations: 105 CMR 158.000: *Licensure of Adult Day Health Programs.* (Vote)

5. **PRESENTATION**
   a. Prevention and Wellness: Innovation and Success

*The Commissioner and the Public Health Council are defined by law as constituting the Department of Public Health. The Council has one regular meeting per month. These meetings are open to public attendance except when the Council meets in Executive Session. The Council's meetings are not hearings, nor do members of the public have a right to speak or address the Council. The docket will indicate whether or not floor discussions are anticipated. For purposes of fairness since the regular meeting is not a hearing and is not advertised as such, presentations from the floor may require delaying a decision until a subsequent meeting.*

2

## Public Health Council

Presented below is a summary of the meeting, including time-keeping, attendance and votes cast.

Date of Meeting: Wednesday, December 10, 2014
Beginning Time: 09:00 AM
Ending Time: 11:45 AM
Attendance and Summary of Votes:

| Board Member | Attended | Item 1b | Item 2 | Item 3 | Item 4 |
|---|---|---|---|---|---|
| | | Record of the Public Health Council Meeting November 12, 2014 | Steward St. Anne's Hospital Corporation Request for Approval of Significant Change Amendments to Previously Approved Project #5-3C08- Southcoast Hospitals Group's Response to the Staff Recommendation issued November 19, 2014. *Motion was made by Meredith Rosenthal to table the DoN until further information could be provided by DPH, within the next 6 months. The Vote was made on this motion.* | Request for Approval to Promulgate Final Regulations: 105 CMR 222.000: *Massachusetts Immunization Information System* | Request for Approval to Promulgate Final Regulations: 105 CMR 158.000: *Licensure of Adult Day Health Programs.* |
| Cheryl Bartlett | Yes | Yes | Yes | Yes | Yes |
| Edward Bernstein | Yes | Yes | Yes | Yes | Yes |
| Derek Brindisi | Yes | Yes | Yes | Yes | Yes |
| Harold Cox | Absent | Absent | Absent | Absent | Absent |
| John Cunningham | Yes | Yes | Yes | Yes | Yes |
| Michele David | Absent | Absent | Absent | Absent | Absent |
| Meg Doherty | Yes | Yes | Yes | Yes | Yes |
| Michael Kneeland | Yes | Yes | Yes | Yes | Yes |
| Paul Lanzikos | Yes | Yes | Yes | Yes | Yes |
| Denis Leary | Yes | Yes | Yes | Yes | Yes |
| Lucilia Prates-Ramos | Yes | Yes | Yes | Yes | Yes |
| Jose Rafael Rivera | Absent | Absent | Absent | Absent | Absent |
| Meredith Rosenthal | Yes | Yes | Yes | Yes | Yes |
| Alan Woodward | Yes | Yes | Yes | Yes | Yes |
| Michael Wong | Yes | Yes | Yes | Yes | Yes |
| Summary | 12 Members attended | 12 Approved with votes | 12 Approved with Votes | 12 Approved with votes | 12 Approved with votes |

3

PROCEEDINGS

A regular meeting of the Massachusetts Department of Public Health's Public Health Council (M.G.L. C17, §§ 1, 3) was held on Wednesday, December 10,  2014 at the Massachusetts Department of Public Health, 250 Washington Street, Henry I. Bowditch Public Health Council Room, 2nd Floor, Boston, Massachusetts 02108.

Members present were:  Department of Public Health Commissioner Cheryl Bartlett (chair), Dr. Edward Bernstein, Mr. Derek Brindisi, Dr. Michael Kneeland, Ms. Lucilla Prates-Ramos, Dr. John Cunningham, Dr. Alan Woodward, Dr. Michael Wong, Mr. Paul Lanzikos, Mr.  Dennis Leary, Ms. Meg Doherty, Dr. Meredith Rosenthal

Absent member(s) were:  Mr. Harold Cox, Dr. Michele David and Mr. Jose Rafael Rivera

Also in attendance was Attorney Tom O'Brien, General Counsel at the Massachusetts Department of Public Health.

Commissioner Bartlett called the meeting to order at 9:13 AM and reviewed the agenda.

1: MINUTES
b. Record of the Public Health Council Meetings of November 12, 2014

Commissioner Bartlett asked for a motion to approve the minutes from November 12, 2014. Dr. Wong made a motion to approve the minutes, and Dr. Kneeland seconded the motion.  Dr. Woodward asked for one change to be made to the minutes.    All voted in favor of this change.

Before moving on in the agenda, Commissioner Bartlett took a moment to recognize Dr. Bernstein and Boston Medical Center for their 20 years of work with Project Asserts. Dr. Bernstein stated that " Project Assert began as a BSAS supported  critical populations grant from SAMHSA to BCH/BMC and recruited health promotion advocates from the community who were concerned about addiction and brought them into the ER to do in- reach to educate the staff and support the patients, and facilitate access to primary care, opioid education and Naloxone and  treatment. We appreciate the collaboration that we have."

ITEM 2:   DETERMINATION OF NEED
Steward St. Anne's Hospital Corporation Request for Approval of Significant Change Amendments to Previously Approved Project #5-3C08.

Bernie Plovnick, director for the DoN program presented the staff recommendation on the St. Anne's Hospital request for a significant change to build out 11,476 gross square feet of shell space on the hospital's ground floor for a diagnostic-only cardiac catheterization (cardiac cath) service as well as outpatient cardiology services.

Following the presentation, Commissioner Bartlett opened the floor to discussion.

Dr. Woodward asked what motivated the change in policy in July which had prohibited the establishment of any new cardiac cath services located within a 30 minute ambulance trip from an existing hospital with interventional cardiac services.

Dr. Biondolillo stated that this was one of the policy changes enumerated in a circular letter from HCQ and Office of Policy and Planning.  When there are changes in the health care delivery system, staff continually scan regulations and guidance to evaluate if an update is needed.  The timing of the circular letter had to do with several factors: the end of a large, controlled trial within the industry, which was a complex, multi-facility study. We made no big policy changes during the trial, because we didn't want to destabilize the process of the trial but

we knew that at the end we would need to re-look at issues, because of the trial and because quite a lot of time had gone by since the policies were last reviewed. So the circular letter is based on our learning through the trial and within the time that had passed since we last evaluated these policies.

Commissioner Bartlett stated that health care reform under Chapter 224 requires us to review the systems of care and to undertake a comprehensive state health plan. While we couldn't review every service at this time, cardiac cath is one where the Office of Health Planning is beginning to focus.

Dr. Woodward asked for confirmation that this service would be for elective diagnostic procedures only and not provide services on a 24/7 basis.

Dr. Biondolillo stated that the circular letter articulated a number of mandates that DPH issued to encourage best practices. This letter speaks explicitly to volume minimums, effectively reminds facilities of these minimums and that they must be adhered to as a condition of operating a cath lab. But in addition, consistent with Chapter 224, this was determined to be an opportunity to allow health provider systems that had made an investment in health reform principles the ability to provide better continuity of care for patients within the network and to move an existing cardiac cath service from a facility that is not meeting volume minimums.

Dr. Woodward asked if, in the original DoN application, Steward was seeking to close their cath lab at Quincy that was operating below the minimum volume.

Dr. Biondolillo responded that this type of decision would not likely appear a DoN application but more likely to result from DPH discussions with facilities making applications.

Dr. Woodward inquired as to what hours the St. Anne's service plans to operate and whether they would be taking acute patients from the ED to their cath lab?

Dr. Biondolillo stated that the current regulations will apply with regard to hours of operation and OEMS transport protocols.

Dr. Cunningham asked if DPH concluded that this is the best care for patients? At the new facility rather than at one that already exists?

Dr. Biondolillo stated that DoN is responsible for ensuring that the care to be provided will not result in unnecessary duplication of services. The licensure requirements will be overseen by HCSQ per usual and it appears from the interface between DoN and HCSQ that the proposed service will not bring other parties' facilities below the required volume minimums. HCSQ looks more at quality of care than does DoN but in this case, quality standards do not seem to be negatively impacted.

Dr. Rosenthal expressed concern that "the ACO tail may be wagging the fee for service dog." The rationale for the exception makes sense in two circumstances: First, if the patients that are going to use this service are part of their ACO. The second is that the ACO has sufficient need for this service to make it cost effective. You don't want to send patients to other facilities if it is more cost effective to keep the diagnostic services in-house. She asked about the extent to which these services will be used by patients of the ACO and how much use will be by patients with primary care providers in the ACO?

Dr. Biondolillo replied that the analysis assumed that patients who will use this service will be coming from within the Steward system. She stated that the objective is that there be assurance of high quality services at all facilities and ensuring that all facilities that are operational meet the minimums. The transition from fee for service to accountable care will take time. The process is an evolution and DPH is part of the evolution.

Dr. Wong acknowledged the relationship between minimum volumes and quality. He expressed concern that in settings where the number of individuals needing the service is limited, providers will need to attract more



patients to maintain sufficient volume. If there are existing facilities that have established their expertise in providing high quality services, are new facilities for cardiac cath services really necessary?

Dr. Blondolillo responded that we are balancing relying upon known quality standards while trying to make sure that our policy decisions don't prevent health reform from moving forward. The circular letter does speak to the issue of small point of service providers. A new facility has a glide-path to get up to speed with the minimums, and if they can do that, then they will be deemed able to provide the services. DoN looks at unnecessary duplication of services and does not limit a service to one single provider in an area. In this case, it did not appear that a new service will unduly affect other providers.

Mr. Plovnick stated that in table 2 of page 4 of the memo, DPH reproduced data from the applicant that showing the number of cardiac catheterizations currently performed on Steward patients in the area, and it is projected that some, but not all, of the diagnostic procedures will be performed at St. Anne's.

Dr. Woodward mentioned that if this wasn't an ACO issue, then we would say that it makes no sense to duplicate services. On the quality of care, we want to ensure that this is strictly diagnostic and not about acute patients.  If a patient is determined to need an intervention, where are those patients going, two miles down the road or to one of Steward's other facilities?

Linda Bodenmann, Executive Vice President and Chief Operating Officer of SouthCoast and Dr. Margaret Ferrell, Physician-In-Chief for Cardiovascular Services, addressed the Council: This matter is much more than a DoN. Approval of the post-DoN application would be based on bad policy.  In 2008, DPH implemented a moratorium on establishment of new diagnostic cath labs within 30 miles of an existing lab. This barred Steward's cath lab because Southcoast has primary angioplasty and is less than two miles from St. Anne's. But on August 13, 2013, Steward filed this application. At that time, DoN staff questioned whether it could be licensed due to the moratorium and no action was taken by the Department. Then in 2014, the Department created an exception. SouthCoast is also an ACO, also committed to health reform. The rule change affected Department regulations and should have gone through the regulatory process. There were concerns about the number of diagnostic cath labs that were below minimum volumes, and the circular letter allows establishment of a new cath lab within two miles of a program with primary, 24/7 access. The DoN standard is duplication, not unnecessary duplication. 86% of the population statewide has access to a PCI program, there is no need for an additional PCI program and 9 out of 12 existing diagnostic-only cardiac cath services in MA are operating below minimum thresholds, so that this recommendation is in contradiction to the recommendation regarding minimum volumes. We can continue to treat these patients rather than create expensive diagnostic services that aren't necessary. 210 of the cases at St. Luke's were done by physicians affiliated with Steward.  If those physicians take 210 patients to St. Anne's, St. Luke's will be below volume minimums.

Craig Jesiolowski, President, St. Anne's Hospital, Dr. Mark Girard, Steward Hospital Group,  and Andy Levine, Counsel for St. Anne's, came before the Council. As an ACO, we are committed to achieving the highest quality care while reducing total medical expense. Have determined that heart disease is prevalent among a significant group of patients, and many of these patients have 4-6 co-morbidities and they see multiple providers with much medical information that needs to follow these patients.

Dr. Rosenthal asked how many of the 379 patients projected by St. Anne's come from their primary care population?
[St. Anne's] All patients will be coming from the PCP, all are part of the ACO
Dr. Rosenthal-  So these are all Medicare patients?
[St. Anne's] We don't define ACO as only Medicare patients. We don't define patients according to their insurance, we apply ACO management to everyone. We treat patients according to disease management, delivery of care, not insurance.

6

Dr. Woodward asked if it the service will be limited to 7 AM-3 PM, is all elective, and if the projection includes only patients from MA?

[St. Anne's] Patients are coming from Fall River and New Bedford and it would also serve our Taunton area patients, as there are no cardiac cath services in that area.

Dr. Woodward- Where do you send the patients if they need intervention

[St. Anne's]- elective intervention is according to provider and patient preferences. We think we achieve high quality and value of care if we keep it integrated within the system, but it is up to the patient. For the acute cases, then we will act in the best interest of the patient, and if time is of the essence they will be sent out of the network.

Mr. Lanzikos asked staff if they have a sense of how the capacity for this service compares in this service area as compared to others around state currently, and if this is approved, is it going to have more, less, or comparable capacity than others?

Dr. Biondolillo replied that we are in the process of doing health planning across 52 different service lines, and that PCI is under review. It will probably be a period of months before we will be able to answer more specifically. What we have done so far is to show that the rate of hospitalization and disease is quite high. We have not done an analysis of capacity yet.

Mr. Lanzikos asked in light of the analysis, why the matter is before the Council now, rather than waiting until completion of the health plan.

Dr. Biondolillo stated that we the timeframe for completion of the health plan is uncertain, but this application is before the Department and needs to be addressed in one way or another.

Mr. Lanzikos: what happens if this is postponed?

Dr. Biondolillo: We have to ask the applicant what happens.

Ms. Doherty asked Southcoast why the prevalence of CHD in the area is 74% higher than other parts of the state, and what is being done regarding disease prevention.

Dr. Biondolillo agreed with Ms. Doherty on the need for prevention with the high rate of disease. Commissioner Bartlett asked if either party wished to comment.

Dr. Farrell: The rate of disease is incredibly high, and I think we all know the challenges of treating the population in New Bedford and Fall River due to various issues, but to say that opening a cath lab is the answer, as opposed to prevention services. Dr. Farrell questioned the idea of opening a new cath lab based on 2012 numbers.

Dr. Girard noted that prevention and wellness measures are an important part of the practice of population health management which is a core responsibility of an ACO.

Dr. Woodward asked if the Invasive Cardiac Services Advisory Committee ("ICSAC") has been consulted on this DoN?

Dr. Biondolillo stated that the ICSAC has met continuously to advise DPH on Department policy, including this issue currently being discussed as well as the circular letter, which is an extension of previous regulation and guidance. The ICSAC did not discuss the circumstances of this specific DoN.

Dr. Cunningham asked what is the role of the Council in procedures for updating policies.

Carol Balulescu, Deputy General Counsel stated that the matter before the Council is the DoN for the build out of shell space and about what the shell space is going to be used for. Approval of a cardiac cath service is a licensing

7

issue, which is the authority of HCSQ.  Denial of the DoN today would say that St. Anne's could not build out shell space for a cath lab, but not that St. Anne's cannot have a cath lab. The licensure regulations establish standards. It was a sub-regulatory letter in 2008 that put the brakes on the regs, establishing a moratorium on new cardiac cath services, but the regulatory standards remain in place.  It is only because St. Anne's wants to build out shell space, which was part of a previously approved DoN that they are before Council with this matter.

Dr. Cunningham asked what was the Council's role during the adoption of the previous circular letter about the moratorium.

Attorney Balulescu stated that circular letters or advisories generally do not come before Council.

Dr. Rosenthal asked if it was within the power of Council to table this motion and if so how, if the Council can request a hearing on the circular letter, and if Council can wait until the Health Planning Council has completed its review of cardiac cath services.

Attorney Balulescu stated that it is within Council's authority to approve or disapprove a DoN action and if Council determines that it lacks sufficient information, it has the ability to table and ask for additional information.

Dr. Wong stated that safety and quality trump health reform.  In this situation, safety and quality may be at odds with the health reform act.  He asked if, with respect to the 9 out of 12 diagnostic-only cardiac cath programs operating below the minimum volume threshold, does DPH have regulatory authority over them?

Dr. Biondolillo stated that the Department reviews data that the facilities are required to submit.  If they are not meeting the volume minimum, they must submit a correction plan.  If the plan that they submit is not sufficient, then the circular letter gives them 30 days to respond.  This process is actively ongoing with HCSQ.

Dr. Wong asked if higher complication rates have been observed for those facilities that are not meeting the volume minimum.

Dr. Biondolillo stated that this has not been observed and that in cath labs in Massachusetts, such rates are extremely low.

Mr. Lanzikos stated that he does not understand the consequences, particularly to SouthCoast, of approving the DoN.  He asked to see more information including the consequences to Southcoast if approved and more analysis of the impact to the existing program in comparison to the one proposed.

Dr. Biondolillo stated that the health planning process is more regionally focused and not intended to focus upon individual facilities.

Mr. Lanzikos requested additional staff analysis on this specific application, in this service area, on the population's morbidity and mortality, and a better understanding of what would happen to the existing program if this program were realized.  Would it be mutually beneficial?

Mr. Plovnick reminded Council that there is another process that is still pending with HCSQ for approval of the cardiac cath service.  In 1997, DPH ended DoN regulation of cardiac cath as a substantial change of service.  The impact of numbers will be addressed in the HCSQ process.

Dr. Cunningham said that he would like better clarity on what is happening in 2014 for prevention as compared to 2012 and asked how long it would take to look at this?

Dr. Biondolillo stated that the Health Planning Council had decided to conduct a "level 3" analysis on cardiac cath with a more in depth focus on policy issues.  Part of the reason why the process takes longer is because of the statewide focus.

Commissioner Bartlett asked Southcoast and St. Anne's to make a closing statement.

Dr. Farrell stated that 460 is the number of diagnostic caths at St. Luke's facility in 2014 annualized to the fiscal year. Also some confusion here regarding the Masscomm trials, they were PCI trials, and have little or no bearing on diagnostic catheterization. Commissioner Bartlett clarified that the trials were brought up in regards to timing of the circular letter, only.

Counsellor Levine spoke on behalf of St. Anne's. Regarding the circular letter: the applicant embraces the requirements in that letter. Mr. Levine also noted that the requirement that hospitals with cath labs report and are monitored by the Department are also contained within that circular letter. So it's a very comprehensive circular letter. In addition, Mr. Levine noted that the reason St. Anne's was before the Council that day was because of the decision to place the cath lab in that particular shell space. The circular letter gives other ACOs the right to open cath labs and were it not for the choice of using shell space, we would not be here.

Dr. Woodward asked if there could be an accommodation that ACO physicians can perform cardiac cath procedure in one location or another and that they can get the health records from each hospital sent to a lab that is two miles away.

Dr. Rosenthal moved to table the DoN pending further information from health planning, further clarification regarding the circular letter, and an assessment of the potential impact on public health based upon projections in this area.

Dr. Wong asked to make a friendly amendment that would require staff to come back to PHC in a time frame not to exceed 6 months.

Mr. Lanzikos moved to table the DoN, Ms. Prates- Ramos seconded the motion. All approved.

ITEM 3: FINAL REGULATION
Request for Approval to Promulgate Final Regulations: 105 CMR 222.000: *Massachusetts Immunization Information System*

Following the presentation, Commissioner Bartlett opened the floor for discussion.

Dr. Woodward stated that there has been a 20% increase of usage since September with 500 providers. Mr. Cranston stated that the ultimate goal is to have all providers who administer vaccines to be submitting immunization data to the MIIS. Mr. Taleblan confirmed that the total number of providers that will eventually be submitting date is approximately 3,000. Some provider sites are reporting as a group instead of individuals.

Dr. Woodward asked for DPH to clarify the comments submitted by local health departments saying it is unfair for DPH to require local boards of health to comply. Mr. Cranston responded that there is a perception that local boards are being held to more stringent standards, which is not the case. The law and the proposed regulations would apply equally to all providers who give immunizations.

Dr. Woodward inquired about the one complaint about the system freezing and whether there is pattern of complaints about this issue. Mr. Taleblan stated that the vast majority of the times, the issues are at the end user side. It is often related to the internet bandwidth or other IT infrastructure at the provider office.

Mr. Brindisi commented that DPH used the term over immunizing for flu and if we have data? Mr. Taleblan stated that there is no hard data, but we know covered rates are lower than they need to be. Our system that quantifies this information is primarily a national phone-based survey. . Once the MIIS has more complete information, we can better qualify this. Mr. Brindisi stated that for local boards of health to set up a system for entering flu

immunization data real time during a flu clinic is difficult; typically they take the forms back to their offices and enter the data after the clinic.  So if we really need the flu data in real time in order to prevent over immunization then we need to ensure it is a real issue. Mr. Cranston stated that real time data is also important for emergency planning purposes as individuals have a hard time knowing if they were up to date on vaccinations which is important especially in outbreak situations.

Mr. Lanzikos asked for chain pharmacies, what entity is registered?  Is it the individual pharmacy or the chain? Mr. Talebian stated that the whole chain is registered as one entity and typically reports data to us in aggregate but the data can be identified down to the individual site location. Chains have been very cooperative, Walgreens was a very early adopter of the system and several other chains are coming on board in the near future.

Ms. Doherty commented on the question on over immunization. The problem is that you have an aging population with dementia, an elderly person may be offered a flu vaccination at their local council on aging, then again at the pharmacy clinic and at their PCP. This happens more than you think and access to information is key. Dr. Cunningham commented that it was suggested to him that he receive a double dose.  Mr. Talebian mentioned that it is important that the clinicians have immunization information in a timely manner

At the conclusion of the presentation, Commissioner Bartlett asked for a motion to approve.  Dr. Woodward made the motion and Dr. Bernstein seconded.  All approved.

ITEM 4: FINAL REGULATION
Request for Approval to Promulgate Final Regulations: 105 CMR 158.000: *Licensure of Adult Day Health Pragrams*

Following the presentation, Commissioner Bartlett opened the floor for discussion.

Dr. Bernstein asked for clarification regarding discharge criteria at the day center.
Ms. Nelson responded that there are very specific requirements for an Adult Day Health Program to initiate discharge of a participant, including behavioral or safety concerns, or in the instance when a participant has a health condition that requires more intensive medical oversight than a Program can provide.

Mr. Lanzikos asked that of the 50 or so that are operating without certification, how will they identify to come into compliance?  Are they self-identifying or being sought out, and what do we do if they say they aren't an adult day health program?
Ms. Nelson stated that the definition is clear and that we will be publishing sub-regulatory guidelines Lauren-definitions are quite clear, with sub-regulatory guidance and will plan on working with the community to ensure that they are all captured.

Mr. Lanzikos stated as far as RN staffing issues, is there a schedule with a bumper? If we schedule 24, 21 will show up.  When determining ratios, will you be looking at scheduled participants or those that are anticipated.
Ms. Nelson stated that this will be staffed for the expectation for scheduled participants with the understanding that the number of participants fluctuate.
Ms. Aliwes stated that Adult Day Health licensure and enforcement will be modeled after the licensure and enforcement mechanisms that the Department uses for similar facilities.    DPH will be looking at the trend analysis based on the time of year and the week.

Ms. Doherty asked if anyone has considered the CPR requirement for bus service as many Programs offer bus services through Medicaid. Those who aren't Medicaid payors, how are they paying; are they public payors, and do we know if other payors, or types of insurance are willing to pay?
Ms. Nelson answered that we are not aware of what these other facilities have as far as payment terms and will learn of those as we go.  Complaints from consumers will be handled in the same manner as the Department handles complaints regarding other types of facilities.

10

After no further comments, Commissioner Bartlett asked for a motion to approve the regulations.  Dr. Rosenthal moved for approval and Mr. Lanzikos seconded.  All approved.

ITEM 5: PRESENTATION
Prevention and Wellness: Innovation and Success

Following the presentation, Commissioner Bartlett opened the floor for discussion.

Carlene Pavlos, Director, Bureau of Community Health and Prevention and Lea Susan Ojamaa discussed chronic disease initiatives and how Massachusetts has become a national model and how the department integrated 9 individual programs operating separately, and how they came together.  Ms. Pavlos and Ms. Ojamaa will return early 2015 to continue to update the Council on these matters.

Before the Commissioner closed the meeting, Dr. Kneeland thanked the Commissioner for her service as Commissioner of Public Health.  During his 14 months on the Council, he recognized the work of DPH staff and is thankful for them for setting high standards for the residents of the Commonwealth, under the Commissioners leadership and wishes her well in her next endeavor.

Commissioner Bartlett asked for a motion to adjourn.  Dr. Wong made the motion and Mr. Lanzikos seconded.

The meeting adjourned at 11:45AM on a motion by and passed unanimously without discussion.


LIST OF DOCUMENTS PRESENTED TO THE PHC FOR THIS MEETING:
1. Docket of the meeting
2. Minutes of the Public Health Council meeting of November 12, 2014
3. Steward St. Anne's Hospital Corporation Request for Approval of Significant Change Amendments to Previously Approved Project #5-3CO8- Southcoast Hospitals Group's Response to the Staff Recommendation issued November 19, 2014.
4. Request for Approval to Promulgate Final Regulations: 105 CMR 222.000: *Massachusetts Immunization Information System*
5. Request for Approval to Promulgate Final Regulations: 105 CMR 158.000: *Licensure of Adult Day Health Programs.*
6. Copies of all power point presentations (emailed upon conclusion of the meeting)

Commissioner Cheryl Bartlett, Chair

## **<u>Attachment/Exhibit</u>**

### **<u>B</u>**



# Cardiac Catheterization

## *The Need for Integrated, Comprehensive Cardiac Care at Saint Anne's Hospital*

1

# Comprehensive Cardiac Care at Saint Anne's Hospital is Essential

- **With the highest prevalence of chronic disease and heart disease in Massachusetts, Fall River has significant unmet need for comprehensive cardiac services**

- Approval of Cardiac Catheterization services will complement Steward's ACO model, provide comprehensive cardiac services to its patients and mitigate unmet need in Fall River without compromising other providers' capacity

- Steward's integrated ACO model has proven it can provide comprehensive cardiac services at a lower cost and improve patient care outcomes

2



# Fall River Faces a Public Health Crisis & Underperforms On All Social Determinants of Health

## Fall River vs. Massachusetts

| Socioeconomic Profile | Fall River | Massachusetts |
|---|---|---|
| Median Household Income | $33,211 | $65,866 |
| Unemployment Rate | 10.8% | 5.4% |
| % Below Poverty | 23.3% | 11.4% |
| Public Payer Mix | 81% | 65% |
| **Disease Prevalence** | | |
| Percentage of People With 4+ Chronic Conditions | 70.3% | 59% |
| Rate of Coronary Heart Disease per 100,000 | 665* | .382 |
| Heart Disease Death Rate | 317.4 | 279.9 |
| Hospitals with Cardiac Cath. per 100,000 residents | 0.37 | 0.79 (Boston) |

*The Rate of Coronary Heart Disease in Fall River is Almost 75% More Than the Rate of Massachusetts as a Whole

Source: 2009-2013 American Community Survey 5-Year Estimates, US Census Bureau; MHDC Inpatient Database; *Highlights from the Massachusetts Healthy Aging Data Report: Community Profile 2014*, Tufts Health Plan Foundation.

3



Steward

# Fall River – a Low Income Community – Has the Highest Prevalence of Multiple Chronic Diseases in Massachusetts

## Percentage of People With Four Or More Chronic Diseases in Massachusetts



Fall River 70.3%

Massachusetts 59.0%

Fall River has high prevalence of chronic disease, high unemployment and low median household income: all strong measures of social determinants of health

: Note: Analysis of people aged 65+ years.
Source: *Highlights from the Massachusetts Healthy Aging Data Report: Community Profiles 2014*, Tufts Health Plan Foundation.

Steward

4

# With the Highest Rate of Heart Disease in Massachusetts, Fall River Has Significant Need for Additional Cardiac Services

## Rate of Coronary Heart Disease Per 100,000 by State Region



Greater Fall River

| Boston | Northeast | Metro West | Western | Central | Metro South | Cape & Islands | Greater Fall River | Massachusetts |
|--------|-----------|------------|---------|---------|-------------|----------------|--------------------|---------------|
| 269 | 355 | 374 | 391 | 399 | 487 | 488 | 665 | 382 |

Hospitals With Cardiac Cath per 100,000

| 0.79 | 0.75 | 0.81 | 0.63 | 0.35 | 0.80 | 1.03 | 0.37 | 0.72 |

Note: Health Planning Council regions shown.
Source: Hospital Inpatient Discharge Database, DPH.

<370
370 to 400
400 to 500
>500

Steward

5

# Almost 60% of all Hospital Discharges in Fall River Have Cardiac Co-morbidities

## Fall River
## Inpatient Discharges



| Cardiac Co-Morbidities: Fall River DRGs |
| --- |
| Atrial fibrillation |
| Essential Hypertension, unspecified |
| Acute on chronic diastolic heart failure |
| Acute on chronic systolic heart failure |
| Chronic diastolic heart failure |
| Chronic systolic heart failure |
| Congestive heart failure, unspecified |
| Coronary atherosclerosis of native coronary artery |
| Other primary cardiomyopathies |

Cardiac or Cardiac-Comorbid Services
58%

Other 7%

General Surgery
3%

Psych And Substance Abuse
4%

Source: MHDC Inpatient Database, FY2012.



Steward

6

# At Number One, Bristol County (Fall River Area) Has the Highest Heart Disease Death Rate in Massachusetts

## Heart Disease Mortality Rate per 100,000
### 2010 to 2012

| County | Heart Disease Death Rate Per 100,000 |
|---|---|
| Middlesex | 252.3 |
| Dukes | 262.6 |
| Norfolk | 262.8 |
| Nantucket | 263.8 |
| Suffolk | 265 |
| Barnstable | 272.8 |
| Essex | 284 |
| Franklin | 290.5 |
| Worcester | 291.2 |
| Hampshire | 291.9 |
| Berkshire | 292.2 |
| Hampden | 308 |
| Plymouth | 316.9 |
| **Bristol** | **317.4** |



Bristol County

<260
260 to 280
280 to 310
>310

Source: Interactive Atlas of Heart Disease and Stroke Tables, Division for Heart Disease and Stroke Prevention, CDC.

7


Steward

# Despite Having The Highest Prevalence of Heart Disease, Fall River Has Less Access to Cardiac Care Than Wealthier Communities

## # of Hospitals with Cardiac Catheterization by Community Income
### Eastern Massachusetts



| | Less Than $40,000 | $40,000 to $70,000 | More Than $70,000 |
|---|---|---|---|
| Example Cities/Towns: | Lawrence | Attleboro | Cambridge |
| Fall River $33,211 | | | |



Note: Eastern Massachusetts hospitals shown.
Source: American Community Survey 2009 to 2013, US Census Bureau.

8



| Hospital Name | Community Income |
|---|---|
| Lawrence General Hospital | Less Than $40,000 |
| Southcoast- St. Luke's | Less Than $40,000 |
| Boston Medical Center | $40,000 to $70,000 |
| Lowell General Hospital | $40,000 to $70,000 |
| Lowell Saints Campus | $40,000 to $70,000 |
| North Shore Medical Center | $40,000 to $70,000 |
| Signature Healthcare Brockton Hospital | $40,000 to $70,000 |
| Steward Carney Hospital, Inc. | $40,000 to $70,000 |
| Steward Good Samaritan Medical Center | $40,000 to $70,000 |
| Steward Holy Family Hospital, Inc. | $40,000 to $70,000 |
| Steward Quincy Medical Center | $40,000 to $70,000 |
| Sturdy Memorial Hospital | $40,000 to $70,000 |
| Anna Jaques Hospital | More Than $70,000 |
| Beth Israel Deaconess Medical Center | More Than $70,000 |
| Brigham and Women's Hospital | More Than $70,000 |
| Hallmark Health | More Than $70,000 |
| Jordan Hospital | More Than $70,000 |
| Lahey Clinic | More Than $70,000 |
| Massachusetts General Hospital | More Than $70,000 |
| MetroWest Medical Center | More Than $70,000 |
| Mount Auburn Hospital | More Than $70,000 |
| New England Baptist Hospital | More Than $70,000 |
| Northeast Hospital | More Than $70,000 |
| South Shore Hospital | More Than $70,000 |
| Steward Norwood Hospital, Inc. | More Than $70,000 |
| Steward St. Elizabeth's Medical Center | More Than $70,000 |
| Tufts Medical Center | More Than $70,000 |



Despite Having The Highest Prevalence of Heart Disease, Fall River Has Less Access to Cardiac Care Than Wealthier Communities

Rate of Coronary Heart Disease Per 100,000

Hospitals with Cardiac Catheterization Services

Note: Health Planning Council regions shown.
Source: Hospital Inpatient Discharge Database; DPH.

# Comprehensive Cardiac Care at Saint Anne's Hospital is Essential

- With the highest prevalence of chronic disease and heart disease in Massachusetts, Fall River has significant unmet need for comprehensive cardiac services

- **Approval of Cardiac Catheterization services will complement Steward's ACO model, provide comprehensive cardiac services to its patients and mitigate unmet need in Fall River without compromising other providers' capacity**

- Steward's integrated ACO model has proven it can provide comprehensive cardiac services at a lower cost and improve patient care outcomes



10

# Saint Anne's is Limited in its Ability to Offer Comprehensive Cardiac Services to the Patients It Serves in its ACO Model

Even though Steward's ACO has almost 50% of the primary care physicians in the Fall River area, they are forced to send patients out of Steward's accountable care network, leading to among other concerns:

- Disruption in patient care
- Higher medical costs
- Duplication in tests and care procedures

Without cardiac catheterization services, Saint Anne's cannot provide fully integrated, comprehensive cardiac care to its patients

This gap in service also impedes Steward's ability to offer coordinated care for patients Steward serves under full clinical and financial risk in Medicare and commercial insurance markets.

Cardiac Services Market Share
Fall River area



Partners Other
4%     3%

St. Anne's
29%

Steward

Note: Fall River area includes the towns of Fall River, Somerset, Tiverton-Little Compton (RI), and Westport.
Source: MHDC Inpatient Database, FY2012.

11

# Fall River Area Has A Significant Need For Cardiac Catheterization

Steward Health Care Network (SHCN)
Diagnostic Catheterizations
N=1,500+



Steward Saint Anne's projections show that more than 1,500 diagnostic catheterizations are needed in Fall River within the Steward ACO network



12

# Steward's ACO Model is Under Full Risk, Delivers High Quality, and Does Not Increase Costs

- Steward's ACO model is at full clinical and financial risk for all of its patients. It is incented to proactively coordinate and manage patient care

- Southcoast participates in Medicare Shared Savings Program Track 1, which has minimal risk and thus less incentive to proactively manage and coordinate patient care



| Steward | | Southcoast |
|---|---|---|
| Pioneer ACO | Program | Medicare Shared Savings Program Track 1 |
| Upside & downside risk | Risk | Upside-only (No downside risk) |
| $19.1 million in savings to Medicare | Savings/Losses | $0[1] |

1. CMS MSSP results as of September 2014. (http://www.cms.gov/Medicare/Medicare-Fee-for-Service-Payment/sharedsavingsprogram/Downloads/MSSP-PY1-Final-Performance-ACO.pdf)

13

# Comprehensive Cardiac Care at Saint Anne's Hospital is Essential

- With the highest prevalence of chronic disease and heart disease in Massachusetts, Fall River has significant unmet need for comprehensive cardiac services

- Approval of Cardiac Catheterization services will complement Steward's ACO model, provide comprehensive cardiac services to its patients and mitigate unmet need in Fall River without compromising other providers' capacity

- **Steward's integrated ACO model has proven it can provide comprehensive cardiac services at a lower cost and improve patient care outcomes**

14



# Steward's ACO Model Has Proven That It Can Lower Costs and Improve Patient Outcomes in Cardiac Care

## Average Total Cost of Care Within 90 days
### (Including Cardiac Catheterization)



Source: Steward Health Care Data 2014.

15

# Steward's ACO Model Has Proven That It Can Lower Costs and Improve Patient Outcomes in Cardiac Care



Medicare Pioneer ACO Total Medical Expense Per-Member-Per-Month
Fall River Residents

**Overall Population**

Southcoast is 78% higher cost

Southcoast: $1,334
Steward: $748

**Cardiac Population**

Southcoast is 56% higher cost

Southcoast: $2,203
Steward: $1,412

Source: Steward Health Care Data.

16

# Given Steward's Success In Other Markets, Saint Anne's is Confident It Will Reduce Care Fragmentation and Improve Quality

- Currently, Steward's Fall River patients who require cardiac catheterization services must seek treatment out-of-network, which increases care fragmentation and worsens care outcomes

- A cardiac catheterization lab at St. Anne's will help keep patients in-network and improve quality—which Steward has demonstrated at other locations in its ACO model



Commercial
AQC Quality Scores: 2008-2014

Medicare Pioneer
% Quality Improvement (2012 vs. 2013)

Source: Steward Health Care Data



17

# Steward's ACO Model Has Proven That It Can Lower Costs and Improve Patient Outcomes: **Quality!**



18



Steward's ACO Model Has Proven That It Can Lower Costs and Improve Patient Outcomes: Quality!

**Emergency Room Visits/1000**
Three Month Post-Enrollment

**Hospital Readmission Rate**
Initial Admissions January '13 through June '14

■ Non-Steward Discharge   ⧉ Steward Discharges

Source: Steward Health Care Data

19

# Cardiac Catheterization at Steward St. Anne's Will Also Complement Steward's Award-Winning Cardiac Care Program At Its Other Locations

## St. Elizabeth's Medical Center

- Healthgrades 2014 America's 100 Best Cardiac Care,
- Healthgrades 2014 America's 100 Best Coronary Intervention,
- Healthgrades 2014 Cardiac Care Excellence Award and
- Healthgrades 2014 Coronary Intervention Excellence Award
- CareChex (Comparion Analytics) named St. Elizabeth's Medical Center #1 hospital in Massachusetts for interventional coronary care
- Only hospital in Boston and one of three in New England to receive the Truven Health 50 Top Cardiovascular Hospitals award (2013)
- First in New England and second in the U.S. to perform robotic percutaneous coronary intervention
- First lab in the U.S. to perform pulmonary vein isolation with 3D rotational angiography imaging
- ACC/NCDR Risk Adjusted Mortality below national benchmark

## Morton Hospital

- American Heart Association/American Stroke Association Get With The Guidelines™ heart failure and stroke programs (2009, 2010 and 2011)
- Designated as a Primary Stroke Center by the Massachusetts Department of Public Health
- Stroke Collaborative Reaching for Excellence (SCORE) "Defect-Free Care" Award (2011)

## Norwood Hospital

- American Heart Association/American Stroke Association Get With The Guidelines™-Stroke Silver Plus Quality Achievement Award (2012)
- Cardiac Rehabilitation program is certified by the American Association of Cardiovascular and Pulmonary Rehabilitation (AACVPR)
- Designated as a Primary Stroke Center by the Massachusetts Department of Public Health

## Holy Family Hospital

- Cardiac Rehabilitation program is certified by the American Association of Cardiovascular and Pulmonary Rehabilitation (AACVPR)

## Good Samaritan Medical Center

- Recognized by the annual Stroke Collaborative Reaching for Excellence (SCORE) with the National Institute of Health Stroke Scale Most Improved Award for a large hospital (2012)
- Cardiologist Joseph Weinstein, MD, was named one of America's "Top Cardiologists of 2011" by Consumers' Research Council of America (2012)

Steward's ACO Model Has Proven That It Can Improve Patient Outcomes in Cardiac Care at Lower Cost; Steward's Lack of Cardiac Cath Services in Fall River is A Major Obstacle to Achieving The Same, Award-Winning Results for Its Fall River Patients

"Population Health Management": Cardiac Care



**Cardiovascular Clinical Integration**

• Focus on prevention and medical management of appropriate populations

• Promote evidence-based protocols and care plans across the continuum and multiple sub-specialties

• Leverage larger care team to include pharmacists, health coaches, social work, inpatient and ambulatory care managers with enrollment in appropriate programs depending on severity of disease and co-morbidities

**Healthy Transitions & Wellness Initiatives**

• Post-discharge in home medication optimization

• Coordination with Hospital Case Mgmt on transitions of care and discharge care plan

• Coordination with appropriate at-home services as needed and PCP/specialist follow-up

• Farmer's market voucher program to encourage healthy eating

The lack of cardiac catheterization services is a major barrier to Steward's comprehensive cardiac care strategy in Fall River

**Chronic & Complex Care Management**

• Focus on patients with CAD, CVD, HTN, IVD & Hyperlipidemia

• RN Care management driven program for high risk cardiovascular population and those at risk with multiple co-morbidities

• Identifying high initiation of urgent and emergent services and those with poorly controlled chronic disease to ensure better patient engagement with PCP and appropriate specialists

• Close collaboration for PCPs, specialists and local hospital to ensure communication and coordination of care through transitions of care

**Readmission Prevention Program**

• Partnered with skilled nursing facilities by region, Steward staff round in facilities to ensure evidence-based protocols and appropriate medical management

• Provides continuity across the continuum of care

• Focus on decreasing readmissions from facilities and appropriate length of stay

• Proactive enrollment in Steward ambulatory Care Management programs

Steward

21

# Comprehensive Cardiac Care at Saint Anne's Hospital is Essential

- With the highest prevalence of chronic disease and heart disease in Massachusetts, Fall River has significant unmet need for comprehensive cardiac services

- Approval of Cardiac Catheterization services will complement Steward's ACO model, provide comprehensive cardiac services to its patients and mitigate the unmet need in Fall River without compromising other providers' capacity

- Steward's integrated ACO model has proven it can provide comprehensive cardiac services at a lower cost and improve patient care outcomes

22



# EXHIBIT 24



# The Commonwealth of Massachusetts
## Executive Office of Health and Human Services
### Department of Public Health
### Bureau of Health Care Safety and Quality
99 Chauncy St., 11th Floor
Boston, MA  02111

CHARLES D. BAKER
Governor

KARYN E. POLITO
Lieutenant Governor

MARYLOU SUDDERS
Secretary

MONICA BHAREL, MD, MPH
Commissioner

Tel: 617-624-6000
www.mass.gov/dph

## MEMORANDUM

TO:        Hospital CEO/President

FROM:      Deborah Allwes, BS, BSN, RN, MPH
           Director, Bureau of Healthcare Safety and Quality

RE:        Updated Memorandum on Cardiac Catheterization

DATE:      April 28, 2015

The memorandum issued by the Department of Public Health (the Department) on January 20, 2015, is revoked effective immediately.

The Department is currently reviewing best practices, national guidelines, patient outcomes, safety and quality for cardiac catheterization.  The Department expects this review to be completed by May, 2015.

Please note:  the revocation of the January 20, 2015 memorandum does not, in any way, limit or alter any other Department rules or guidance applicable to cardiac catheterization, including, but not limited to, the Minimum Workload Requirements contained in 105 CMR 130.935.

Questions about this letter should be directed to:  Gail Palmeri at the following email address Gail.Palmeri@state.ma.us or by phone at 617-753-8230.

# EXHIBIT 25

MINUTES OF THE PUBLIC HEALTH COUNCIL

Meeting of May 13, 2015

MASSACHUSETTS DEPARTMENT OF PUBLIC HEALTH

PUBLIC HEALTH COUNCIL
MASSACHUSETTS DEPARTMENT OF PUBLIC HEALTH
Henry I. Bowditch Public Health Council Room, 2nd Floor
250 Washington Street, Boston MA

---

Docket: Wednesday, May 13, 2015 9:00 AM

---

1. **ROUTINE ITEMS:**
   a. Introductions

   b. Updates from Commissioner Monica Bharel, M.D.

   c. Record of the Public Health Council Meeting April 8, 2015 **(Vote)**


2. **PRESENTATIONS**
   a. Review of Cardiac Catheterization

   b. Long Term Care Facility Update

   c. Breast Cancer Prevention

   d. Boston Marathon Update

   e. Executive Session

The Public Health Council will meet in Executive Session as authorized by M.G.L. c. 30A, s. 21(a)(3) for the purpose of discussing strategy with respect to litigation, specifically Zogenix, Inc. v. Patrick et al. and Medical Marijuana of Massachusetts v. Bartlett.

*The Commissioner and the Public Health Council are defined by law as constituting the Department of Public Health. The Council has one regular meeting per month. These meetings are open to public attendance except when the Council meets in Executive Session. The Council's meetings are not hearings, nor do members of the public have a right to speak or address the Council. The docket will indicate whether or not floor discussions are anticipated. For purposes of fairness since the regular meeting is not a hearing and is not advertised as such, presentations from the floor may require delaying a decision until a subsequent meeting.*

## Public Health Council

Presented below is a summary of the meeting, including time-keeping, attendance and votes cast.

**Date of Meeting:** Wednesday, May 13, 2015
**Beginning Time:** 9:11 AM
**Ending Time:** 11:18 AM

| Board Member | Attended | Item 1c Minutes of the April 8, 2015 | Item 2e Executive Session – Opening- Roll Call | Item 2d- Executive Session- Closing- Roll Call |
|---|---|---|---|---|
| Monica Bharel | Yes | Yes | Yes | Yes |
| Edward Bernstein | Yes | Yes | Yes | Yes |
| Derek Brindisi | Absent | Not Voting | Not Voting | Not Voting |
| Harold Cox | Yes | Yes | Yes | Yes |
| John Cunningham | Yes | Yes | Yes | Yes |
| Michele David | Yes | Yes | Yes | Yes |
| Meg Doherty | Yes | Not Voting | Yes | Yes |
| Michael Kneeland | Yes | Yes | Yes | Yes |
| Paul Lanzikos | Yes | Yes | Yes | Yes |
| Denis Leary | Absent | Not Voting | Not Voting | Not Voting |
| Lucilia Prates-Ramos | Absent | Not Voting | Not Voting | Not Voting |
| Jose Rafael Rivera | Yes | Yes | Yes | Yes |
| Meredith Rosenthal | Yes | Yes | Not Voting | Not Voting |
| Elizabeth Scurria Morgan | Not Voting | Not Voting | Not Voting | Not Voting |
| Alan Woodward | Yes | Yes | Yes | Yes |
| Michael Wong | Yes | Yes | Not Voting | Not Voting |
| **Summary** | **12** Members attended | **11** Approved with votes | **10** Approved with votes | |

3

PROCEEDINGS

A regular meeting of the Massachusetts Department of Public Health's Public Health Council (M.G.L. c. 17, §§ 1, 3) was held on Wednesday May 13, 2015 at the Massachusetts Department of Public Health, 250 Washington Street, Henry I. Bowditch Public Health Council Room, 2nd Floor, Boston, Massachusetts 02108.

Members present were:  Department of Public Health Commissioner Monica Bharel (chair); Edward Bernstein, MD; Harold Cox; Meg Doherty; Michael Kneeland, MD; John Cunningham PhD; Alan Woodward, MD; Paul Lanzikos; Michele David, MD; Meredith Rosenthal, PhD; Jose Rafael Rivera; and Michael Wong, MD

Absent member(s) were: Derek Brindisi; Lucilia Prates-Ramos and Denis Leary

Also in attendance was Elizabeth Scurria Morgan, Acting General Counsel at the Massachusetts Department of Public Health.

Commissioner Bharel called the meeting to order at 9:11 AM and made opening remarks before reviewing the agenda. The Commissioner's remarks included the following items:

**1b:  Updates from Commissioner Monica Bharel, M.D., MPH**

1. The Commissioner noted that there would be a change in the order of presentations at the Council meeting and that the Boston Marathon presentation would be going first.

2. The Commissioner recognized and congratulated three members of the Council for their various achievements.  Jose Rivera will be receiving the Lemuel Shattuck Award from the Massachusetts Public Health Association on June 2, Dr. Alan Woodward was honored on May 1 by the Massachusetts Medical Society as the 2015 recipient of its Lifetime Achievement Award and lastly, Dr. Meredith Rosenthal received the inaugural Mentoring Award from the Committee on the Advancement of Women Faculty at Harvard for her role in fostering a community of women in their personal and professional lives.

   In addition, Commissioner Bharel spoke about the Department's Employee Recognition event and reminisced about one of her favorite accolades of the day.

3. The final Public Task Force on Opioids was on May 1. The task force will be in executive discussion throughout the month of May to discuss recommendations to present to the Governor by June 11.

4. At the end of April, Massachusetts had its first confirmed case of measles. DPH has been consistent in its communication with clinicians and health care facilities over the past several months. Commissioner Bharel took a moment to thank the staff at the Bureau of Infectious Disease for their quick response on getting accurate information out to the public and for their vigilance in protecting the health of Massachusetts residents.

5. Commissioner Bharel updated the members on some of the work the Department had presented to the Council over the past few months.

   a. In March, Carlene Pavlos and Alan Holmlund from our Suicide Prevention Program presented about their work within the Department. Thanks to DPH's participation in the National Violent Death Reporting System, we are able to look more closely at the circumstances of suicide in MA.

   b. During the April meeting, Georgia Simpson May presented on the Office of Health Equity and about the state's Health Needs Assessment of People with Disabilities. A question was asked about the number of respondents that identified with more than one of the "Top 10 Big Problems." Out of the 865 respondents, 65% identified with 5 or more of the top 10 issues. 9 of the top 10 listed in 10% and 6% identified with all 10.

**1c: MINUTES (Vote)**

Record of the Public Health Council Meeting April 8, 2015 (Vote)

Commissioner Bharel asked for a motion to approve the minutes from April 8, 2015. After no discussion, Dr. Alan Woodward made a motion to approve the minutes and Dr. Michael Wong seconded. All voted in favor.

- 9:37 AM Meg Doherty arrives (after the vote of minutes)

5

**PRESENTATIONS:**

**d. Boston Marathon Update**

Mary Clark, Director, Bureau of Emergency Preparedness presented on updates from the Boston Marathon.

At the conclusion of the presentation, Commissioner Bharel asked the members if they had any questions.

Dr. Bernstein – Asked if there were any value in tracking the amount of people who start, but do not finish the race?

Ms. Clark – Agreed this would be helpful and could be tracked by...

Mr. Rivera – Asked about medical tents and staff with limited English proficiency.

Ms. Clark – The American Red Cross does provide...

**e. Review of Cardiac Catheterization**

Deborah Allwes, Director of Health Care Safety and Quality presented on a review of cardiac catheterization alongside Suzanne Cray, Director of Health Care Integration and Carol Balulescu, Deputy General Counsel

At the conclusion of the presentation, Commissioner Bharel opened up the floor for questions.

Dr. Woodward – Referenced a Circular Letter of July 2014 – is this still the feeling of the ICSAC (Invasive Cardiac Services Advisory Committee)?

Ms. Allwes – We are going to be reengaging with the ICSAC to see if this is still their feeling.

Dr. Woodard – What is the time frame for the updated regulations?

Ms. Allwes – I don't have a specific date for you.

Dr. Woodward – What is the timing of the DoN that we have reviewed on this issue?  Will it come before the updated regulations?

Ms. Allwes – This Is under review.  The licensing component would not come back to the Public Health Council as it would go through the Bureau of Health Care Safety and Quality.

Dr. Woodward –The concern of the Council is establishing another Cath Lab next to one that already exists.  They are expensive to staff. I like your table, but I would love to color the dots as related to their capabilities. It'll help us understand regional access issues.

Ms. Allwes- We will provide updated maps.

6

Dr. Rosenthal – One issue to put on the table is appropriateness through the same data you use to judge quality. Can Mass-DAC data judge this? I believe that it uses mortality as the key standard but you should try to figure out how to factor in appropriateness of the procedures. I worry about the volume minimums. Your data would do well to get into that. She noted her concern that an entity is not an ACO for all patients at all times. The ACO loophole that was announced last year concerns me as it allows the entity to circumvent the process. You need to look at the purpose of expansion for quality purposes.

Ms. Doherty – Is there a known risk assessment tool for interventions? We can look at evaluating this. You mentioned using correcting action. What did you mean?

Ms. Allwes – We will look at the possibility of a risk-assessment tool during the regulation review. People have to meet volume minimums. We know people don't meet these volume minimums so what do we do? In terms of corrective action plan, I meant that we identified the need to update our regulations and our corrective action is to engage stakeholders to do so.

Dr. Woodward – It's a complex equation. The concept of having a site in close proximity that is marginal in terms of volume, but has less service, really begs the access and quality. Let's figure out how to address this.

Dr. Bernstein – At some point we'll need information on ACO and health planning. This may be positive information but need to learn more.

### f.  Long Term Care Facility Update

Deborah Allwes, Director, Bureau of Health Care Quality and Safety presented an update on long term care facilities alongside Sherman Lohnes, JD, Director of the Division of Health Facilities Licensure and Certification.

At the conclusion of the presentation, Commissioner Bharel opened up the floor for questions.

Mr. Lanzikos – This effort is not sufficient. A review of regulations and best practices is long overdue in Long Term Care Facilities. We need state of the art. Many of these facilities do need to be updated in standards of care and ambiance. However, since 2009 over $600 million for upgrades affecting 10,000 beds was approved under the radar. There has been a capacity shift from urban to suburban settings. Long term support care is transitioning to short term

rehabilitation capacity.  We will end up with excess capacity that is not easily converted to long term care space.  I think nursing facilities have an exquisitely important role to play going into the future. Facilities must interface with the community and its needs.

Ms. Doherty – I am in agreement with Paul Lanzikos. Lack of regulatory updates is leading to inappropriate admission to assisted living facilities.  We are not a certificate of needs state for homecare. I think this is something that has to be addressed as well.

Dr. Wong – I agree with all the statements that have been made so far. It's long overdue. Are you able to get access to quality access data that are measurable? Has that been able to be linked to some of the outcomes that you're seeing?

Mr. Lohnes – Yes, there is information available.

Ms. Doherty – Offered Ms. Allwes the link…

Dr. Bernstein – How can Emergency closure, such as a natural disaster be linked into the system?

Ms. Allwes – Your comment is well noted about emergency closures. We work very closely with Mary Clark in Emergency Preparedness.

Dr. Woodward – This is another timely topic and the right time for review. What is the timeframe for these regulations? Will the Governor's proclamations impact this information coming to us in a timely manner?

Ms. Allwes – It should not impact this specific process.

Ms. Scurria Morgan – There is going to be a tool issued from Administration and Finance to help with this process.

Mr. Lanzikos – I'd like to reiterate that we do not want to wait on a tragedy to respond to this. Too many elders are not properly taking or being administered medications, and we cannot rely solely on RNs to do this.  Long term care facilities cannot take the stance they do not provide mental health – that has to change.  $600 million was spent over six years could be better spent on things other than just capital expenditures.

Commissioner Bharel –  The Department is a piece of this long term care pie, and we have to see how we fit into this pie with other agencies who have a role to play in long term care.

8

g. **Breast Cancer Prevention**

Anita Christie, Director of the Office of Clinical Preventive Services from the Bureau of Community Health and Prevention presented on breast cancer prevention alongside Lauren Nelson, Director of Policy and Quality Improvement at the Bureau of Health Care Safety and Quality.

At the conclusion of the presentation, Commissioner Bharel asked opened the floor up for questions.

- At approximately 10:30 AM – Both Dr. Meredith Rosenthal and Dr. Michael Wong left the meeting and did not return.

Dr. David – This particular data is really rare for us. What is being done to help physicians help guide patients with dense breast tissue?

Ms. Christie – Typically we see a 6 month follow up for dense breasts for a certain period of time, but there are no recommendations right now.

Commissioner Bharel – To your point, Dr. David, we are in this grey areas where the law precedes the clinical guidance on this.  Clinicians should advocate federally and with their trade groups for more guidance on this.

Mr. Lanzikos – Why does the care coordination only go to women at 64?

Ms. Christie – We often make exceptions to that, but we are bound by the Federal dollars, although we do have State dollars.

Mr. Lanzikos – Noted that issues like this are very overwhelming for women who have intellectual challenges.

Commissioner Bharel – Noted that this speaks to the broader issue of health literacy overall.

Ms. Christie – We have created a team of people that has been instrumental in helping with this.

Dr. Bernstein – We should be raising this at each level.

Ms. Christie – The credentialing piece that is currently happening has been long standing. We are going to be revising the curriculum.

Dr. Bernstein – Do you collect data by age as well?

Ms. Christie – Yes, we can definitely get that.

**h.  Executive Session**

At the conclusion of the presentations, Commissioner Bharel took a roll call vote to enter into executive session. This began at 11:07 AM. Dr. Edward Bernstein moved and Meg Doherty seconded.

Rebecca Rodman, Deputy General Counsel presented the litigation strategy with regard to Zogenix, Inc. v. Patrick et al.

At the conclusion of the presentation, Commissioner Bharel asked opened the floor up for questions. There were no questions or comments.

Kay Doyle, Deputy General Counsel presented all pending litigation relating to the Medical Use of Marijuana Program.

At the conclusion of the presentation, Commissioner Bharel asked opened the floor up for questions.

Dr. Woodward – Wanted to clarify the Council's role was only in approving the regulations.

Ms. Doyle – Answers Dr. Woodward's question.

Mr. Lanzikos – *Missed the specifics of his question.*

Dr. Woodward – I have a separate discussion.

Ms. Doyle – I'm happy to discuss this after Executive Session.

Dr. David – *Missed the specifics of her question.*

Ms. Doyle – Yes, that's a great question.


Commissioner Bharel asked for a motion to adjourn.  Mr. Rivera made a motion to adjourn and Dr. Edward Bernstein seconded.  All approved.


The meeting adjourned at 11:18 AM on a motion by and passed unanimously without discussion.


LIST OF DOCUMENTS PRESENTED TO THE PHC FOR THIS MEETING:
1.  Docket of the meeting
2.  Minutes of the Public Health Council meeting of April 8, 2015.
3.  Copies of all power point presentations (emailed upon conclusion of the meeting)

Commissioner Monica Bharel, Chair

# EXHIBIT 26





<u>Via Email and Hand Delivery – Return Receipt Requested</u>

Rebecca Rodman, Esq.
Office of the General Counsel
Department of Public Health
250 Washington Street
Boston, MA 02108

   Re: <u>Withdrawal of Request for Significant Amendment to Determination of Need</u>
      <u>Project #5-3C08</u>

Dear Attorney Rodman:

We write on behalf of Steward St. Anne's Hospital Corporation ("Applicant" or "Hospital"). On August 16, 2013, the Applicant filed a request with the Department of Public Health's ("Department") Determination of Need ("DoN") Program pursuant to 105 C.M.R. §§100.753 and 100.756 for significant amendment to approved project #5-3C08. At this time, the Applicant respectfully withdraws its request for a significant amendment. Please note that the Applicant withdraws its significant amendment request without prejudice. The Applicant reserves the right to file a new request for significant amendment at a future time for the build out of the shell space.

We thank you for your assistance with this matter. Please do not hesitate to contact Nicole Sexton or me if you have any questions or require additional information.

Sincerely,

*Andrew A. Levine / cnt*

Andrew S. Levine

Enclosures

cc: N. Hibble, Esq.
  K. Whelan

Donoghue Barrett & Singal
One Beacon Street, Suite 1320
Boston, MA 02108-3106
T 617.598.6700
F 617.722.0276
www.dbslawfirm.com

386271.3

# EXHIBIT 27

ONE BEACON STREET, 23rd FLOOR
BOSTON, MA 02108

Kevin M. Considine, Esq.
kconsidine@considinefurey.com

Telephone (617) 723-7200
Telecopier (617) 723-5700
www.considinefurey.com

June 17, 2015

Supervisor of Records
Office of the Secretary of the Commonwealth
McCormack Building, Room 1719
One Ashburton Place
Boston, MA 02108

Re: Failure by Department of Public Health to Respond to Public Record Request

Dear Supervisor of Records:

On November 26, 2014, this office sent a public records request, pursuant to G.L. c. 66, § 10, to the Massachusetts Department of Public Health ("DPH"), seeking a copy of:

All communications including letters, applications, recordings, transcripts, memoranda, and documents of any kind whatsoever by and/or between the Massachusetts Department of Public Health, including the Public Health Council, and any of its employees, lawyers, or other agents, and Steward Health Care System, and any of its employees, lawyers, or other agents, regarding:-

1. Steward St. Anne's Hospital Corporation Determination of Need Project #5-3C08;
2. Steward's Request for Significant Change Amendment to DoN #5-3C08;
3. Steward's Intent to Transfer Quincy Medical Center's cardiac catheterization license to St. Anne's Hospital;
4. Circular Letter DHCQ 14-6-617 regarding policy updates for cardiac catheterization services; and
5. The decision to close the Quincy Medical Center.

Letter to Supervisor of Records
June 9, 2015
Page Three

3.  Associate Commissioner, Massachusetts Department of Public Health, from January 2014 through the present, regarding Steward St. Anne's Corporation's Significant Change Amendment to Determination of Need Project #5-3C08 and

4.  Intent to Transfer Quincy Medical Center's cardiac catheterization license to St. Anne's Hospital.

To help expedite the process, we enclosed a check in the amount of $500 to be applied toward the costs of complying with the amended request, and asked that DPH let us know if further payment was necessary.  This amended request was sent on May 20, 2015.  A copy is attached as Exhibit "D."

On May 22, we left a voicemail for Attorney Rodman, asking her to confirm receipt of the amended request and payment.  After receiving no response, we sent Attorney Rodman an email on May 27, again asking her to confirm receipt of the amended request, and reminding her that we had been waiting for the documents for over six months.  We received an email back that same day, stating that DPH was "gathering the requested documents now."  A copy of this email is attached as Exhibit "E."

Since that time, we have received no further communications from Attorney Rodman or DPH and we have yet to receive any documents in response to our request.

Pursuant to G.L. c. 66, s. 10, DPH was required to comply with our request within ten days.  As noted above, the original request was sent on November 26, 2014.  The amended request was sent on May 20, 2015.  Due to the significant delay thus far in DPH's response to our request, we seek your assistance now in requiring DPH to comply with our request as soon as possible.  Please feel free to contact me with any questions at 617-723-7200 or by email at kconsidine@considinefurey.com.

Yours Truly,

Kevin M. Considine

KMC/ebs
With enclosures

# EXHIBIT 28



# The Commonwealth of Massachusetts
## Executive Office of Health and Human Services
## Department of Public Health
250 Washington Street, Boston, MA 02108-4619

CHARLES D. BAKER
Governor

KARYN E. POLITO
Lieutenant Governor

MARYLOU SUDDERS
Secretary

MONICA BHAREL, MD, MPH
Commissioner

Tel: 617-624-6000
www.mass.gov/dph

August 12, 2015

**Via Email**
Kevin M. Considine, Esq.
Erin Sinclair, Esq.
Considine & Furey, LLP
One Beacon Street
23rd Floor
Boston, MA 02108

Re: Public Records Request

Dear Mr. Considine and Ms. Sinclair:

This is in further response to your request of May 19, 2015, for records held by the Department of Public Health ("Department"). We are providing you additional documents responsive to your request. We are providing all email communications sent or received by Deborah Allwes, Director of the Health Care Safety and Quality Bureau, Massachusetts Department of Public Health, and Madeleine Biondolillo, MD, Associate Commissioner, Massachusetts Department of Public Health, from January 2014 through December 2014, regarding Steward St. Anne's Corporation's Significant Change Amendment to Determination of Need Project #5-3C08.

We continue to assert that the deliberative process exemption to the public records law, M.G.L. c. 4, §7(d), applies to those emails regarding this request that are dated January 2015 to the present. We assert that these emails remain exempt from disclosure because the Department has not made a decision on this application.

Pursuant to M.G.L. c. 66, §10, if you disagree with our reliance on this exemption, you may appeal to the Supervisor of Public Records in the Office of the Secretary of the Commonwealth.

Please contact me at 617-994-9811 with any questions.

Sincerely,

Rebecca Rodman
Deputy General Counsel

# EXHIBIT 29

OIG DRUG LAB - DPH PRIVILEGE LOG
ENTIRE LOG

| | A | B | C | D | E | F | G | H | I | J |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | Bates Number(Begin) | Bates Number(End) | Email Subject | Email From | Email To | Email CC | Email BCC | Date | DPH Privilege Type | Description |
| 2 | | | | | | | | | | |
| 3 | | | FW: Comments to DoN Staff Recommendation | Bernard Plownik | Tom O'Brien, Jay Youmans, Jennifer Barrelle, Eileen Sullivan, Madeleine Biondolillo, Deborah Allwes | Carol Balukescu, Cathy O'Connor, Darrell Villaux, Kathy Svizzero, Rebecca Rodman | | 11/28/2014 | Deliberative process | Email chain forwarding SouthCoast's response to the staff DoN recommendation |
| 4 | | | St. Anne's DoN involving Cardiac Catheterization (Amendment to 5-3CO8) | Bernard Plownik | Madeleine Biondolillo | Cathy O'Connor, Kathy Svizzero, Rebecca Rodman, Carol Balukescu, Jennifer Barrelle | | 11/24/2014 | Deliberative process | Regarding DoN staff memo re: St. Anne's liypbid amendment request, with scheduling discussion re: Public Health Council meeting |
| 5 | | | Re: St. Anne's DoN involving Cardiac Catheterization (Amendment to 5-3CO8) | Cathy O'Connor | Bernard Plownik, Madeleine Biondolillo | Kathy Svizzero, Rebecca Rodman, Carol Balukescu, Jennifer Barrel | | 11/24/2014 | Deliberative process | email chain regarding DoN memo and scheduling |
| 6 | | | URGENT: Response to Southcoast Comments re St. Anne's | Bernard Plownik | Madeleine Biondolillo | Cathy O'Connor, Darrell Villaux, Jennifer Barrelle, Kathy Svizzero, Carol Balukescu, Rebecca Rodman | | 12/7/2014 | Deliberative process | Seeking staff comments re: attached staff memo summarizing Southcoast comments to St. Anne's DoN |
| 7 | | | Re: URGENT: Response to Southcoast Comments re St. Anne's | Jennifer Barrelle | Sherman Lohnes | Deborah Allwes | | 12/7/2014 | Deliberative process | forwarding above email to staff |
| 8 | | | Re: St. Anne's DoN involving Cardiac Catheterization (Amendment to 5-3CO8) | Jennifer Barrelle | Bernard Plownik | Madeleine Biondolillo | | 12/7/2014 | Deliberative process | scheduling email following up on email re: staff memo |
| 9 | | | Re: St. Anne's DoN involving Cardiac Catheterization (Amendment to 5-3CO8) | Madeleine Biondolillo | Jennifer Barrelle, Bernard Plownik | Madeleine Biondolillo | | 11/24/2014 | Deliberative process | scheduling email following up on email re: staff memo |
| 10 | | | Re: St. Anne's DoN involving Cardiac Catheterization (Amendment to 5-3CO8) | Bernard Plownik | Jennifer Barrelle | Madeleine Biondolillo, Cathy O'Connor | | 11/18/2014 | Deliberative process | scheduling email following up on email re: staff memo |
| 11 | | | Re: St. Anne's DoN involving Cardiac Catheterization (Amendment to 5-3CO8) | Madeleine Biondolillo | Bernard Plownik, Jennifer Barrelle | Cathy O'Connor | | 11/18/2014 | Deliberative process | scheduling email following up on email re: staff memo |
| 12 | | | Re: St. Anne's DoN involving Cardiac Catheterization (Amendment to 5-3CO8) | Jennifer Barrelle | Madeleine Biondolillo, Bernard Plownik | Cathy O'Connor, Tom O'Brien, Deborah Allwes | | 11/18/2014 | Deliberative process | scheduling email following up on email re: staff memo |
| 13 | | | Change of venue – QMC hearing | Anne Roach | Bernard Plownik | Madeleine Biondolillo | | 12/8/2014 | Deliberative process | request for copy of St. Anne's application |
| 14 | | | Re: Change of venue - QMC hearing | Bernard Plownik | Anne Roach | Madeleine Biondolillo | | 12/8/2014 | Deliberative process | request for copy of St. Anne's application |
| 15 | | | Re: Change of venue – QMC hearing | Bernard Plownik | Jennifer Barrelle, Anne Roach | Madeleine Biondolillo, Eileen Sullivan | | 12/8/2014 | Deliberative process | request for copy of St. Anne's application |

Privileged and Confidential
Attorney Client Work Product

April 9, 2015

OIG DRUG LAB - DPH PRIVILEGE LOG
ENTIRE LOG

| | A | B | C | D | E | F | G | H | I | J |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | Bates Number(Begin) | Bates Number(End) | Email Subject | Email From | Email To | Email CC | Email BCC | Date | DPH Privilege Type | Description |
| 16 | | | URGENT: Response to Southcoast Comments re St. Anne's | Bernard Plovnick | Madeline Biondolillo | Cathy O'Connor, Darrell Villaruz, Jennifer Barrelle, Kathy Svirzevo, Carol Bakulescu, Rebecca Rodman, Madeline... | | 12/1/2014 | Deliberative process | Seeking staff comments re: attached staff memo summarizing Southcoast comments to St. Anne's DoN |
| 17 | | | Steward St. Anne's Hospital Corporation: Application to Establish a New Cardiac Catheterization Service in Fall River, MA  Steward St. Anne's Hospital Corporation: Application to Establish a New Cardiac Catheterization Service in Fall River, MA | Nancy Blythe, on behalf of Keith Hovan | John Polanowicz | Biondolillo, Carol Bakulescu, Cheryl Bartlett, Bernard Plovnick, TTUCC@rcn.com, Deborah Allwes, Laurie Mulgrew, Margaret Ferrell | | 9/26/2014 | Deliberative process | Letter from Southcoast re: St. Anne's DoN application, with letter attached |
| 18 | | | | Deborah Allwes | Nancy Murphy, Lauren Nelson, Bernard Plovnick | Madeline Biondolillo, Rose Nash | | 9/26/2014 | Deliberative process | forwarding above email to staff |
| 19 | | | Steward St. Anne's Hospital Corporation: Application to Establish a New Cardiac Catheterization Service in Fall River, MA | Madeline Biondolillo | Kathy Svirzevo, Jennifer Barrelle, Elizabeth Scurria Morgan, Carol Bakulescu, Rebecca Rodman, Bernard Plovnick, Deborah Allwes, Torey McNamara, Rose Nash, Martiel Jose | | | 9/26/2014 | Deliberative process | forwarding above email to staff |
| 20 | | | St. Anne's on Behalf of Jen Barrelle | Deborah Allwes | | | | 5/27/2015 | Deliberative process | meeting scheduling |
| 21 | | | St. Anne's Hospital cardiac cath | Bernard Plovnick | Deborah Allwes, Lauren Nelson, Bernard Plovnick, Deborah Allwes, Lauren Nelson | Cathy O'Connor, Nancy Murphy | | 8/7/2014 | Deliberative process | DoN application and cardiac catheterization services |
| 22 | | | St. Anne's Hospital cardiac cath | Nancy Murphy | Bernard Plovnick, Carol Bakulescu | Cathy O'Connor | | 8/7/2014 | Deliberative process | response to above email |
| 23 | | | Questions from PHC | Rebecca Rodman | Bernard Plovnick, Carol Bakulescu, Rebecca Rodman, Bernard Plovnick | | | 1/5/2015 | Deliberative process | summary of PHC members' questions from December meeting |
| 24 | | | Questions from PHC | Carol Bakulescu | Tom O'Brien, Deborah Allwes, Jennifer Barrelle, Suzanne Crav, Darrell Villaruz | | | 1/6/2015 | Deliberative process | response to above email |
| 25 | | | Questions from PHC re: St. Anne's DoN | Carol Bakulescu | Carol Bakulescu, Tom O'Brien, Deborah Allwes, Jennifer Barrelle, Jennifer | Eileen Sullivan | | 2/27/2015 | Deliberative process | forwarding above email to staff |
| 26 | | | Questions from PHC re: St. Anne's DoN | Darrell Villaruz | Barrelle, Suzanne Cray | Eileen Sullivan | | 2/27/2015 | Deliberative process | response to above email |

Privileged and Confidential
Attorney Client Work Product

April 9, 2015

2

OIG DRUG LAB - OPH PRIVILEGE LOG
ENTIRE LOG

| | A | B | C | D | E | F | G | H | I | J |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | Bates Number(Begin) | Bates Number(End) | Email Subject | Email From | Email To | Email CC | Email BCC | Date | OPH Privilege Type | Description |
| 27 | | | Questions from PHC re: St. Anne's DoN | Deborah Alwes | Darrell Villanus | Carol Baldescu, Tom O'Brien, Deborah Alwes, Jennifer Barrel, Zuxanne Cray, Eileen Sullivan | | 2/27/2015 | Deliberative process | response to above email |
| 28 | | | Questions from PHC re: St. Anne's DoN | Darrell Villarus | Deborah Alwes | Carol Baldescu, Tom O'Brien, Deborah Alwes, Jennifer Barrel, Zuxanne Cray, Eileen Sullivan | | 2/27/2015 | Deliberative process | response to above email |
| 29 | | | Questions from PHC re: St. Anne's DoN | Carol Baldescu | Elizabeth Souria Morgan | Bernard Plowick | | 4/1/2015 | Deliberative process | response to above email |
| 30 | | | Questions from PHC re: St. Anne's DoN | Bernard Plowick | Deborah Alwes | Eric Sheehan, Lauren Nelton, Suzanne | | 4/1/2015 | Deliberative process | response to above email |
| 31 | | | St. Anne's, Southcoast info request draft 3-30-15 | Bernard Plowick | Elizabeth Souria Morgan | Jennifer Barreau, Carol Baldescu, Deborah Alwes, Lauren Nelson, Eric Sheehan, Suzanne Cray | | 3/30/2015 | Deliberative process | draft letter to St. Anne's and Southcoast re: questions from PHC, with attached letter |
| 32 | | | St. Anne's | Jennifer Barrelle | Bernard Plowick, Carol Baldescu, Eric Sheehan | Deborah Alwes, Lauren Nelson, Suzanne Cray | | 4/1/2015 | Deliberative process | scheduling of DoN |
| 33 | | | St. Anne's | Bernard Plowick | Deborah Alwes, Eric Sheehan | Lauren Nelson, Suzanne Cray, Carol Baldescu | | 4/1/2015 | Deliberative process | scheduling of DoN |
| 34 | | | St. Anne's | Deborah Alwes | Bernard Plowick, Lauren Nelson | Carol Baldescu, Eric Sheehan | | 4/1/2015 | Deliberative process | response to above email |
| 35 | | | St. Anne's | Bernard Plowick | Deborah Alwes, Lauren Nelson | Deborah Alwes, Lauren Nelson, Suzanne Cray, Carol Baldescu, Elizabeth Souria Morgan | | 4/1/2015 | Deliberative process | response to above email |
| 36 | | | St. Anne's | Bernard Plowick | Jennifer Barrelle, Carol Baldescu, Eric Sheehan | Elizabeth Souria Morgan | | 4/1/2015 | Deliberative process | response to above email; new draft of request for info, without attachment |
| 37 | | | St. Anne's SouthCoast info request draft 4-2-15 | Eric Sheehan | Elizabeth Souria Morgan, Carol Baldescu | Deborah Alwes, Bernard Plowick | | 4/2/2015 | Deliberative process | response to above email |
| 38 | | | St. Anne's SouthCoast info request draft 4-2-15 | Elizabeth Souria Morgan | Bernard Plowick | Eric Sheehan, Carol Baldescu, Deborah Alwes | | 4/2/2015 | Deliberative process | response to above email |
| 39 | | | St. Anne's SouthCoast info request draft 4-2-15 | Bernard Plowick | Eric Sheehan, Elizabeth Souria Morgan, Carol Baldescu | Deborah Alwes | | 4/2/2015 | Deliberative process | response to above email |

April 9, 2015

Privileged and Confidential
Attorney Client Work Product

3

OIG DRUG LAB - DPH PRIVILEGE LOG
ENTIRE LOG

| | A Bates Number(Begin) | B Bates Number(End) | C Email Subject | D Email From | E Email To | F Email CC | G Email BCC | H Date | I DPH Privilege Type | J Description |
|---|---|---|---|---|---|---|---|---|---|---|
| 40 | | | DoN St. Anne's | Jennifer Barrelle | Deborah Allwes, Eric Sheehan | Bernard Plovnick, Elizabeth ScurriaMorgan, Eileen Sullivan | | 4/3/2015 | Deliberative process | meeting scheduling |
| 41 | | | Steward St. Anne's Hospital, Significant Change to DoN Project # S-3C08 | Bernard Plovnick | Andrew Levine, Howard Hawkins | Carl Rosenfeld | | 4/2/2015 | Deliberative process | letter re: DoN, without attachment |
| 42 | | | Steward St. Anne's Hospital, Significant Change to DoN Project # S-3C08 | Bernard Plovnick | Deborah Allwes, Carol Balulescu, Suzanne Cray, Lauren Nelson, Elizabeth ScurriaMorgan, Eric Sheehan, Eileen Sullivan | | | 4/2/2015 | Deliberative process | forwarding above email to staff |
| 43 | | | Steward St. Anne's Hospital, Significant Change to DoN Project # S-3C08 | Eileen Sullivan | Bernard Plovnick, Deborah Allwes, Carol Balulescu, Suzanne Cray, Lauren Nelson, Elizabeth ScurriaMorgan, Eric Sheehan, Jennifer Barrelle | | | 4/3/2015 | Deliberative process | response to above email |
| 44 | | | Steward St. Anne's Hospital, Significant Change to DoN Project # S-3C08 | Deborah Allwes | Bernard Plovnick | | | 4/2/2015 | Deliberative process | response to above email |
| 45 | | | Steward St. Anne's Hospital, Significant Change to DoN Project # S-3C08 | | Eileen Sullivan | | | 4/2/2015 | Deliberative process | follow up to above email |
| 46 | | | Steward St. Anne's Hospital, Significant Change to DoN Project # S-3C08 | Eileen Sullivan | Bernard Plovnick, Deborah Allwes, Carol Balulescu, Suzanne Cray, Lauren Nelson, Elizabeth ScurriaMorgan, Eric Sheehan | | | 4/2/2015 | Deliberative process | follow up to above email |
| 47 | | | Steward St. Anne's Hospital, Significant Change to DoN Project # S-3C08 | Bernard Plovnick | Deborah Allwes | | | 4/2/2015 | Deliberative process | follow up to above email |
| 48 | | | Steward St. Anne's Hospital, Significant Change to DoN Project # S-3C08 | Bernard Plovnick | Deborah Allwes, Carol Balulescu, Suzanne Cray, Lauren Nelson, Elizabeth ScurriaMorgan, Eric Sheehan, Eileen Sullivan | | | 4/2/2015 | Deliberative process | forwarding above email to staff |
| 49 | | | St. Anne's SouthCoast info request draft 4-2-15 | Eric Sheehan | Elizabeth ScurriaMorgan, Carol Balulescu | Deborah Allwes, Bernard Plovnick | | 4/2/2015 | Deliberative process | regarding drafting of letter to parties |
| 50 | | | St. Anne's SouthCoast info request draft 4-2-15 | Elizabeth ScurriaMorgan | Bernard Plovnick | Eric Sheehan, Carol Balulescu, Deborah Allwes | | 4/2/2015 | Deliberative process | response to above email |
| 51 | | | St. Anne's SouthCoast info request draft 4-2-15 | Eric Sheehan | Elizabeth ScurriaMorgan, Bernard Plovnick | Carol Balulescu, Deborah Allwes | | 4/2/2015 | Deliberative process | response to above email |
| 52 | | | St. Anne's SouthCoast info request draft 4-2-15 | Eric Sheehan | Elizabeth ScurriaMorgan | Bernard Plovnick, Carol Balulescu, Deborah Allwes, Eileen Sullivan | | 4/2/2015 | Deliberative process | response to above email |

Privileged and Confidential
Attorney Client Work Product

April 9, 2015

4

OIG DRUG LAB - DPH PRIVILEGE LOG
ENTRIE LOG

| | A | B | C | D | E | F | G | H | I | J |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | Bates Number(Begin) | Bates Number(End) | Email Subject | Email From | Email To | Email CC | Email BCC | Date | DPH Privilege Type | Description |
| 53 | | | DoH-St. Anne's | Jennifer Barreile | Deborah Allwes, Eric Sheehan | Bernard Plovnick, Elizabeth ScurriaMorgan, Eileen Sullivan | | 4/3/2015 | Deliberative process | meeting scheduling |
| 54 | | | DoH-St. Anne's | Deborah Allwes | Jennifer Barreile, Eric Sheehan, Rose Nash | Bernard Plovnick, Elizabeth ScurriaMorgan, Eileen Sullivan | | 4/3/2015 | Deliberative process | meeting scheduling |
| 55 | | | DoH-St. Anne's | Rose Nash | Deborah Allwes | | | 4/6/2015 | Deliberative process | meeting scheduling |
| 56 | | | DoH-St. Anne's | Rose Nash | Rose Nash, Deborah Allwes, Jennifer Barreile, Eric Sheehan, Bernard Plovnick, Carol Balulescu, Rebecca Rodman | | | 4/6/2015 | Deliberative process | meeting scheduling |
| 57 | | | DoH-St. Anne's | Elizabeth ScurriaMorgan | Rebecca Rodman, Eric Sheehan, Rose Nash, Deborah Allwes, Jennifer Barreile, Bernard Plovnick, Elizabeth ScurriaMorgan | | | 4/6/2015 | Deliberative process | meeting scheduling |
| 58 | | | DoH-St. Anne's | Deborah Allwes | Deborah Allwes, Rebecca Rodman, Eric Sheehan, Rose Nase, Carol Balulescu, Bernard Plovnick, Elizabeth ScurriaMorgan | | | 4/7/2015 | Deliberative process | meeting scheduling |
| 59 | | | DoH-St. Anne's | Jennifer Barreile | Deborah Allwes, Rebecca Rodman, Eric Sheehan, Rose Nase, Carol Balulescu, Bernard Plovnick, Elizabeth ScurriaMorgan | | | 4/7/2015 | Deliberative process | meeting scheduling |
| 60 | | | DoH-St. Anne's | Deborah Allwes | Deborah Allwes, Rebecca Rodman, Eric Sheehan, Rose Nase, Carol Balulescu, Bernard Plovnick, Elizabeth ScurriaMorgan | | | 4/7/2015 | Deliberative process | meeting scheduling |
| 61 | | | DoH-St. Anne's | Elizabeth ScurriaMorgan | Deborah Allwes, Jennifer Barreile | Rebecca Rodman, Eric Sheehan, Rose Nash, Carol Balulescu, Bernard Plovnick | | 4/7/2015 | Deliberative process | meeting scheduling |
| 62 | | | DoH-St. Anne's | Eric Sheehan | Deborah Allwes | | | 4/7/2015 | Deliberative process | meeting scheduling |
| 63 | | | Requested Documents regarding St. Anne's DoH Amendment for Cardiac Cath | Bernard Plovnick | Deborah Allwes | Eric Sheehan | | 5/14/2015 | Deliberative process | forwarding documents to staff, no attachments included |
| 64 | | | Notify Southcoast and Steward that DoH in May has changed | Jennifer Barreile | Deborah Allwes | Jennifer Barreile, Eileen Sullivan | | 4/21/2015 | Deliberative process | scheduling |
| 65 | | | Notify Southcoast and Steward that DoH in May has changed | Deborah Allwes | Bernard Plovnick | Eric Sheehan | | 4/21/2015 | Deliberative process | scheduling |

Privileged and Confidential
Attorney Client Work Product

April 9, 2015

5

OIG DRUG LAB - DPH PRIVILEGE LOG
ENTIRE LOG

| # | A Bates Number(Begin) | B Bates Number(End) | C Email Subject | D Email From | E Email To | F Email CC | G Email BCC | H Date | I DPH Privilege Type | J Description |
|---|---|---|---|---|---|---|---|---|---|---|
| 66 | | | Notify Southcoast and Steward that DoN in May has changed | Bernard Plownick | Deborah Allwes | Eric Sheehan | | 4/21/2015 | Deliberative process | scheduling |
| 67 | | | Notify Southcoast and Steward that DoN in May has changed | Deborah Allwes | Bernard Plownick | Eric Sheehan | | 4/21/2015 | Deliberative process | scheduling |
| 68 | | | Notify Southcoast and Steward that DoN in May has changed | Deborah Allwes | Bernard Plownick | Deborah Allwes, Eric Sheehan | | 4/21/2015 | Deliberative process | scheduling |
| 69 | | | Notify Southcoast and Steward that DoN in May has changed | Bernard Plownick | Deborah Allwes | Eric Sheehan | | 4/21/2015 | Deliberative process | scheduling |
| 70 | | | Notify Southcoast and Steward that DoN in May has changed | Bernard Plownick | Deborah Allwes | Eric Sheehan | | 4/22/2015 | Deliberative process | scheduling |
| 71 | | | Notify Southcoast and Steward that DoN in May has changed | Jennifer Barrelle | Deborah Allwes | Jennifer Barrelle, Eileen Sullivan | | 4/21/2015 | Deliberative process | scheduling |
| 72 | | | Southcoast Response to PHC Questions re St. Anne's | Bernard Plownick | Eric Sheehan, Lauren Nelson, Suzanne Cray, Carol Baiuletsu | Deborah Allwes, Carol Baiuletsu, Andrew Levine, Bruce Siegal | | 4/16/2015 | Deliberative process | summary of Southcoast response to questions |
| 73 | | | Steward St. Anne's hospital corporation | Terry Heuly on behalf of Andrew Levine | Bernard Plownick | | | 4/15/2015 | Deliberative process | St. Anne's response to questions |
| 74 | | | Steward St. Anne's hospital Corporation | Bernard Plownick | Eric Sheehan, Lauren Nelson, Suzanne Cray | Deborah Allwes, Carol Baiuletsu | | 4/15/2015 | Deliberative process | summary of St. Anne's response to questions |
| 75 | | | Steward St. Anne's hospital corporation | Deborah Allwes | Bernard Plownick | | | 4/15/2015 | Deliberative process | response to above email |
| 76 | | | Steward St. Anne's hospital corporation | Bernard Plownick | Deborah Allwes | | | 4/15/2015 | Deliberative process | response to above email |
| 77 | | | St. Anne's Cardiac Cath Transfer approval? | Bernard Plownick | Madeleine Biondolillo, Deborah Allwes, Lauren Nelson, Carol Baiuletsu | Gail Palmieri, Darrel Villaruz, Cathy O'Connor, Jennifer Barrelle | | 10/31/2014 | Deliberative process | overview of DoN analysis process |
| 78 | | | St Anne's Hopsital - Follow-Up to Significant Amendment Request | Andrew Levine | Bernard Plownick, Jennifer Barrelle, Elizabeth ScurriaMorgan, Carol Baiuletsu, Rebecca Rodman, Bernard Plownick, Deborah Allwes, Torey McNamara | Carol Baiuletsu, Deborah Allwes, Madeleine Biondolillo, Lauren Nelson | | 10/17/2014 | Deliberative process | follow up to DoN application |
| 79 | | | Meeting re: St. Anne's | Maria DiStefano | Jennifer Barrelle, Elizabeth ScurriaMorgan, Carol Baiuletsu, Rebecca Rodman, Bernard Plownick, Deborah Allwes, Torey McNamara | Michelle Buonasaro, Helen Rush-Lloyd, Rose Nash | | 5/21/2015 | Deliberative process | meeting scheduling |
| 80 | | | CONFIRMATION - Meeting re: St. Anne's | Maria DiStefano | Jennifer Barrelle, Elizabeth ScurriaMorgan, Carol Baiuletsu, Helen Rodman, Bernard Plownick, Deborah Allwes, Torey McNamara | Michelle Buonasaro, Helen Rush-Lloyd, Rose Nash, Maricel Jose | | 5/21/2015 | Deliberative process | meeting scheduling |

April 9, 2015

Privileged and Confidential
Attorney Client Work Product

OIG DRUG LAB - DPH PRIVILEGE LOG
ENTIRE LOG

| | A | B | C | D | E | F | G | H | I | J |
|---|---|---|---|---|---|---|---|---|---|---|
| | Bates Number(Begin) | Bates Number(End) | Email Subject | Email From | Email To | Email CC | Email BCC | Date | DPH Privilege Type | Description |
| 81 | | | Cardiac cath options | Jennifer Barrelle | Deborah Allwes, Elizabeth Scurria-Morgan, Bernard Plovnick | Rebecca Rodman, Carol Baluiescu, Suzanne Cray | | 5/20/2015 | Deliberative process | process planning |
| 82 | | | Cardiac cath options | Deborah Allwes | Jennifer Barrelle, Elizabeth Scurria-Morgan | Rebecca Rodman, Carol Baluiescu | | 5/19/2015 | Deliberative process | process planning |
| 83 | | | Cardiac cath options | Elizabeth Scurria-Morgan | Deborah Allwes, Jennifer Barrelle | Jennifer Barrelle, Rebecca Rodman, Carol Baluiescu, Suzanne Cray | | 5/19/2015 | Deliberative process | response to above email |
| 84 | | | Cardiac cath options | Elizabeth Scurria-Morgan | Deborah Allwes | Jennifer Barrelle, Rebecca Rodman, Carol Baluiescu, Suzanne Cray | | 5/20/2015 | Deliberative process | response to above email |
| 85 | | | Cardiac cath options | Deborah Allwes | Elizabeth Scurria-Morgan | Rebecca Rodman, Carol Baluiescu, Suzanne Cray | | 5/20/2015 | Deliberative process | response to above email |
| 86 | | | Cardiac cath options | Jennifer Barrelle | Deborah Allwes, Elizabeth Scurria-Morgan, Bernard Plovnick | Rebecca Rodman, Carol Baluiescu, Suzanne Cray | | 5/20/2015 | Deliberative process | response to above email |
| 87 | | | Cardiac cath options | Jennifer Barrelle | Bernard Plovnick, Deborah Allwes, Elizabeth Scurria-Morgan | Rebecca Rodman, Carol Baluiescu, Suzanne Cray | | 5/20/2015 | Deliberative process | response to above email |
| 88 | | | Cardiac cath options | Bernard Plovnick | Jennifer Barrelle, Deborah Allwes, Elizabeth Scurria-Morgan | Rebecca Rodman, Carol Baluiescu, Suzanne Cray | | 5/20/2015 | Deliberative process | response to above email |
| 89 | | | Cardiac cath options | Jennifer Barrelle | Deborah Allwes | Elizabeth Scurria-Morgan, Rebecca Rodman, Carol Baluiescu, Suzanne Cray, Elizabeth | | 5/20/2015 | Deliberative process | process planning |
| 90 | | | St. Anne's | Deborah Allwes | Bernard Plovnick | Elizabeth Scurria-Morgan, Deborah Allwes, Eric Sheehan, Rebecca Rodman, Carol Baluiescu, Suzanne Cray, Torey McNamara, Eric Sheehan, | | 5/20/2015 | Deliberative process | process planning |
| 91 | | | St. Anne's | Bernard Plovnick | Jennifer Barrelle, Elizabeth Scurria-Morgan, Deborah Allwes | Rebecca Rodman, Carol Baluiescu, Suzanne Cray, Torey McNamara | | 5/20/2015 | Deliberative process | process planning |
| 92 | | | Diagnostic Cardiac Cath - Initial App Reg | Suzanne Cray | Deborah Allwes | | | 5/18/2015 | Deliberative process | process planning review licensing regulations as they apply to DoN |

Privileged and Confidential
Attorney Client Work Product

April 9, 2015

OIG DRUG LAB - DPH PRIVILEGE LOG
ENTIRE LOG

| | A | B | C | D | E | F | G | H | I | J |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | Bates Number(Begin) | Bates Number(End) | Email Subject | Email From | Email To | Email CC | Email BCC | Date | DPH Privilege Type | Description |
| 93 | | | Diagnostic Cardiac Cath - Initial App Reg | Deborah Allwes | Sherman Lohnes, Elizabeth Scurria, Carol Rodman, Bernard Plovnick, Sherman Lohnes, Jennifer Barrelle, Torey McNamara | Suzanne Cray, Elizabeth ScurriaMorgan, Carol Balulescu, Rebecca Rodman, Torey McNamara, Jennifer Barrelle, Bernard Plovnick | | 5/19/2015 | Deliberative process | review licensing regulations as they apply to DoH |
| 94 | | | Diagnostic Cardiac Cath - Initial App Reg | Deborah Allwes | | | | 5/19/2015 | Deliberative process | response to above email |
| 95 | | | Diagnostic Cardiac Cath - Initial App Reg | Deborah Allwes | Sherman Lohnes | | | 5/19/2015 | Deliberative process | meeting scheduling |
| 96 | | | Diagnostic Cardiac Cath - Initial App Reg | Sherman Lohnes | Deborah Allwes | | | 5/19/2015 | Deliberative process | meeting scheduling |
| 97 | | | Diagnostic Cardiac Cath - Initial App Reg | Sherman Lohnes | Deborah Allwes | Suzanne Cray | | 5/19/2015 | Deliberative process | response to above email |
| 98 | | | Diagnostic Cardiac Cath - Initial App Reg | Sherman Lohnes | Deborah Allwes | Suzanne Cray, Elizabeth ScurriaMorgan, Carol Balulescu, Rebecca Rodman, Torey McNamara, Jennifer Barrelle, Bernard Plovnick | | 5/19/2015 | Deliberative process | review licensing regulations as they apply to DoH |
| 99 | | | Diagnostic Cardiac Cath - Initial App Reg | Sherman Lohnes | Deborah Allwes | Suzanne Cray, Elizabeth ScurriaMorgan, Carol Balulescu, Rebecca Rodman, Torey McNamara, Jennifer Barrelle, Bernard Plovnick | | 5/19/2015 | Deliberative process | review licensing regulations as they apply to DoH |
| 100 | | | Draft follow up letter re St. Anne's cardiac cath. | Bernard Plovnick | Jennifer Barrelle, Madeleine Biondolillo | Larry O'Connor, Rebecca Rodman, Carol Balulescu, Tom O'Brien, Lauren Nelson, Darrell Villaruz | | 1/7/2015 | Deliberative process | questions following PHC meeting |
| 101 | | | Draft follow up letter re St. Anne's cardiac cath. | Lauren Nelson | Deborah Allwes | | | 1/9/2015 | Deliberative process | forwarding above email to staff |
| 102 | | | Draft follow up letter re St. Anne's cardiac cath | Deborah Allwes | Lauren Nelson | | | 1/9/2015 | Deliberative process | response to above email |
| 103 | | | Draft follow up letter re St. Anne's cardiac cath | Lauren Nelson | Deborah Allwes | | | 1/9/2015 | Deliberative process | response to above email |
| 104 | | | | | | | | | | |

April 9, 2015

Privileged and Confidential
Attorney Client Work Product

8

OIG DRUG LAB - DPH PRIVILEGE LOG
ENTIRE LOG

| | A | B | C | D | E | F | G | H | I | J |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | Bates Number(Begin) | Bates Number(End) | Email Subject | Email From | Email To | Email CC | Email BCC | Date | DPH Privilege Type | Description |
| 105 | | | SAH Cardiac Cath - DoH | Kerry Whelan | Madeleine Biondolillo | | | 9/23/2014 | Deliberative process | scheduling email |
| 106 | | | SAH Cardiac Cath - DoH | Madeleine Biondolillo | Cathy O'Connor, Bernard Plovnick | | | 9/23/2014 | Deliberative process | follow up to above email |
| 107 | | | SAH Cardiac Cath - DoH | Cathy O'Connor | Madeleine Biondolillo, Bernard Plovnick | Cathy O'Connor | | 9/23/2014 | Deliberative process | follow up to above email |
| 108 | | | SAH Cardiac Cath - DoH | Madeleine Biondolillo | Cathy O'Connor, Bernard Plovnick | | | 9/23/2014 | Deliberative process | follow up to above email |
| 109 | | | SAH Cardiac Cath - DoH | Bernard Plovnick | Madeleine Biondolillo, Cathy O'Connor | Bernard Plovnick, Madeleine Biondolillo, Darrell Villaruz, Carol Balulescu | | 9/23/2014 | Deliberative process | follow up to above email |
| 110 | | | SAH Cardiac Cath - DoH | Madeleine Biondolillo | Cathy O'Connor | Bernard Plovnick, Darrell Villaruz, Carol Balulescu | | 9/23/2014 | Deliberative process | follow up to above email |
| 111 | | | SAH Cardiac Cath - DoH | Cathy O'Connor | Madeleine Biondolillo | Darrell Villaruz, Carol Balulescu | | 9/24/2015 | Deliberative process | follow up to above email |
| 112 | | | SAH Cardiac Cath - DoH | Bernard Plovnick | Cathy O'Connor, Madeleine Biondolillo | Bernard Plovnick, Cathy O'Connor, Madeleine Biondolillo, Darrell Villaruz, Lauren Nelson, Deborah Alkes, Kathy Svizzero, Madeleine | | 9/24/2014 | Deliberative process | scheduling related to above email |
| 113 | | | SAH Cardiac Cath - DoH | Madeleine Biondolillo | Carol Balulescu | Biondolillo, Carol Balulescu, Bernard Plovnick, Cathy O'Connor, Darrell Villaruz, Lauren Nelson, Kathy Svizzero | | 9/24/2014 | Deliberative process | follow up to above email |
| 114 | | | SAH Cardiac Cath - DoH | Madeleine Biondolillo | Deborah Alkes | Madeleine Biondolillo, Deborah Alkes, Carol Balulescu, Bernard Plovnick, Cathy O'Connor, Darrell Villaruz | | 9/24/2014 | Deliberative process | scheduling related to above email |
| 115 | | | SAH Cardiac Cath - DoH | Lauren Nelson | Kathy Svizzero | Biondolillo, Deborah Alkes, Carol Balulescu, Bernard Plovnick, Cathy O'Connor, Darrell Villaruz | | 9/24/2014 | Deliberative process | scheduling related to above email |

Privileged and Confidential
Attorney Client Work Product

April 9, 2015

9

OIG DRUG LAB - DPH PRIVILEGE LOG
ENTIRE LOG

| | A | B | C | D | E | F | G | H | I | J |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | Bates Number(Begin) | Bates Number(End) | Email Subject | Email From | Email To | Email CC | Email BCC | Date | DPH Privilege Type | Description |
| 116 | | | SAH Cardiac Cath - DoN | Lauren Nelson | Kathy Svitzero | Madeleine Biondolillo, Deborah Allwes, Carol Balulescu, Bernard Plownick, Cathy O'Connor, Darrell Villaruz, Rose Nash | | 9/24/2014 | Deliberative process | scheduling related to above email |
| 117 | | | SAH Cardiac Cath - DoN | Lauren Nelson | Kathy Svitzero | Madeleine Biondolillo, Deborah Allwes, Carol Balulescu, Bernard Plownick, Cathy O'Connor, Darrell Villaruz, Rose Nash | | 9/24/2014 | Deliberative process | scheduling related to above email |
| 118 | | | SAH Cardiac Cath - DoN | Lauren Nelson | Madeleine Biondolillo | Bernard Plownick, Cathy O'Connor, Darrell Villaruz, Sherman Lohnes, Deborah Allwes, Kathy Svitzero | | 9/24/2014 | Deliberative process | response to above email |
| 119 | | | Questions from PHC re: St. Anne's DoN | Deborah Allwes | Darrell Villaruz | Deborah Allwes, Carol Balulescu, Tom O'Brien, Jennifer Barrelle, Suzanne cray, Eileen Sullivan | | 2/27/2015 | Deliberative process | logistics |
| 120 | | | Questions from PHC re: St. Anne's DoN | Carol Balulescu | Deborah Allwes, Darrell Villaruz | Tom O'Brien, Jennifer Barrelle, Suzanne Cray, Eileen Sullivan | | 2/27/2015 | Deliberative process | response to above email |
| 121 | | | Questions from PHC re: St. Anne's DoN | Carol Balulescu | Tom O'Brien, Deborah Allwes, Jennifer Barrelle, Suzanne Cray, Darrell Villaruz | Eileen Sullivan | | 2/2/715 | Deliberative process | summary of information |
| 122 | | | Questions from PHC re: St. Anne's DoN | Deborah Allwes | Carol Balulescu | Tom O'Brien, Deborah Allwes, Jennifer Barrelle, Suzanne Cray, Darrell Villaruz, Eileen Sullivan | | 2/2/715 | Deliberative process | response to summary |
| 123 | | | Questions from PHC re: St. Anne's DoN | Carol Balulescu | Deborah Allwes | Tom O'Brien, Jennifer Barrelle, Suzanne Cray, Eileen Sullivan | | 2/2/715 | Deliberative process | response to above email |

Privileged and Confidential
Attorney Client Work Product

10

OIG DRUG LAB - DPH PRIVILEGE LOG
ENTIRE LOG

| | A | B | C | D | E | F | G | H | I | J |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | Bates Number(Begin) | Bates Number(End) | Email Subject | Email From | Email To | Email CC | Email BCC | Date | DPH Privilege Type | Description |
| 124 | | | SAH Cardiac Cath - DoN | Carol Balulescu | Kathy Svitzer, Madeleine Biondollio, Deborah Allwes, Bernard Plovnick, Cathy O'Connor, Darrell Villaruz, Lauren Nelson | | | 9/24/2014 | Deliberative process | scheduling |
| 125 | | | St. Anne's Cardiac Cath final presentation for the Commissioner | Deborah Allwes | Jennifer Barrelle, Elizabeth ScurriaMorgan, Rebecca Rodman, Torey McNamara, Bernard Plovnick | | | 5/15/2015 | Deliberative process | meeting preparation |
| 126 | | | St. Anne's Cardiac Cath final presentation for the Commissioner | Bernard Plovnick | Deborah Allwes, Rebecca Rodman, Eric Sheehan, Carol Balulescu, Lauren Nelson, Suzanne Cray, Matthew McCabe | | | 5/15/2015 | Deliberative process | meeting preparation |
| 127 | | | St. Anne's Cardiac Cath final presentation for the Commissioner | Deborah Allwes | Bernard Plovnick, Suzanne Cray | Jennifer Barrelle, Rebecca Rodman, Carol Balulescu, Suzanne Cray | | 5/27/2015 | Deliberative process | meeting preparation |
| 128 | | | Cardiac cath options | Deborah Allwes | Elizabeth ScurriaMorgan, Elizabeth ScurriaMorgan, Jennifer Barrelle, Rebecca Rodman, Carol Balulescu, Suzanne Cray | | | 5/20/2015 | Deliberative process | process planning |
| 129 | | | Cardiac cath options | Deborah Allwes | Elizabeth ScurriaMorgan | Rebecca Rodman, Carol Balulescu | | 5/20/2015 | Deliberative process | process planning |
| 130 | | | Cardiac cath options | Elizabeth ScurriaMorgan | Deborah Allwes, Jennifer Barrelle, Elizabeth ScurriaMorgan | | | 5/19/2015 | Deliberative process | process planning |
| 131 | | | Cardiac cath options | Deborah Allwes | Jennifer Barrelle, Elizabeth ScurriaMorgan | | | 5/19/2015 | Deliberative process | process planning |
| 132 | | | Cardiac cath options | Deborah Allwes | Carol Balulescu, Elizabeth ScurriaMorgan, Rebecca Rodman, Bernard Plovnick, Sherman Lohnes, Jennifer Barrelle, Torey McNamara | | | 5/19/2015 | Deliberative process | process planning |
| 133 | | | Fwd: Diagnostic Cardiac Cath - Initial App Reg | Deborah Allwes | | Suzanne Cray, Elizabeth ScurriaMorgan, Carol Balulescu, Rebecca Rodman, Torey McNamara, Jennifer Barrelle, Bernard Plovnick | | 5/19/2015 | Deliberative process | DoN and licensure issues |
| 134 | | | Fwd: Diagnostic Cardiac Cath - Initial App Reg | Deborah Allwes | Sherman Lohnes | | | 5/19/2015 | Deliberative process | DoN and licensure issues |
| 135 | | | St. Anne's Cardiac Cath final presentation for the Commissioner | Jennifer Barrelle | Deborah Allwes, Elizabeth ScurriaMorgan, Rebecca Rodman, Torey McNamara, Bernard Plovnick | | | 5/15/2015 | Deliberative process | meeting preparation |

April 9, 2015

Privileged and Confidential
Attorney Client Work Product

11

OIG DRUG LAB - DPH PRIVILEGE LOG
ENTIRE LOG

| | A Bates Number(Begin) | B Bates Number(End) | C Email Subject | D Email From | E Email To | F Email CC | G Email BCC | H Date | I DPH Privilege Type | J Description |
|---|---|---|---|---|---|---|---|---|---|---|
| 136 | | | St. Anne's Cardiac Cath final presentation for the Commissioner | Bernard Plovnick | Jennifer Barrelle, Deborah Allwes, Elizabeth ScurriaMorgan, Rebecca Rodman, Torey McNamara | | | 5/15/2015 | Deliberative process | meeting preparation |
| 137 | | | St. Anne's Cardiac Cath final presentation for the Commissioner | Deborah Allwes | Bernard Plovnick, Jennifer Barrelle, Elizabeth ScurriaMorgan, Rebecca Rodman, Torey McNamara | Suzanne Cray, Matthew McCabe | | 5/15/2015 | Deliberative process | meeting preparation |
| 138 | | | St. Anne's Cardiac Cath final presentation for the Commissioner | Suzanne Cray | Deborah Allwes | | | 5/15/2015 | Deliberative process | meeting preparation |
| 139 | | | St. Anne's Cardiac Cath final presentation for the Commissioner | Deborah Allwes | Suzanne Cray, Lauren Nelson | | | 5/15/2015 | Deliberative process | meeting preparation |
| 140 | | | St. Anne's Cardiac Cath final presentation for the Commissioner | Deborah Allwes | Jennifer Barrelle, Elizabeth ScurriaMorgan, Rebecca Rodman, Torey McNamara, Bernard Plovnick, Carol Baludescu | Suzanne Cray, Matthew McCabe | | 5/15/2015 | Deliberative process | meeting preparation |
| 141 | | | St. Anne's Cardiac Cath final presentation for the Commissioner | Jennifer Barrelle | Deborah Allwes, Elizabeth ScurriaMorgan, Rebecca Rodman, Torey McNamara, Bernard Plovnick | | | 5/15/2015 | Deliberative process | meeting preparation |
| 142 | | | St. Anne's Cardiac Cath final presentation for the Commissioner | Deborah Allwes | Bernard Plovnick, Jennifer Barrelle, Elizabeth ScurriaMorgan, Rebecca Rodman, Torey McNamara | Suzanne Cray, Matthew McCabe | | 5/15/2015 | Deliberative process | meeting preparation |
| 143 | | | St. Anne's Cardiac Cath final presentation for the Commissioner | Bernard Plovnick | Jennifer Barrelle, Deborah Allwes, Elizabeth ScurriaMorgan, Torey McNamara | | | 5/15/2015 | Deliberative process | meeting preparation |
| 144 | | | St. Anne's Cardiac Cath final presentation for the Commissioner | Rebecca Rodman | Deborah Allwes | | | 5/15/515 | Deliberative process | meeting preparation |
| 145 | | | St. Anne's Cardiac Cath final presentation for the Commissioner | Deborah Allwes | Rebecca Rodman | | | 5/15/2015 | Deliberative process | meeting preparation |
| 146 | | | St. Anne's Cardiac Cath final presentation for the Commissioner | Bernard Plovnick | Deborah Allwes, Rebecca Rodman, Eric Sheehan, Carol Baludescu, Lauren Nelson, Suzanne Cray, Matthew McCabe | | | 5/15/2015 | Deliberative process | meeting preparation |
| 147 | | | St. Anne's Cardiac Cath final presentation for the Commissioner | Deborah Allwes | Bernard Plovnick, Rebecca Rodman, Eric Sheehan, Carol Baludescu, Lauren Nelson, Suzanne Cray, Matthew McCabe | | | 5/15/2015 | Deliberative process | meeting preparation |

Privileged and Confidential
Attorney Client Work Product

April 9, 2015

12

OIG DRUG LAB - DPH PRIVILEGE LOG
ENTIRE LOG

| | A | B | C | D | E | F | G | H | I | J |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | Bates Number(Begin) | Bates Number(End) | Email Subject | Email From | Email To | Email CC | Email BCC | Date | DPH Privilege Type | Description |
| 148 | | | St. Anne's cardiac cath DoN | Deborah Allwes | Bernard Plovnick, Rebecca Rodman, Eric Sheehan, Carol Balukonu, Lauren Nelson, Suzanne Cray, Matthew McCabe | | | 5/15/2015 | Deliberative process | process planning |
| 149 | | | St. Anne's cardiac cath DoN | Bernard Plovnick | Deborah Allwes, Rebecca Rodman, Eric Sheehan, Carol Balukonu, Lauren Nelson, Suzanne Cray, Matthew McCabe | Deborah Allwes, Rebecca Rodman, Eric Sheehan, Carol Balukonu, Lauren Nelson, Matthew McCabe | | 5/15/2015 | Deliberative process | process planning |
| 150 | | | St. Anne's cardiac cath DoN | Suzanne Cray | Bernard Plovnick | Deborah Allwes, Rebecca Rodman, Eric Sheehan, Carol Balukonu, Lauren Nelson, Matthew McCabe | | 5/18/2015 | Deliberative process | process planning |
| 151 | | | St. Anne's cardiac cath DoN | Bernard Plovnick | Suzanne Cray | | | 5/18/2015 | Deliberative process | response to above email |
| 152 | | | Notify Southcoast and Steward that DoN in May has changed | Jennifer Barrelle | Deborah Allwes | Jennifer Barrelle, Eileen M. Sullivan | | 4/21/2015 | Deliberative process | scheduling |
| 153 | | | Notify Southcoast and Steward that DoN in May has changed | Deborah Allwes | Bernard Plovnick | Eric Sheehan | | 4/21/2015 | Deliberative process | forwarded in response to email above |
| 154 | | | Notify Southcoast and Steward that DoN in May has changed | Bernard Plovnick | Deborah Allwes | Eric Sheehan | | 4/21/2015 | Deliberative process | response to above email |
| 155 | | | Notify Southcoast and Steward that DoN in May has changed | Deborah Allwes | Bernard Plovnick, Jennifer Barrelle | Eric Sheehan | | 4/21/2015 | Deliberative process | response to above email |
| 156 | | | Notify Southcoast and Steward that DoN in May has changed | Deborah Allwes | Jennifer Barrelle, Eileen Sullivan | | | 4/21/2015 | Deliberative process | scheduling |
| 157 | | | Notify Southcoast and Steward that DoN in May has changed | Jennifer Barrelle | Deborah Allwes | Jennifer Barrelle, Eileen M. Sullivan | | 4/21/2015 | Deliberative process | response to scheduling |
| 158 | | | Notify Southcoast and Steward that DoN in May has changed | Deborah Allwes | Jennifer Barrelle | Eileen M Sullivan | | 4/21/2015 | Deliberative process | response to above email |
| 159 | | | Notify Southcoast and Steward that DoN in May has changed | Jennifer Barrelle | Deborah Allwes | Jennifer Barrelle, Eileen M Sullivan | | 4/21/2015 | Deliberative process | response to scheduling |
| 160 | | | Notify Southcoast and Steward that DoN in May has changed | Deborah Allwes | Bernard Plovnick | Eric Sheehan | | 4/21/2015 | Deliberative process | scheduling |

April 9, 2015

Privileged and Confidential
Attorney Client Work Product

13

OIG DRUG LAB - DPH PRIVILEGE LOG
ENTIRE LOG

| | Bates Number(Begin) | Bates Number(End) | Email Subject | Email From | Email To | Email CC | Email BCC | Date | DPH Privilege Type | Description |
|---|---|---|---|---|---|---|---|---|---|---|
| 161 | | | Steward St. Anne's Hospital Corporation | Terry Healy on behalf of Andrew Levine | Bernard Plovnick | Carol Balulescu, Andrew Levine, Bruce Singal | | 4/15/2015 | Deliberative process | response to question |
| 162 | | | Steward St. Anne's Hospital Corporation | | Eric Sheehan, Lauren Nelson, Suzanne Cray | Deborah Alwes, Carol Balulescu | | 4/15/2015 | Deliberative process | summary of St. Anne's response to questions |
| 163 | | | Steward St. Anne's Hospital Corporation | Deborah Alwes | Bernard Plovnick, Rebecca Rodman, Eric Sheehan, Rose Nash, Carol Balulescu, Jennifer Barrelle, Bernard Plovnick, Elizabeth ScurriaMorgan | | | 4/15/2015 | Deliberative process | follow up question |
| 164 | | | DoN-St. Anne's | Deborah Alwes | Rebecca Rodman, Eric Sheehan, Rose Nash, Carol Balulescu, Jennifer Barrelle, Bernard Plovnick, Elizabeth ScurriaMorgan | | | 4/7/2015 | Deliberative process | meeting agenda |
| 165 | | | DoN-St. Anne's | Deborah Alwes | | Deborah Alwes, Rebecca Rodman, Eric Sheehan, Rose Nash, Carol Balulescu, Bernard Plovnick, Elizabeth ScurriaMorgan | | 4/7/2015 | Deliberative process | meeting agenda |
| 166 | | | DoN-St. Anne's | | Jennifer Barrelle | | | 4/7/2015 | Deliberative process | response to above email |
| 167 | | | Steward St. Anne's Hospital, Significant Change to DoN Project # 5-3C08 | Bernard Plovnick | Andrew Levine, Howard Hawkins | Carl Rosenfeld | | 4/2/2015 | Deliberative process | letter re: DoN, without attachment |
| 168 | | | Steward St. Anne's Hospital, Significant Change to DoN Project # 5-3C08 | Deborah Alwes | Bernard Plovnick | | | 4/2/2015 | Deliberative process | response to above email |
| 169 | | | Steward St. Anne's Hospital, Significant Change to DoN Project # 5-3C08 | Deborah Alwes | Eileen M Sullivan | | | 4/2/2015 | Deliberative process | forward response to email list above |
| 170 | | | Steward St. Anne's Hospital, Significant Change to DoN Project # 5-3C08 | Bernard Plovnick | Andrew Levine, Howard Hawkins | Carl Rosenfeld | | 4/2/2015 | Deliberative process | letter re: DoN, without attachment |
| 171 | | | Steward St. Anne's Hospital, Significant Change to DoN Project # 5-3C08 | Deborah Alwes | Bernard Plovnick | | | 4/2/2015 | Deliberative process | response to above email |
| 172 | | | Steward St. Anne's Hospital, Significant Change to DoN Project # 5-3C08 | Deborah Alwes | Bernard Plovnick | Deborah Alwes | | 4/2/2015 | Deliberative process | response to above email |
| 173 | | | Steward St. Anne's Hospital, Significant Change to DoN Project # 5-3C08 | Bernard Plovnick | Andrew Levine, Howard Hawkins | Carl Rosenfeld | | 4/2/2015 | Deliberative process | letter re: DoN, without attachment |
| 174 | | | Steward St. Anne's Hospital, Significant Change to DoN Project # 5-3C08 | Deborah Alwes | Bernard Plovnick | | | 4/2/2015 | Deliberative process | response to above email |

April 9, 2015

Privileged and Confidential
Attorney Client Work Product

14

OIG DRUG LAB - DPH PRIVILEGE LOG
ENTIRE LOG

| | A | B | C | D | E | F | G | H | I | J |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | Bates Number (Begin) | Bates Number (End) | Email Subject | Email From | Email To | Email CC | Email BCC | Date | DPH Privilege Type | Description |
| 175 | | | St. Anne's SouthCoast info request draft 4-2-15 | Eric Sheehan | Elizabeth ScurriaMorgan, Carol Balulescu | Deborah Allwes, Bernard Plovnick, Eric Sheehan, Carol Balulescu, Deborah Allwes | | 4/2/2015 | Deliberative process | new draft of request for info, without attachment |
| 176 | | | St. Anne's SouthCoast info request draft 4-2-15 | Elizabeth ScurriaMorgan | Bernard Plovnick | Carol Balulescu, Deborah Allwes | | 4/2/2015 | Deliberative process | response to above email |
| 177 | | | St. Anne's SouthCoast info request draft 4-2-15 | Eric Sheehan | Elizabeth ScurriaMorgan, Bernard Plovnick | | | 4/2/2015 | Deliberative process | response to above email |
| 178 | | | St. Anne's SouthCoast info request draft 4-2-15 | Deborah Allwes | Eric Sheehan | | | 4/2/2015 | Deliberative process | response to above email |
| 179 | | | Questions from PHC | Rebecca Rodman | Bernard Plovnick, Carol Balulescu, Rebecca Rodman, Bernard Plovnick | | | 1/5/2015 | Deliberative process | PHC questions re: St. Anne's and SouthCoast |
| 180 | | | Questions from PHC | Carol Balulescu | Rebecca Rodman, Bernard Plovnick | | | 1/5/2015 | Deliberative process | response to above email |
| 181 | | | Questions from PHC re: St. Anne's DoN | Carol Balulescu | Tom O'Brien, Deborah Allwes, Jennifer Barrelle, Suzanne Cray, Darrell Villaruz | Eileen M Sullivan | | 2/27/2015 | Deliberative process | forward above email |
| 182 | | | Questions from PHC re: St. Anne's DoN | Carol Balulescu | Elizabeth ScurriaMorgan | Bernard Plovnick, Deborah Allwes, Eric Sheehan, Lauren Nelson, Suzanne Cray | | 4/1/2015 | Deliberative process | scheduling |
| 183 | | | Questions from PHC re: St. Anne's DoN | Deborah Allwes | Bernard Plovnick, Suzanne Cray | Deborah Allwes, Lauren Nelson, Suzanne Cray | | 4/1/2015 | Deliberative process | response to above email |
| 184 | | | St. Anne's | Jennifer Barrelle | Bernard Plovnick, Carol Balulescu, Eric Sheehan | | | 4/1/2015 | Deliberative process | scheduling |
| 185 | | | St. Anne's | Deborah Allwes | Bernard Plovnick, Lauren Nelson | | | 4/1/2015 | Deliberative process | revising info request |
| 186 | | | St. Anne's | Deborah Allwes | Bernard Plovnick | Deborah Allwes, Lauren Nelson, Carol Balulescu, Eric Sheehan | | 4/1/2015 | Deliberative process | response to above email |
| 187 | | | St. Anne's | Jennifer Barrelle | Bernard Plovnick, Carol Balulescu | Deborah Allwes, Lauren Nelson, Suzanne Cray | | 4/1/2015 | Deliberative process | scheduling |
| 188 | | | St. Anne's | Deborah Allwes | Bernard Plovnick, Lauren Nelson | | | 4/1/2015 | Deliberative process | response to above email |
| 189 | | | Quincy/St. Anne's | Carol Balulescu | Deborah Allwes, Sherman Lobnes, Suzanne Cray | | | 3/31/2015 | Deliberative process | inquiry re: Quincy closure |
| 190 | | | Quincy/St. Anne's | Deborah Allwes | Carol Balulescu, Sherman Lobnes, Suzanne Cray | | | 3/31/2015 | Deliberative process | response to above email |
| 191 | | | Questions from PHC re: St. Anne's DoN | Deborah Allwes | Darrell Villaruz | Deborah Allwes, Carol Balulescu, Tom O'Brien, Jennifer Barrelle, Suzanne Cray, Eileen M Sullivan | | 2/27/2015 | Deliberative process | logistics |

April 9, 2015

Privileged and Confidential
Attorney Client Work Product

15

OIG DRUG LAB - DPH PRIVILEGE LOG
ENTIRE LOG

| | A | B | C | D | E | F | G | H | I | J |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | Bates Number(Begin) | Bates Number(End) | Email Subject | Email From | Email To | Email CC | Email BCC | Date | DPH Privilege Type | Description |
| 192 | | | | Rebecca Rodman | Bernard Plowick, Carol Balulescu Rebecca Rodman, Bernard Plowick | | | 1/5/2015 | Deliberative process | summary of PHC members' questions from December meeting, without attachment |
| 193 | | | Questions from PHC | Carol Balulescu | Carol Balulescu | Tom O'Brien, Deborah Allwes, Jennifer Barrelle, Suzanne Cray, Darrell Villaruz, Eileen M Sullivan | | 1/5/2015 | Deliberative process | response to above email |
| 194 | | | Questions from PHC re: St. Anne's DoN | Deborah Allwes | Carol Balulescu | | | 2/27/2015 | Deliberative process | response to above email |
| 195 | | | Questions from PHC re: St. Anne's DoN | Deborah Allwes | Carol Balulescu | Deborah Allwes, Tom O'Brien, Jennifer Barrelle, Suzanne Cray, Darrell Villaruz, Eileen M Sullivan | | 2/27/2015 | Deliberative process | response to above email |
| 196 | | | Questions from PHC re: St. Anne's DoN | Deborah Allwes | Darrell Villaruz | Carol Balulescu, Tom O'Brien, Deborah Allwes, Jennifer Barrell, Suzanne Cray, Eileen Sullivan | | 2/27/2015 | Deliberative process | response to forwarded email re: PCI Health Planning |
| 197 | | | Questions from PHC | Rebecca Rodman | Bernard Plowick, Carol Balulescu Rebecca Rodman, Bernard Plowick | | | 1/5/2015 | Deliberative process | summary of HPC questions from December meeting |
| 198 | | | Questions from PHC | Carol Balulescu | Carol Balulescu | | | 1/5/2015 | Deliberative process | response to above email |
| 199 | | | Questions from PHC re: St. Anne's DoN | Deborah Allwes | Carol Balulescu | Tom O'Brien, Deborah Allwes, Jennifer Barrelle, Suzanne Cray, Cathy O'Connor, Rebecca Rodman, Tom O'Brien, Lauren Nelson, Darrell Villaruz | | 2/27/2015 | Deliberative process | follow up question |
| 200 | | | Draft follow up letter re St. Anne's cardiac cath | Bernard Plowick | Jennifer Barelle, Madeline Bionsdalillo | | | 1/7/2015 | Deliberative process | questions following PHC meeting |
| 201 | | | Draft follow up letter re St. Anne's cardiac cath | Lauren Nelson | Deborah Allwes | | | 1/9/2015 | Deliberative process | response to above email |
| 202 | | | Draft follow up letter re St. Anne's cardiac cath | Deborah Allwes | Lauren Nelson | | | 1/9/2015 | Deliberative process | response to above email |
| 203 | | | SAH Cardiac Cath - DoN | Wivifah Kerry | Madeline Bionsdalillo | | | 9/23/2014 | Deliberative process | scheduling email |
| 204 | | | SAH Cardiac Cath - DoN | Madeleine Bionsdalillo | Cathy O'Connor, Bernard Plowick | | | 9/23/2014 | Deliberative process | forwarded question for answer |
| 205 | | | SAH Cardiac Cath - DoN | Cathy O'Connor | Madeleine, Bernard Plowick | Cathy O'Connor | | 9/23/2014 | Deliberative process | response to above email |

Privileged and Confidential
Attorney Client Work Product

April 9, 2015

16

OIG DRUG LAB - DPH PRIVILEGE LOG
ENTIRE LOG

| | A | B | C | D | E | F | G | H | I | J |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | Bates Number (Begin) | Bates Number(End) | Email Subject | Email From | Email To | Email CC | Email BCC | Date | DPH Privilege Type | Description |
| 206 | | | SAH Cardiac Cath - DoN | Madeleine Biondolillo | Cathy O'Connor, Bernard Plovnick | | | 9/23/2014 | Deliberative process | response to above email |
| 207 | | | SAH Cardiac Cath - DoN | Bernard Plovnick | Madeleine Biondolillo, Cathy O'Connor | | | 9/23/2014 | Deliberative process | response to scheduling email |
| 208 | | | SAH Cardiac Cath - DoN | Madeleine Biondolillo | Cathy O'Connor | Bernard Plovnick, Madeleine Biondolillo, Darrell Villaruz, Carol Balulescu | | 9/24/2014 | Deliberative process | response to above email re: logistics and planning email |
| 209 | | | SAH Cardiac Cath - DoN | Cathy O'Connor | Madeleine Biondolillo | Bernard Plovnick, Darrel Villaruz, Carol Balulescu, Cathy O'Connor | | 9/24/2014 | Deliberative process | response to above email re: scheduling email |
| 210 | | | SAH Cardiac Cath - DoN | Bernard Plovnick | Cathy O'Connor, Madeleine Biondolillo | Darrel Villaruz, Carol Balulescu | | 9/24/2014 | Deliberative process | response to above email |
| 211 | | | SAH Cardiac Cath - DoN | Madeleine Biondolillo | Carol Balulescu | Cathy O'Connor, Madeleine Biondolillo, Darrell Villaruz, Lauren Nelson, Deborah Allwes, Kathy Svizzero | | 9/24/2014 | Deliberative process | scheduling email |
| 212 | | | SAH Cardiac Cath - DoN | Madeleine Biondolillo | Madeleine Biondolillo, Carol Balulescu | Bernard Plovnick, Cathy O'Connor, Madeleine Biondolillo, Darrell Villaruz, Lauren Nelson, Kathy Svizzero | | 9/24/2014 | Deliberative process | response to scheduling meeting |
| 213 | | | St. Anne's Hospital cardiac cath Mtg. | Rose Nash | Rose Nash, Deborah Allwes, Cathy Connor, Nancy Murphy, Lauren Nelson, Bernard Plovnick | | | 8/28/2014 | Deliberative process | meeting request |
| 214 | | | St. Anne's Hospital Cardian Cath Mtg. | Deborah Allwes | Rose Nash, Cathy O'Connor, Nancy Murphy, Lauren Nelson, Bernard Plovnick | | | 9/11/2014 | Deliberative process | response to meeting request |
| 215 | | | St. Anne's Hospital Cardiac Cath | Bernard Plovnick | Deborah Allwes, Lauren Nelson | Cathy O'Connor, Nancy Murphy | | 8/7/2014 | Deliberative process | scheduling email |
| 216 | | | St. Anne's Hospital Cardiac Cath | Deborah Allwes | Bernard Plovnick, Lauren Nelson | Cathy O'Connor, Nancy Murphy | | 8/7/2014 | Deliberative process | response to scheduling email |
| 217 | | | St. Anne's Hospital Cardiac Cath | Bernard Plovnick | Rose Nash | | | 8/27/2014 | Deliberative process | forwarding scheduling email |
| 218 | | | St. Anne's Hospital Cardiac Cath | Rose Nash | Deborah Allwes | | | 8/28/2014 | Deliberative process | response to scheduling email |
| 219 | | | St. Anne's Hospital Cardiac Cath | Deborah Allwes | Rose Nash | | | 8/28/2014 | Deliberative process | response to above email |

Privileged and Confidential
Attorney Client Work Product

April 9, 2015

17

OIG DRUG LAB - DPH PRIVILEGE LOGS
ENTRIE LOG

| | A | B | C | D | E | F | G | H | I | J |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | Bates Number(Begin) | Bates Number(End) | Email Subject | Email From | Email To | Email CC | Email BCC | Date | DPH Privilege Type | Description |
| 220 | | | Field Trip | Jennifer Barrelle | Elisabeth Scurria/Morgan, Rebecca Roehrs, Torey McNamara, Deborah Allwes | | | | | scheduling email |
| 221 | | | CSt. Anne's Cardiac Cath final presentation for the Commissioner | Deborah Allwes | Jennifer Barrelle, Elizabeth Scurria/Morgan, Rebecca Rodman, Torey McNamara, Bernard Plovnick | | | 5/15/2015 | Deliberative process | planning meeting re: St. Anne's Cardiac Cath final presentation, without attachment |
| 222 | | | St. Anne's Cardiac Cath DoN | Bernard Plovnick | Deborah Allwes, Rebecca Rodman, Eric Sheehan, Carol Baiulescu, Lauren Nelson, Suzanne Cray, Matthew McCabe | | | 5/15/2015 | Deliberative process | response to information requested by PHC requested during December meeting |
| 223 | | | St. Anne's cardiac cath DoN | Deborah Allwes | Bernard Plovnick, Rebecca Rodman, Eric Sheehan, Carol Baiulescu, Lauren Nelson, Suzanne Cray, Matthew McCabe | | | 5/15/2015 | Deliberative process | response to above email |
| 224 | | | St. Anne's cardiac cath DoN | Lauren Nelson | Deborah Allwes, Bernard Plovnick, Rebecca Rodman, Eric Sheehan, Carol Baiulescu, Suzanne Cray, Matthew McCabe | | | 5/15/2015 | Deliberative process | response to above email re: planning |
| 225 | | | St. Anne's cardiac cath DoN | Bernard Plovnick | Deborah Allwes, Rebecca Rodman, Eric Sheehan, Carol Baiulescu, Lauren Nelson, Suzanne Cray, Matthew McCabe | Deborah Allwes, Rebecca Rodman, Eric Sheehan, Carol Baiulescu, Lauren Nelson, Matthew McCabe | | 5/15/2015 | Deliberative process | response to above email |
| 226 | | | PHC Questions re St. Anne's DoN Amendment 5-18-15 | Suzanne Cray | Bernard Plovnick | | | 5/18/2015 | Deliberative process | response to email re: PHC questions, without attachment |
| 227 | | | St. Anne's Cardiac Cath Final Presentation to Commissioner | Deborah Allwes | Jennifer Barrelle, Elizabeth Scurria/Morgan, Rebecca Rodman, Torey McNamara, Bernard Plovnick, Carol Baiulescu | Suzanne Cray, Matthew McCabe | | 5/15/2015 | Deliberative process | email re: St. Anne's final presentation to the Commissioner, including scheduling, without attachment |
| 228 | | | St. Anne's Cardiac Cath Final Presentation to Commissioner | Torey McNamara | Deborah Allwes, Jennifer Barrelle, Elizabeth Scurria/Morgan, Rebecca Rodman, Bernard Plovnick, Carol Baiulescu | Suzanne Cray, Matthew McCabe | | 5/15/2015 | Deliberative process | response to above email |
| 229 | | | CSt. Anne's Cardiac Cath final presentation for the Commissioner | Jennifer Barrelle | Deborah Allwes, Elizabeth Scurria/Morgan, Rebecca Rodman, Torey McNamara, Bernard Plovnick | | | 5/15/2015 | Deliberative process | response to above email re: presentation |

April 9, 2015

Privileged and Confidential
Attorney Client Work Product

18

OIG DRUG LAB - DPH PRIVILEGE LOG
ENTIRE LOG

| | Bates Number(Begin) | Bates Number(End) | Email Subject | Email From | Email To | Email CC | Email BCC | Date | DPH Privilege Type | Description |
|---|---|---|---|---|---|---|---|---|---|---|
| | A | B | C | D | E | F | G | H | I | J |
| 230 | | | CSt. Anne's Cardiac Cath final presentation for the Commissioner | Bernard Plovnick | Jennifer Barrelle, Deborah Allwes, Elizabeth SsurriaMorgan, Rebecca Rodman, Torey McNamara | | | 5/15/2015 | Deliberative process | response to above email |
| 231 | | | CSt. Anne's Cardiac Cath final presentation for the Commissioner | Debora Allwes | Bernard Plovnick, Jennifer Barrelle, Elizabeth SsurriaMorgan, Rebecca Rodman, Torey McNamara | Suzanne Cray, Matthew McCabe | | 5/15/2015 | Deliberative process | response to email above |
| 232 | | | CSt. Anne's Cardiac Cath final presentation for the Commissioner | Suzanne Cray | Debora Allwes | | | 5/15/2015 | Deliberative process | response to above email |
| 233 | | | PHC Questions re St. Anne's DoN Amendment 5-18-15 | Suzanne Cray | Debora Allwes | | | 5/15/2015 | Deliberative process | response to above email re presentation |
| 234 | | | CSt. Anne's Cardiac Cath final presentation for the Commissioner | Suzanne Cray | Deborah Allwes | | | 5/15/2015 | Deliberative process | response to above email re presentation |
| 235 | | | CSt. Anne's Cardiac Cath final presentation for the Commissioner | Bernard Plovnick | Jennifer Barrelle, Deborah Allwes, Elizabeth SsurriaMorgan, Rebecca Rodman, Torey McNamara | | | 5/15/2015 | Deliberative process | response to above email re presentation |
| 236 | | | SAH Cardiac Cath - DoN | Bernard Plovnick | Madeleine Biondolillo, Cathy O'Connor | | | 9/24/2014 | Deliberative process | scheduling |
| 237 | | | SAH Cardiac Cath - DoN | Madeleine Biondolillo | Cathy O'Connor | Bernard Plovnick, Madeleine Biondolillo, Darrell Villaruz, Carol Balulescu | | 9/24/2014 | Deliberative process | communication planning |
| 238 | | | SAH Cardiac Cath - DoN | Cathy O'Connor | Madeleine Biondolillo | Bernard Plovnick, Darrell Villaruz, Carol Balulescu, Cathy O'Connor | | 9/24/2014 | Deliberative process | communication planning |
| 239 | | | SAH Cardiac Cath - DoN | Bernard Plovnick | Cathy O'Connor, Madeleine Biondolillo | Darrell Villaruz, Carol Balulescu | | 9/24/2014 | Deliberative process | communication planning |
| 240 | | | SAH Cardiac Cath - DoN | Lauren Nelson | Madeleine Biondolillo | Carol Balulescu, Bernard Plovnick, Cathy O'Connor, Darrell Villaruz, Sherman Lohnes, Deborah Allwes, Kathy Svizzero | | 9/24/2014 | Deliberative process | scheduling |
| 241 | | | SAH Cardiac Cath - DoN | Darrell Villaruz | Lauren Nelson, Madeleine Biondolillo | Bernard Plovnick, Cathy O'Connor, Sherman Lohnes, Deborah Allwes, Kathy Svizzero | | 9/24/2014 | Deliberative process | scheduling |

April 9, 2015

Privileged and Confidential
Attorney Client Work Product

19

OIG DRUG LAB - DPH PRIVILEGE LOG
ENTIRE LOG

| | A | B | C | D | E | F | G | H | I | J |
|---|---|---|---|---|---|---|---|---|---|---|
| | Bates Number(Begin) | Bates Number(End) | Email Subject | Email From | Email To | Email CC | Email BCC | Date | DPH Privilege Type | Description |
| 242 | | | SAH Cardiac Cath - DoN Wed Oct 1 at 9:00 | Kathy Svitzero | Lauren Nelson | Madeleine, Biondolillo, Deborah Allwes, Carol Baliulescu, Bernard Plovnick, Cathy O'Connor, Darrell Villaruz, Rose Nash | | 9/24/2014 | Deliberative process | scheduling |
| 243 | | | SAH Cardiac Cath - DoN | Madeleine Biondolillo | Carol Baliulescu | Bernard Plovnick, Cathy O'Connor, Madeleine Biondolillo, Darrell Villaruz, Lauren Nelson, Deborah Allwes, Kathy Svitzero | | 9/24/2014 | Deliberative process | scheduling |
| 244 | | | SAH Cardiac Cath - DoN | Madeleine Biondolillo | Carol Baliulescu | Bernard Plovnick, Cathy O'Connor, Madeleine Biondolillo, Darrell Villaruz, Lauren Nelson, Deborah Allwes, Kathy Svitzero | | 9/24/2014 | Deliberative process | scheduling |
| 245 | | | SAH Cardiac Cath - DoN | Deborah Allwes | Madeleine Biondolillo, Carol Baliulescu | Bernard Plovnick, Cathy O'Connor, Darrell Villaruz, Lauren Nelson, Kathy Svitzero | | 9/24/2014 | Deliberative process | scheduling |
| 246 | | | SAH Cardiac Cath - DoN | Madeleine Biondolillo | Deborah Allwes | Madeleine Biondolillo, Deborah Allwes, Carol Baliulescu, Bernard Plovnick, Cathy O'Connor, Darrell Villaruz, Rose Nash | | 9/24/2014 | Deliberative process | scheduling |
| 247 | | | SAH Cardiac Cath - DoN | Kathy Svitzero | Lauren Nelson | | | 9/24/2014 | Deliberative process | scheduling |
| 248 | | | SAH Cardiac Cath - DoN | Carol Baliulescu | Kathy Svitzero | | | 9/24/2014 | Deliberative process | scheduling |

Privileged and Confidential
Attorney Client Work Product

OIG DRUG LAB - DPH PRIVILEGE LOG
ENTIRE LOG

| | Bates Number(Begin) | Bates Number(End) | Email Subject | Email From | Email To | Email CC | Email BCC | Date | DPH Privilege Type | Description |
|---|---|---|---|---|---|---|---|---|---|---|
| | A | B | C | D | E | F | G | H | I | J |
| 249 | | | SAH Cardiac Cath - DoN | Lauren Nelson | Kathy Svitzero | Madeleine Biondolillo, Deborah Allwes, Carol Balulescu, Bernard Plovnick, Cathy O'Connor, Darrell Villarux, Rose Nash | | 11/24/2014 | Deliberative process | scheduling |
| 250 | | | FW: SAH Cardiac Cath - DoN | Bernard Plovnick | Kathy Svitzero | Bernard Plovnick, Cathy O'Connor, Madeleine Biondolillo, Darrell Villarux, Lauren Nelson, Sherman Lohnes, Deborah Allwes, Kathy Svitzero | | 11/24/2014 | Deliberative process | scheduling |
| 251 | | | SAH Cardiac Cath - DoN | Madeleine Biondolillo | Carol Balulescu | Carol Balulescu, Bernard Plovnick, Cathy O'Connor, Darrell Villarux, Lauren Nelson | | 9/24/2014 | Deliberative process | scheduling |
| 252 | | | SAH Cardiac Cath - DoN | Kathy Svitzero | Madeleine Biondolillo, Deborah Allwes | Bernard Plovnick, Cathy O'Connor, Darrell Villarux, Lauren Nelson | | 9/24/2014 | Deliberative process | scheduling |
| 253 | | | SAH Cardiac Cath - DoN | Carol Balulescu | Kathy Svitzero, Madeleine Biondolillo, Deborah Allwes | Cathy O'Connor, Darrell Villarux, Lauren Nelson | | 9/24/2014 | Deliberative process | scheduling |
| 254 | | | FW: SAH Cardiac Cath - DoN | Bernard Plovnick | Kathy Svitzero | | | 9/24/2014 | Deliberative process | scheduling |
| 255 | | | St. Anne's Hospital cardiac cath | Bernard Plovnick | Deborah Allwes, Lauren Nelson, Madeleine Biondolillo, Sherman... | Cathy O'Connor, Nancy Murphy | | 8/7/2014 | Deliberative process | DoN application process |
| 256 | | | Comments to DoN Staff Recommendation | Howard Hawkins | Cathy O'Connor, Andrew Levine, Lauren Nelson, Mary Byrnes, Katherine Mills, Kiki Feldman, Martha Coakley, Maura Healey, John Polanowitz | Todd Herrman, Lisa Boyle | | | Deliberative process | Southcoast comments re: staff recommendation with attached letter |
| 257 | | | FW:Comments to DoN Staff Recommendation | Bernard Plovnick | Tom O'Brien, Jay Youmans, Jennifer Barrelle, Eileen Sullivan, Madeleine Biondolillo, Deborah Allwes | Carol Balulescu, Cathy O'Connor, Darrell Villarux, Kathy Svitzero, Rebecca Rodman | | 9/24/2014 | Deliberative process | Forward attached letter |
| 258 | | | St. Anne's DoN involving Cardiac Catheterization (Amendment to 3-CO8 | Bernard Plovnick | Madeleine Biondolillo | Cathy O'Connor, Kathy Svitzero, Rebecca Rodman, Carol Balulescu, Jennifer Barrell | | 11/24/2014 | Deliberative process | forward draft staff recommendation for comments |

Privileged and Confidential
Attorney Client Work Product

April 9, 2015

21

OIG DRUG LAB - DPH PRIVILEGE LOG
ENTIRE LOG

| | A | B | C | D | E | F | G | H | I | J |
|---|---|---|---|---|---|---|---|---|---|---|
| 1 | Bates Number(Begin) | Bates Number(End) | Email Subject | Email From | Email To | Email CC | Email BCC | Date | DPH Privilege Type | Description |
| 259 | | | St. Anne's DoH involving Cardiac Catheterization (Amendment to 3CO8 | Cathy O'Connor | Bernard Plovnick, Madelene Biondolillo | Kathy Swizzero, Rebecca Rodman, Carol Balulescu, Jennifer Barrelle | | 11/24/2014 | Deliberative process | response to above email |
| 260 | | | St. Anne's DoH involving Cardiac Catheterization (Amendment to 3CO8 | Bernard Plovnick | Madelene Biondolillo | Cathy O'Connor, Kathy Swizzero, Rebecca Rodman, Carol Balulescu, Jennifer Barrell | | 11/24/2014 | Deliberative process | forward draft staff recommendation for comments, with attachment |

April 9, 2015

Privileged and Confidential
Attorney Client Work Product

22

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss.

SUPERIOR COURT DEPARTMENT
C.A. # SUCV2015-02137-E

|  |  |
|---|---|
| CONSIDINE & FUREY, LLP | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| THE MASSACHUSETTS DEPARTMENT | ) |
| OF PUBLIC HEALTH and MONICA | ) |
| BHAREL, M.D., in her capacity as | ) |
| Commissioner | ) |
| | ) |
| Defendants. | ) |
| | ) |

## [PROPOSED] ORDER

The court hereby *ORDERS* that all of the public records requested by Plaintiff in its May 20, 2015 request, including all documents listed in Defendants' July 21, 2015 privilege log, be produced and delivered to Plaintiff and to counsel for the defendants, for the purpose of presenting each with an opportunity to inspect and review the materials, in order to determine whether any exemption to disclosure applies to the requested information. If Plaintiff and counsel for the Defendants fail to agree as to the applicability of any exemption, they may present the matter to the court for a determination.

Specifically, the court *ORDERS* that the following conditions shall apply:

1. Defendants are hereby ordered to produce all documents responsive to Plaintiff's May 20, 2015 public records request, without respect to Defendants' claim of any exemption from disclosure of such records.

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss.

SUPERIOR COURT DEPARTMENT
C.A. # SUCV2015-02137-E

```
_____
                                  )
CONSIDINE & FUREY, LLP            )
                                  )
    Plaintiff,                    )
                                  )
v.                                )
                                  )
THE MASSACHUSETTS DEPARTMENT      )
OF PUBLIC HEALTH and MONICA       )
BHAREL, M.D., in her capacity as  )
Commissioner                      )
                                  )
    Defendants.                   )
_____  )
```

## CERTIFICATE OF SERVICE

I hereby certify that on this date a true and accurate copy of the following documents:

1. *Plaintiff's Motion to Permit Inspection of Public Records Pursuant to a Protective Order;*
2. *Plaintiff's Memorandum of Law in Support of its Motion to Permit Inspection of Public Records Pursuant to a Protective Order; and*
3. *Proposed Order.*

were served upon the following counsel for the defendants via email and by hand delivery:

Dan Hammond
Massachusetts Office of Attorney General
One Ashburton Place
Boston, MA 02108

_____
Kevin M. Considine

Dated: August 4, 2015

COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss.                                       SUPERIOR COURT DEPARTMENT
                                                  C.A. # SUCV2015-02137-E

|  |  |
|---|---|
| CONSIDINE & FUREY, LLP | ) |
|  | ) |
|    Plaintiff, | ) |
|  | ) |
| v. | ) |
|  | ) |
| THE MASSACHUSETTS DEPARTMENT | ) |
| OF PUBLIC HEALTH and MONICA | ) |
| BHAREL, M.D., in her capacity as | ) |
| Commissioner | ) |
|  | ) |
|    Defendants. | ) |

## PLAINTIFF'S MOTION TO PERMIT INSPECTION OF PUBLIC RECORDS PURSUANT TO A PROTECTIVE ORDER

Plaintiff Considine and Furey, LLP respectfully requests that the court enter the attached

Order permitting Plaintiff to inspect public records in the custody of Defendants Massachusetts

Department of Public Health ("DPH") and Commissioner Monica Bharel, M.D pursuant to a

protective order. The relevant documents are within the definition of "public records" and were

properly requested by Plaintiff on May 20, 2015 under the Massachusetts Public Records Law,

G.L. c. 66, § 10. On July 21, 2015, after the filing of this action, Defendants made a partial

disclosure of the requested records and notified Plaintiff that it was withholding an additional

258 responsive documents pursuant to the "deliberative process" exemption (G.L. c. 4, §

7(26)(e)). Defendants included a "privilege log," attached hereto, which identifies the withheld

records.

In such circumstances, the Massachusetts Supreme Judicial Court has ruled that it is appropriate to allow the moving party access to the requested documents subject to a protective order for the purpose of offering an informed argument as to the validity of the exemption. *See Globe Newspaper Company v. Police Commissioner of Boston,* 419 Mass. 852, 868-69 (1995) (a protected inspection allows the parties to "particularize their arguments to the judge, citing specific materials or portions of materials that are exempt or subject to disclosure").  By this Motion, Plaintiff seeks the limited production of the withheld records to test the Defendants' claim that the documents are exempt from production.  In support of this motion, Plaintiff submits the attached memorandum of law.

WHEREFORE, Plaintiff respectfully requests that the court enter the attached Order permitting Plaintiff to inspect all public records in Defendants' custody that are responsive to Plaintiff's request, including all documents listed in Defendants' July 21, 2015 "privilege log," subject to an appropriate protective order.

Respectfully Submitted,

CONSIDINE & FUREY, LLP
By its attorneys,

Kevin M. Considine, Esq.
BBO# 542253
Erin B. Sinclair, Esq.
BBO# 670881
Considine & Furey, LLP
One Beacon Street, 23rd Floor
Boston, MA 02108
Telephone: (617) 723-7200
kconsidine@considinefurey.com

Dated:  August 4, 2015

*Notify*

# COMMONWEALTH OF MASSACHUSETTS

SUFFOLK, ss.                                    SUPERIOR COURT DEPARTMENT
                                               C.A. # SUCV2015-02137-E

---

CONSIDINE & FUREY, LLP                    )
                                          )
   Plaintiff,                          )
                                          )
v.                                        )
                                          )
THE MASSACHUSETTS DEPARTMENT              )
OF PUBLIC HEALTH and MONICA               )
BHAREL, M.D., in her capacity as          )
Commissioner                              )
                                          )
   Defendants.                         )
                                          )

---

## ~~_____~~ ORDER

The court hereby *ORDERS* that all of the public records requested by Plaintiff in its May

20, 2015 request, including all documents listed in Defendants' July 21, 2015 privilege log, be

produced and delivered to Plaintiff and to counsel for the defendants, for the purpose of

presenting each with an opportunity to inspect and review the materials, in order to determine

whether any exemption to disclosure applies to the requested information.  If Plaintiff and

counsel for the Defendants fail to agree as to the applicability of any exemption, they may

present the matter to the court for a determination.

   Specifically, the court *ORDERS* that the following conditions shall apply:

1.  Defendants are hereby ordered to produce all documents responsive to Plaintiff's May 20, 2015

public records request, without respect to Defendants' claim of any exemption from disclosure of

such records.

*notice sent*
*08.10.15*
*EBs*
*C+F Llp*
*(mo)*

2.  Any documents produced by Defendants in response to this Order by way of production of documents or oral testimony at depositions or in response to any other discovery device, and any information contained within those documents, in connection with this litigation, shall be deemed "confidential information."

3.  Such confidential information provided during this litigation may not be disclosed to any person other than Plaintiff, counsel for Defendants, and those other persons directly engaged in the provision of legal services in connection with this litigation.

4.  Such confidential information shall be used solely to formulate an opinion whether the documents are exempt from public disclosure until further order of the Court. Any recipient of such confidential information shall not disclose the same to any person to whom disclosure is not authorized by the terms of this Order until further order of the Court.

5.  All requested documents shall be produced by the close of business Friday, August 7, 2015. Documents may be produced in either electronic or paper form.

So ordered on this _____ day of August, 2015.

_____
(J,                              )
Massachusetts Superior Court Judge

notice sent
08.10.15
(mo)

2