**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| STEWARD HEALTH CARE SYSTEM LLC, <br>     *Plaintiff*, <br><br> v. <br><br> SOUTHCOAST HEALTH SYSTEM, INC., <br>     *Defendant*. | ) <br> ) <br> ) <br> ) <br> )     No. 1:15-cv-14188-MLW <br> ) <br> ) <br> ) |

**PLAINTIFF STEWARD HEALTH CARE SYSTEM LLC'S OPPOSITION TO
DEFENDANT SOUTHCOAST HEALTH SYSTEM, INC.'S MOTION TO DISMISS**

Respectfully submitted,

STEWARD HEALTH CARE SYSTEM LLC

By its attorneys,

*/s/ Daniel N. Marx*
Daniel N. Marx (BBO#674523)
Kevin C. Conroy (BBO#644894)
Jeremy W. Meisinger (BBO#688283)
FOLEY HOAG LLP
155 Seaport Boulevard
Boston, MA  02210
Tel: (617) 832-1000
Fax: (617) 832-7000
dmarx@foleyhoag.com

Dated: February 8, 2016

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..................................................................................................... ii

INTRODUCTION ................................................................................................................... 1

BACKGROUND ...................................................................................................................... 1

ARGUMENT ........................................................................................................................... 4

    I.      STANDARD OF REVIEW ...................................................................................4

    II.     STEWARD HAS ADEQUATELY PLED THAT SOUTHCOAST
          ENGAGED IN UNLAWFUL EXCLUSIONARY CONDUCT TO
          MAINTAIN ITS MONOPOLY...............................................................................5

          A.      In Order to Maintain Its Monopoly, Southcoast Has Engaged in
                  Sham Litigation Against Steward. ..............................................................5

                1.      Lack of Standing ...........................................................................7

                2.      Absence of actual controversy ....................................................11

                 3.      Unavailability of injunctive relief................................................12

                 4.      Lack of substantive merit.............................................................13

           B.      In Order to Prevent Competition, Southcoast Has Also Defamed
                  Steward. ....................................................................................................15

    III.    STEWARD HAS ADEQUATELY PLED THAT SOUTHCOAST MADE
          DEFAMATORY STATEMENTS OF FACT. ......................................................17

    IV.    STEWARD HAS ADEQUATELY PLED THAT SOUTHCOAST
          TORTIOUSLY INTERFERED WITH BUSINESS RELATIONSHIPS.............19

CONCLUSION....................................................................................................................... 20

CERTIFICATE OF SERVICE .............................................................................................. 21

i

## **TABLE OF AUTHORITIES**

### **Cases**

*Aldoupolis v. Globe Newspaper Co.,*
  398 Mass. 731 (1986) ......................................................................................... 18

*Bell Atlantic Corp. v. Twombly,*
  550 U.S. 544 (2007).......................................................................................... 4, 17

*Bello v. South Shore Hospital,*
  384 Mass. 770 (1981) ......................................................................................... 11

*Boxcar Media LLC v. Redneck Junk LLC,*
  345 F. Supp.2d 76 (D. Mass. 2004) .................................................................... 20

*Brandt v. Advance Cell Technology, Inc.,*
  349 F. Supp. 2d 54 (D. Mass. 2003) ................................................................... 20

*In re Burlington Northern, Inc.,*
  822 F.2d 518 (5th Cir. 1987) ............................................................................ 6, 7

*Chicopee Co-op. Bank v. Board of Bank Incorporation,*
  347 Mass. 744 (1964) ........................................................................................... 9

*City of Boston Credit Union v. Cotney,*
  2015 Mass. Super. LEXIS 10 (Mass. Super. Ct. Feb. 17, 2015) ................... 8, 9, 10

*Coughlin v. Town of Arlington,*
  2011 U.S. Dist. LEXIS 146285 (D. Mass. Dec. 19, 2011) .................................... 17

*Cox v. Commissioner of Corrections,*
  83 Mass. App. Ct. 1107 (2013)............................................................................ 13

*CVD, Inc. v. Raytheon Corp.,*
  769 F.2d 842 (1st Cir. 1985)................................................................................. 5

*Davidson v. Cao,*
  211 F. Supp. 2d 264 (D. Mass. 1994) ................................................................... 4

*Davric Maine Corp. v. Rancourt,*
  216 F.3d 143 (1st Cir. 2000)................................................................................. 5

*Draghetti v. Chmielewski,*
  416 Mass. 808 (1994) ......................................................................................... 15

*Encompass Ins. Co. v. Giampa,*
  522 F. Supp. 2d 300 (D. Mass. 2007) ............................................................ 20

*Energy Conservation, Inc. v. Heliodyne, Inc.,*
  698 F.2d 386 (9th Cir. 1982) ............................................................ 6

*Enos v. Secretary of Environmental Affairs,*
  432 Mass. 100 (2000) ............................................................ 10, 11

*Entergy Nuclear Generation Co. v. Department of Environmental Protection,*
  459 Mass. 319 (2011) ............................................................ 12

*Everett Town Taxi, Inc. v. Board of Alderman of Everett,*
  366 Mass. 534 (1974) ............................................................ 7

*Freeman v. Lasky, Haas & Cohler, PC,*
  410 F.3d 1180 (9th Cir. 2005) ............................................................ 16

*In re Fresh Del Monte Pineapple Antitrust Litigation,*
  2007 U.S. Dist. LEXIS 1372 (S.D.N.Y. Jan. 9, 2007)............................................................ 5

*Garrett v. Tandy Corp.,*
  295 F.3d 94 (1st Cir. 2002) ............................................................ 18, 19

*G.S. Enterprises, Inc. v. Falmouth Marine, Inc.,*
  410 Mass. 262 (1991) ............................................................ 20

*Guest-Tek Interactive Entertainment, Inc.v. Pullen,*
  731 F. Supp. 2d 80 (D. Mass. 2010) ............................................................ 20

*HipSaver, Inc. v. Kiel,*
  464 Mass. 517 (2013) ............................................................ 15

*Honeywell Consumer Products, Inc. v. Windmere Corp.,*
  993 F. Supp. 22 (D. Mass. 1998) ............................................................ 5

*Hospital Building Co. of Trustees v. Rex. Hosp.,*
  425  U.S. 738 (1976)............................................................ 5

*Hull Municipal Lighting Plant v. Massachusetts Municipal Wholesale Electric Co.,*
  399 Mass. 640 (1987) ............................................................ 13

*Indeck Maine Energy, LLC v. Commissioner of Energy Resources,*
  454 Mass. 511 (2009) ............................................................ 7, 8, 9, 11

iii

*Innovation Ventures, LLC v. N.V.E., Inc.,*
   694 F.3d 723 (6th Cir. 2012) ......................................................... 16

*International Travel Arrangers, Inc. v. Western Airlines, Inc.,*
   623 F.2d 1255 (8th Cir. 1980) ....................................................... 15

*Joyce v. The Upper Crust, LLC,*
   2012 U.S. Dist. LEXIS 103101 (D. Mass. July 25, 2012) ....................... 17

*Landmarks Holding Corp. v. Bermant,*
   664 F.2d 891 (2d Cir. 1981) ............................................................ 7

*Levinsky's, Inc. v. Wal-Mart Stores,*
   127 F.3d 122 (1st Cir. 1997) ................................................... 18, 19

*Martin v. Lefkowitz,*
   1994 Mass. Super. LEXIS 37 (Mass. Super. Ct. Aug. 3, 1994) ............... 19

*Martin v. Lefkowitz,*
   40 Mass. App. Ct. 1113 (1996) ...................................................... 19

*Massachusetts General Hospital v. Rate Setting Commission,*
   371 Mass. 705 (1977) ................................................................. 14

*McGuinn v. DeSoto, Inc.,*
   1990 U.S. Dist. LEXIS 14318 (N.D. Ill. Oct. 17, 1990) ....................... 12

*Mercatus Group, LLC v. Lake Forest Hospital,*
   641 F.3d 834 (7th Cir. 2011) ........................................................ 16

*Milkovich v. Lorain Journal Co.,*
   497 U.S. 1 (1990) ............................................................... 18, 19

*Moving and Storage, Inc.v. Panayotov,*
   2014 U.S. Dist. LEXIS 31546 (D. Mass. Mar. 12, 2014) ..................... 20

*North Shore Pharmarcy Service, Inc. v. Breslin Assocs. Consulting LLC,*
   491 F. Supp. 2d 111 (D. Mass. 2007) ............................................. 17

*Packaging Industries Group v. Cheney,*
   380 Mass. 609 (1980) ................................................................. 13

*Phantom Touring, Inc. v. Affiliated Pubs.,*
   953 F.2d 724 (1st Cir. 1992) ........................................................ 18

*Picker International, Inc. v. Leavitt,*
  865 F. Supp. 951 (D. Mass. 1994) ........................................................................ 15

*Pratt v. Boston,*
  396 Mass. 37 (1985) ........................................................................................... 7

*Professional Real Estate Investors, Inc. v. Columbia Pictures Industries, Inc.,*
  508 U.S. 49 (1993).......................................................................................... 5, 6

*Ravnikar v. Bogojavlensky,*
  438 Mass. 627 (2003) ......................................................................................... 17

*Santander Consumer USA, Inc. v. Walsh,*
  762 F. Supp. 2d 217 (D. Mass. 2010) .............................................................. 5, 6, 11

*Scholz v. Delp,,*
  473 Mass. 242 (2015) ......................................................................................... 18

*School Committee of Hudson v. Board of Education,*
  448 Mass. 565 (2007) ......................................................................................... 8

*Shay v. Walters,*
  702 F.3d 76 (1st Cir. 2012) .................................................................................. 17

*Shirkorov v. Dunlap, Grubb & Weaver PLLC,*
  2012 U.S. Dist. LEXIS 42787 (D. Mass. Mar. 1, 2012).......................................... 5

*Skinder-Strauss Associates v. Massachusetts Continuing Legal Education, Inc.,*
  870 F. Supp. 8 (D. Mass. 1994) ........................................................................... 4

*Southcoast Hospital Group, Inc. v. Massachusetts Department of Public Health,*
  SUCV2015-03139-D (Mass. Super. Ct. Dec. 17, 2015)....................................... 3, 4

*South Shore National Bank v. Board of Bank Incorporation,*
  351 Mass. 363 (1966) ......................................................................................... 9

*Swierkiewicz v. Sorema N.A.,*
  534 U.S. 506 (2002).......................................................................................... 17

*Town of Hingham v. Department of Housing and Community Development,*
  451 Mass. 501 (2008) ......................................................................................... 12

*Trans-Spec Truck Services v. Catepillar, Inc.,*
  524 F.3d 315 (1st Cir. 2008)................................................................................ 4

*Tribbett v. Commissioner of Corrections,*
   2009 Mass. App. Unpub. LEXIS 875 (June 26, 2009) ............................................................ 14

*U.S. Healthcare, Inc. v. Blue Cross of Greater Philadelphia,*
   898 F.2d 914 (3d Cir. 1990) .................................................................................... 15, 16

*United States ex rel. Hutcheson v. Blackstone Medical Inc.,*
   647 F.3d 377 (1st Cir. 2011) ............................................................................................. 4

*West Penn Allegheny Hospital v. UPMC,*
   627 F.3d 85 (3d Cir. 2010) .............................................................................................. 15

*Yohe v. Nugent,*
   321 F.3d 35 (1st Cir. 2003) ............................................................................................. 17

## Rules and Regulations

105 CMR 130.000 ........................................................................................................... 9

105 CMR 130.000-130.982 ............................................................................................ 13

105 CMR 130.104 ..................................................................................................... 9, 10

105 CMR 130.130 ........................................................................................................... 9

105 CMR 130.900 ........................................................................................................... 9

105 CMR 130.900-130.982 ............................................................................................. 7

105 CMR 130.935 ..................................................................................................... 2, 9

Fed. R. Civ. P. 8(a) ................................................................................................. 4, 6, 17

Fed. R. Civ. P. 9(b) ...................................................................................................... 17

## Statutory Authorities

M.G.L. c. 30A, §§ 2-3 .................................................................................................. 13

M.G.L. c. 111, § 25 (C)(a) ............................................................................................ 11

M.G.L. c. 172, § 11 ........................................................................................................ 9

**Additional Authorities**

Phillip E. Areeda & Herbert Hovenkamp, ANTITRUST LAW (3d ed. 2006)................................ 5, 6

Robert H. Bork, THE ANTITRUST PARADOX  (1978) .................................................................... 5

**INTRODUCTION**

Defendant Southcoast Health System, Inc. ("Southcoast") seeks to avoid any liability for unlawfully protecting its monopoly over cardiac catheterization services in Southeastern Massachusetts and preventing, or at least delaying, competition by Plaintiff Steward Health Care System LLC ("Steward"), which applied for permission from the Department of Public Health ("DPH") to transfer cardiac catheterization services to Saint Anne's Hospital in Fall River. Because Steward's complaint adequately alleges antitrust, defamation and tort claims, Southcoast's motion to dismiss should be denied.

The complaint adequately alleges that, in order to maintain its monopoly in violation of federal and state antitrust law, Southcoast filed a sham lawsuit in state court against Steward and DPH. That lawsuit was objectively baseless because no reasonable litigant could have realistically expected to prevail when it lacked standing, could not establish any actual controversy, improperly sought injunctive relief, and made meritless challenges to DPH's implementation of its hospital licensing scheme. The complaint further alleges that, in order to keep Steward out of the market, Southcoast defamed Steward, falsely claiming that Steward tried to circumvent health care regulations.

In addition, the complaint adequately alleges common law claims for defamation and tortious interference. The alleged defamatory statements by Southcoast, which falsely assert facts about Steward, are not entitled to protection as opinion. And the alleged use by Southcoast of improper means, such as sham litigation and defamation, to interfere with the business relations between Steward and various third-parties, is not the sort of fair competition for customers that the law sanctions.

**BACKGROUND**

Steward is a community-based Accountable Care Organization ("ACO") that offers a wide range of health care services throughout Massachusetts and operates numerous hospitals, including Saint Anne's in Fall River. *See* Complaint (DE #1), ¶ 7. Southcoast is a competing

ACO that serves patients in Southeastern Massachusetts and operates three hospitals, including Charlton Memorial in Fall River and St. Luke's in New Bedford. *See id.*, ¶ 8.

Although residents of Southeastern Massachusetts suffer disproportionately high rates of cardiac illness, and the leading cause of hospitalization is for cardiac services and treatments, *see id.*, ¶¶ 19, 22, Charlton Memorial Hospital and St. Luke's Hospital have been, for many years, the only facilities with cardiac catheterization centers in the region. *See id.*, ¶¶ 24, 57-58. As a result, Southcoast has long had a monopoly over these critical services. *See id.*, ¶¶ 59-60.

On May 5, 2008, the Department of Public Health ("DPH") established a limited moratorium on new cardiac catheterization centers within 30 minutes of hospitals that provide primary angioplasty 24 hours per day and 7 days per week, such as Charlton Memorial. *See id.*, ¶ 30 & Ex. A ("Moratorium Circular"). Then, on July 14, 2014, DPH created an exception to that moratorium so that ACOs could apply to transfer cardiac catheterization services within their networks. *See id.* & Ex. B ("ACO Exception Circular").

Thereafter, in order to provide high-quality, affordable care to patients in Southeastern Massachusetts, Steward established a plan to transfer the cardiac catheterization services within its ACO from an existing but under-utilized facility at the Quincy Medical Center to a new and much-needed center at Saint Anne's Hospital. *See id.*, ¶¶ 28-29. On August 21, 2014, pursuant to the ACO Exception Circular, Steward sought permission from DPH to move its services from Quincy to Fall River. *See id.*, ¶¶ 31, 43-44. Steward has projected that, from the outset, Saint Anne's Hospital will perform nearly 400 diagnostic procedures per year, exceeding DPH's minimum volume requirements. *See id.*, ¶ 34 (referring to 105 CMR 130.935).

On October 16, 2015, in an unlawful effort to prevent, or delay, Steward from offering cardiac catheterization services at Saint Anne's Hospital, Southcoast filed a "sham" lawsuit against Steward, DPH and others, seeking a declaratory judgment and injunctive relief. *See id.*, ¶¶ 62-65; *see also* Southcoast's Motion to Dismiss (DE #7), Ex. 1. This sham lawsuit was objectively baseless for several reasons, *see* Part II.A., *infra*, and also subjectively intended to

maintain the monopoly for Southcoast and prevent any competition by Steward—at the expense of providing high-quality, affordable health care and patient choice for the residents of Southeastern Massachusetts, who desperately need cardiac services.  *See id.*, ¶¶ 66-68.

In a further effort to protect its monopoly, Southcoast launched a publicity campaign to defame Steward and its executives.  *See id.*, ¶ 76.  On November 10, 2015, Southcoast's CEO Keith Hovan published a "Guest Opinion" column in *The Herald News*, in which he falsely stated that Steward was seeking to establish a cardiac catheterization center at Saint Anne's Hospital "without Public Health Council approval or a public process."  *Id.*, ¶¶ 77-80 & Ex. D. As Southcoast and Hovan knew, however, Steward had requested approval from DPH, pursuant to the ACO Exception Circular, to transfer its services from Quincy to Fall River, and the Public Health Council ("PHC") played no role in that licensing matter.  *See id.*, ¶¶ 81-82.

In his column, Hovan also falsely stated that John Polanowicz, a Steward executive and former Secretary of Health and Human Services, had "played a key role in creating a special exception" for Steward to the Moratorium Circular.  *See id.*, ¶¶ 90-91, 95.  In reality, Polanowicz played no such role, *see id.*, ¶¶ 92-94, and as Southcoast and Hovan knew, the ACO Exception Circular applied to all ACOs, including Southcoast, *see id.*, ¶ 96.

On May 14, 2015, Southcoast's CFO Linda Bodenmann continued the campaign against Steward.  She was quoted in an article in *The Boston Globe*, in which she falsely stated that, in transferring its cardiac catheterization services, Steward "attempted to circumvent existing regulation."  *See id.*, ¶¶ 98-100 & Ex. E.  As Southcoast and Bodenmann knew, however, Steward complied with the ACO Exception Circular and all licensing regulations.  *See id.*, ¶ 101.

On December 17, 2015, the state court denied Southcoast's motion for a preliminary injunction against Steward and DPH.  *See id.*, ¶¶ 71-73.  The court ruled:

> Upon review of . . . the procedural steps taken by DPH in formulating and adopting the ACO Exception Circular at issue, I find that [Southcoast] has failed to demonstrate a likelihood of success on the merits of its claims . . . at least at this stage of the proceeding, [Steward and DPH] have raised legitimate questions concerning    [Southcoast]'s    standing,    as    well    as    to    the

- 3 -

> appropriateness of this court's intruding into a matter affecting
> public policy that is within the exclusive domain of DPH.

*Southcoast Hosp. Grp., Inc. v. Mass. Dep't of Pub. Health*, No. SUCV2015-03139-D (Mass. Super. Ct. Dec. 17, 2015) ("PI Order") at 3 (attached to Complaint as Exhibit C).  The court also found that Southcoast "failed to demonstrate that any harm it may suffer cannot be repaired or adequately compensated should it ultimately attain success on its claims" and that "the public is better served by denial of a preliminary injunction." *Id.* at 4.

A few days later, on December 21, 2015, Steward filed its complaint in this case.  At that time, DPH had not authorized Steward to transfer its cardiac catheterization services, and Steward had not started to offer those services at Saint Anne's Hospital.  *See* Complaint, ¶ 47.

## ARGUMENT

## I.   STANDARD OF REVIEW

As Southcoast concedes, this Court must accept as true "all well-pleaded facts" in Steward's complaint and "draw[] all reasonable inferences" in Steward's favor.  Mem. at 4 (quoting *United States ex rel. Hutcheson v. Blackstone Med., Inc.*, 647 F.3d 377, 383-84 (1st Cir. 2011)).  To be clear, that principle applies only to Steward's complaint in this case, but not Southcoast's complaint in the state action.  *See id.*, Ex. 1.  Relatedly, this Court may "consider only facts and documents" in Steward's complaint, *Trans-Spec Truck Serv., Inc. v. Caterpillar, Inc.*, 524 F.3d 315, 321 (1st Cir. 2008), but not any additional facts asserted in Southcoast's motion or its exhibits.  *See, e.g.,* Mem. at 2 n.2, 11 & Exs.1, 4.

As Southcoast also notes, an antitrust complaint need only satisfy the notice pleading standard of Fed. R. Civ. P. 8(a), which requires a "short and plain statement of the claim."  *Id.* at 4 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  No heightened pleading standard applies here.  *See Skinder-Strauss Assoc. v. Mass. Continuing Legal Educ., Inc.*, 870 F. Supp. 8, 11 (D. Mass. 1994) (antitrust); *Davidson v. Cao*, 211 F. Supp. 2d 264, 276 (D. Mass. 2002) (defamation).  Moreover, "in antitrust cases, where the proof is largely in the hands of the

B4510511.1

[defendants], dismissals prior to giving the plaintiff ample opportunity for discovery should be granted very sparingly." *Hosp. Bldg. Co. of Trustees v. Rex Hosp.*, 425 U.S. 738, 746 (1976).

## II.  STEWARD HAS ADEQUATELY PLED THAT SOUTHCOAST ENGAGED IN UNLAWFUL EXCLUSIONARY CONDUCT TO MAINTAIN ITS MONOPOLY.

### A.  In Order to Maintain Its Monopoly, Southcoast Has Engaged in Sham Litigation Against Steward.

"There is no question that the pursuit of litigation may, in some circumstances, constitute a form of anti-competitive activity."  *In re Fresh Del Monte Pineapple Antitrust Litig.*, No. 04 MD 1628, 2007 U.S. Dist. LEXIS 1372, at *52-53 (S.D.N.Y. Jan. 9, 2007); *see* Robert H. Bork, THE ANTITRUST PARADOX (1978) at 347 (identifying "[p]redation by abuse of . . . judicial processes" as "an increasingly dangerous threat to competition").  Thus, the *Noerr-Pennington* doctrine, which immunizes legitimate "petitioning" activity from antitrust liability, is "limited by the 'sham' exception," *Shirkorov v. Dunlap, Grubb & Weaver PLLC*, No. 10-12043-GAO, 2012 U.S. Dist. LEXIS 42787, at *57 (D. Mass. Mar. 1, 2012) (citing *Prof. Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 60 (1993)), which "exempts a party's resort to governmental process," such as litigation, "from antitrust immunity when such resort is objectively baseless and intended only to burden a rival with the governmental decision-making process itself," *Davric Maine Corp. v. Rancourt*, 216 F.3d 143, 147 (1st Cir. 2000); *see, e.g.*, *CVD, Inc. v. Raytheon Corp.*, 769 F.2d 842, 851 (1st Cir. 1985) (holding "the assertion of a trade secret claim in bad faith, in an attempt to monopolize, can be a violation of the antitrust laws").

In order "to establish a 'sham,'" a plaintiff must prove that litigation was "objectively baseless" and also "intended to harass a competitor or drive it from the market."  Phillip E. Areeda & Herbert Hovenkamp, ANTITRUST LAW § 205 (3d ed. 2006) at 247; *see* Mem. at 7 (discussing two elements).  Under the first prong of this two-part test, "the suit is immunized" only "[i]f an objective litigant could conclude that the suit is reasonably calculated to elicit a favorable outcome."  *Santander Consumer USA, Inc. v. Walsh*, 762 F. Supp. 2d 217, 236 (D. Mass. 2010) (quoting *Prof. Real Estate Investors, Inc.*, 508 U.S. at 60).

B4510511.1

It is not enough, however, that a party hopes to win its case. "To be sure, the antitrust defendant would always be pleased to obtain a government decision against its rival, but where the defendant has no reasonable expectation of the favorable ruling, the effort to do so can properly be characterized as a sham." Areeda & Hovenkamp, *supra*, § 204 at 223. *Noerr-Pennington* immunity requires "a genuine desire for relief," one that is "honest and reasonable." *In re Burlington Northern, Inc.*, 822 F.2d 518, 529 (8th Cir. 1987) (internal quotation omitted). If "no reasonable litigant could realistically expect to secure favorable relief," a lawsuit will be deemed objectively baseless. *Prof. Real Estate Investors, Inc.*, 508 U.S. at 62.

At the pleading stage, so long as an antitrust complaint alleges facts that "fall within the sham litigation exception to the *Noerr-Pennington* doctrine," it should not be dismissed. *Honeywell Consumer Prods., Inc. v. Windmere Corp.*, 993 F. Supp. 22, 24 (D. Mass. 1998). Because it is a jury question "whether an action is a genuine attempt to influence governmental action," antitrust claims "should not be finally determined without the benefit of further facts." *Energy Conserv., Inc. v. Heliodyne, Inc.*, 698 F.2d 386, 389 (9th Cir. 1982) (reversing dismissal of antitrust claims).

Here, Steward has adequately pled that Southcoast filed a sham lawsuit. The complaint alleges (1) Southcoast's state action was "objectively baseless," Compl., ¶ 66, and (2) Southcoast's subjective motivation was "to stop, or at least delay, any entry by Steward into the market for cardiac catheterization services in Southeastern Massachusetts." *Id.*, ¶ 67. By giving fair notice of these antitrust claims, *see* Compl., Counts I & II, Steward satisfied Fed. R. Civ. P. 8(a), *see Santander Consumer USA, Inc.*, 762 F. Supp. 2d at 237 (denying motion to dismiss). For that reason alone, the motion to dismiss should be denied.

Rather than contest the adequacy of these "sham" allegations, Southcoast disputes several of the specific "reasons" why its state case was "objectively baseless," including (1) Southcoast lacked standing, (2) there was no actual controversy between Southcoast and Steward or DPH, (3) Southcoast improperly sought injunctive relief, and (4) Southcoast made meritless challenges

- 6 -

to the ACO Exception Circular.  *See* Compl., ¶ 66(a)-(d).  Although these reasons are not an exhaustive list, they establish no reasonable litigant could have realistically expected to prevail.

### 1.    Lack of Standing

As the complaint alleges, the state action was "objectively baseless" because Southcoast lacked standing.  *See* Compl., ¶ 66(a).  A party who initiates a civil action without standing—or a reasonable belief that it has the right to sue—engages in "sham litigation" and, therefore, is not entitled to antitrust immunity.  *See In re Burlington Northern, Inc.*, 822 F.2d at 530 (holding "a person cannot reasonably claim that his participation in a lawsuit in which he has no standing is a genuine attempt to influence governmental decision-making"); *Landmarks Holding Corp. v. Bermant*, 664 F.2d 891, 896 (2d Cir. 1981) (reversing dismissal of antitrust claims).

"[S]tanding is not measured by the intensity of the litigant's interest or the fervor of his advocacy," *Pratt v. Boston*, 396 Mass. 37, 42 (1985) (internal quotation omitted), and Southcoast concedes that potential economic harm (e.g., lost revenue) from market competition by Steward is "insufficient to confer standing," Mem. at 9 (citing *Everett Town Taxi, Inc. v. Bd. of Alderman of Everett*, 366 Mass. 534, 538 (1974)).  Instead, Southcoast argues it has standing to sue DPH and Steward based on "the so-called 'regulated industries' exception."  Mem. at 9-10 (citing *Indeck Maine Energy, LLC v. Comm'r of Energy Res.*, 454 Mass. 511, 525 (2009)).

"[T]he question of standing in the context of competitive injury turns not simply on *whether* an industry is regulated, but rather on *how* that industry is regulated."  *Indeck Maine Energy, LLC*, 454 Mass. at 524.  "The common thread present in the cases in which standing has been found is regulatory schemes that contemplated some form of *protection of the competitive interests* of the respective plaintiffs."  *Id.* (emphasis added).  Southcoast's problem is that DPH's regulatory scheme—the Moratorium Circular, the ACO Exception Circular and the licensing regulations, 105 CMR 130.900-130.982—serves to benefit patients by improving the quality and availability of care, not to protect health care organizations from economic competition.  *See,*

B4510511.1

*e.g.*, Compl., Ex. A (explaining the Moratorium Circular was part of "the Commonwealth's collaborative efforts to improve care for patients with acute coronary syndromes").

In *Indeck Maine Energy, LLC*, on which Southcoast primarily relies, the Supreme Judicial Court ("SJC") affirmed the dismissal of a lawsuit by renewable energy facilities that participated in a state licensing program, because they lacked standing to sue the Department of Energy Resources ("DOER") for "permitting other facilities to participate in the program, thereby threatening their competitive position." *Id.* at 512. The SJC concluded the regulatory scheme, which included an "ongoing licensing function" for DOER, aimed to expand the energy market and "did not seek to protect and thereby confer standing to sue on existing competitors, thereby *creating* a barrier to entry." *Id.* at 525-26.

> If existing competitors were allowed to challenge another company's application to enter the renewable energy market, it would hinder competition, delay much needed renewable energy projects, and create a disincentive for developers and their investors to construct new generation facilities. In other words, granting the plaintiffs standing in this case would "subvert the very purpose of the [over-all] statutory scheme."

*Id.* at 526 (quoting *Sch. Cmte. of Hudson v. Bd. of Educ.*, 448 Mass. 565, 584 (2007)). The same is true in this case: granting standing to Southcoast would undermine the overall regulatory scheme to provide high-quality, affordable care in local communities through ACOs.

More recently, in *City of Boston Credit Union v. Cotney*, No. SUCV2014-03728-BLS-1, 2015 Mass. Super. LEXIS 10 (Mass. Super. Ct. Feb. 17, 2015), the court dismissed a case that closely resembles Southcoast's state action. City of Boston Credit Union ("CBCU") sued the Commissioner of Banks and Boston Firefighters Credit Union ("BFCU"), alleging the Commissioner violated state banking law by permitting BFCU to expand its membership. BFCU moved to dismiss, arguing CBCU lacked standing, and the court agreed: "The statutory scheme was not designed to protect credit unions from new market entrants and to preserve their existing market share." *Id.* at *15. For the same reason, Southcoast lacks standing to challenge any

- 8 -

decision by DPH to allow Steward to operate a cardiac catheterization center, "even if [Steward] may then be in a position to compete" with Southcoast. *Id.* at *17.

Meanwhile, the much older cases that Southcoast cites are also instructive by way of contrast. *See* Mem. at 9. In *South Shore National Bank v. Board of Bank Incorporation*, 351 Mass. 363 (1966), for example, the SJC held South Shore had standing to sue the Board for allowing Rockland Trust to move an existing branch. Unlike in *Indeck Maine Energy, LLC*, the SJC concluded competition between banks was an area of concern for the statutory scheme: "When considering changes in branch office locations under G.L. c. 172, § 11, the board must take into account the effect such moves will have on competition between banks." *Id.* at 367. Previously, the SJC held, under the banking laws, the Board had the responsibility to "encourage reasonable competition and discourage monopolies" among banks. *Id.* (quoting *Chicopee Co-op Bank v. Bd. of Bank Inc.*, 347 Mass. 744, 752 (1964)). Southcoast has not—and cannot—point to a comparable mandate for DPH to regulate competition between health care organizations.

Put simply, the licensing scheme for cardiac catheterization services does not regulate economic competition, much less protect health care monopolies. Indeed, the language of DPH's regulations belies Southcoast's bald assertion that the scheme "evinces a concern for the protection of competitors." Mem. at 9. "Competition," "competitor" and "compete" do not appear, *even once*, in the Standards for Operation of Hospital-Based Cardiac Services, 105 CMR 130.900. The regulations focus on whether applicants are "responsible and suitable," not how they might compete with existing providers.[1]

The only specific provision in the entire licensing scheme that Southcoast cites in an effort to establish its standing is 105 CMR 130.935, the Minimum Workload Requirements for cardiac catheterization services. *See* Mem. at 10. Sections A and B set minimum caseload

---

[1] In making licensing determinations, DPH considers (1) "[t]he applicant's history of prior compliance with Massachusetts state laws governing health care facility operation," (2) "[t]he applicant's financial capacity to provide hospital care in compliance with state law and 105 CMR 130.000," (3) "[t]he history of criminal conduct of the applicant" and its executives," and (4) "[t]he applicant's history of statutory and regulatory compliance for health care facilities in other jurisdictions," but *nothing about competition*. 105 CMR 130.104(A); *see* 105 CMR 130.130 (listing similar factors, but not competition, as grounds for revoking or refusing to renew hospitals license).

volumes of 300 or 600 procedures per year, depending on whether centers offer only diagnostic services or therapeutic services as well.  They also establish consequences if centers fall below the thresholds.  For example, centers may be required to submit quality reports to DPH and undergo quality assessments by qualified peer review organizations.  These regulations concern the *quality of care* within centers, not the *amount of competition* between them.  *See* Compl., Ex. D (statement by Southcoast's CEO Hovan) (acknowledging volume requirements "promote patient safety and clinical quality").  The Minimum Workload Requirements say nothing about protecting existing centers from competition and take no sides on which, or how many, ACOs should be permitted to offer such services.

A similar argument was considered—and rejected—in *City of Boston Credit Union.*  Like DPH, which considers the "responsibility and suitability" of license applicants, 105 CMR 130.104, the Commissioner of Banks considers whether "the applicant will be financially sound and successful," 2015 Mass. Super. LEXIS 10, at *16.  But even that broad mandate did not render economic competition an "area of concern" for the purpose of standing.

> Obviously, in making his decision the Commissioner may consider whether a particular field is likely to generate enough members to enable the new applicant to succeed in its mission, and the number of credit unions or other types of financial institutions already servicing these members may be a relevant consideration, but there is no mandate in the statute directing the Commissioner to protect the existing market share of other credit unions.

*Id.*  Here, although DPH may consider factors such as patient volumes and the proximity of other facilities, there is "no mandate" in the regulatory scheme that directs DPH to "protect the existing market share" of any particular health care organization, like Southcoast.  *Id.*

Authorizing the state court lawsuit by Southcoast would permit the sort of expansive standing that the SJC refused to sanction in *Enos v. Secretary of Environmental Affairs*, 432 Mass. 132, 138 (2000) (holding property owners lacked standing to sue the Secretary for issuing a compliance certificate for a sewage treatment plant because, "[t]o grant standing based on MEPA's ultimate goal of the protection of the environment would allow suit in almost every

- 10 -

project within MEPA's jurisdiction"). The SJC rejected "a roving entitlement for allegedly aggrieved plaintiffs to seek judicial review of action by . . . an agency that potentially impairs any asserted rights or privileges of the plaintiffs." *Id.* at 141. It recognized, "[t]he net result" of such litigation would be "that much needed public projects," such as licensing new health care services, "which . . . often take several years to wind their way through an administrative process, would be unnecessarily delayed by lawsuits." *Id.* Unfortunately, that is what has happened here. Southcoast's lawsuit frustrated Steward's effort to provide much needed services to patients. Given the decisions in *Indeck Maine Energy, LLC* and *Enos*, no reasonable party could have realistically expected that the SJC would grant standing to bring such a lawsuit.[2]

### 2.    Absence of actual controversy

As the complaint alleges, the state action was objectively baseless because there was no actual controversy between Southcoast and Steward or DPH. *See* Compl., ¶ 66(b); *see Bello v. S. Shore Hosp.*, 384 Mass. 770, 778 (1981) (discussing actual controversy requirement); *Santander Consumer USA Inc.*, 762 F. Supp. 2d at 237 (denying motion to dismiss antitrust claims because a lawsuit against parties over whom court lacked jurisdiction was "sham litigation").

There has never been any actual controversy between Southcoast and Steward concerning Steward's cardiac catheterization center at Saint Anne's Hospital. Southcoast has challenged DPH's "adoption" of the ACO Exception Circular and DPH's "application" of that letter. Mem. at 11. But that controversy is *not between Southcoast and Steward*. Nevertheless, Southcoast sued Steward, which neither adopted nor applied the circular, to harass its competitor and protect its monopoly. Antitrust law prohibits such sham litigation as unlawful exclusionary conduct.

Further, when Southcoast filed its state action, on October 16, 2015, there was no actual controversy between Southcoast and DPH. "In the context of a dispute between an administrative agency and a party, there is no actual controversy in the absence of final agency

---

[2] M.G.L. c. 111, § 25(C)(a), which Southcoast also cites, *see* Mem. at 9-10, is a red herring. The "Determination of Need" process is not relevant in this case, because Steward sought permission from DPH to transfer services to a renovated lab at Saint Anne's Hospital, not a newly constructed space on the campus. *See* Compl., ¶¶ 81-84.

action." *Town of Hingham v. Dep't of Housing & Cmty. Devel.*, 451 Mass. 501, 505 (2008). Because DPH had not yet acted on Steward's request to transfer its cardiac catheterization services to Fall River, Southcoast's state action was premature and improper.

Even now, there is still no actual controversy between Southcoast and DPH. An actual controversy only exists "when a plaintiff asserts that an agency has exceeded its statutory authority in a matter that has caused, or will cause, injury to the plaintiff." *Entergy Nuclear Gen. Co. v. Dep't of Envtl. Protection*, 459 Mass. 319, 325 (2011) (holding actual controversy existed where DEP promulgated regulations for structures within the plaintiff's power plant, the plaintiff challenged the agency's authority, and as a result, "litigation on this question [wa]s inevitable"). The ACO Exception Circular has not caused, and will not cause, any harm to Southcoast. It simply allows ACOs, including Southcoast, to apply to transfer cardiac catheterization services. *See* Compl., ¶ 30. If Steward had not applied to transfer its license, or if DPH had denied that application, there would have been no controversy at all. Unlike the regulations in *Entergy Nuclear Generation Co.*, litigation about the ACO Exception Circular was hardly inevitable.

### 3.     Unavailability of injunctive relief

As the complaint alleges, the state action was objectively baseless in that Southcoast sought injunctive relief—including a preliminary injunction, which the state court denied—even though Southcoast faced no irreparable harm. *See* Compl., ¶ 66(d); *see* PI Order at 3 (finding "[Southcoast] has failed to demonstrate that any harm it may suffer cannot be repaired or adequately compensated should it ultimately attain success on the merits"); *cf. McGinn v. DeSoto, Inc.*, No. 90 C 4481, 1990 U.S. Dist. LEXIS 14318, at *16-17 (N.D. Ill. Oct. 17, 1990) (imposing sanctions on plaintiff who made "frivolous" preliminary injunction motion and failed to "provide[] the court with a basis for finding irreparable harm or inadequate remedy at law").

Southcoast tries to dodge this issue, *see* Mem. at 8 n.10, but its "brief comment" fails to identify any irreparable harm that might have warranted injunctive relief against Steward. "Economic loss alone does not usually rise to the level of irreparable harm which a party must

- 12 -

establish to obtain a preliminary injunction." *Hull Mun. Lighting Plant v. Mass. Mun. Wholesale Elec. Co*., 399 Mass. 640, 643 (1987).  A party that loses money due to a legal wrong may seek damages but, generally speaking, not equitable relief.  *See Packaging Indus. Grp. v. Cheney*, 380 Mass. 609, 621 (1980).  As the state court recognized, Southcoast faces only potential economic loss due to market competition by Steward.  *See* PI Order at 4.  Accordingly, Southcoast could not have reasonably expected to obtain injunctive relief, particularly against Steward.

### 4.      Lack of substantive merit

At bottom, the state action is objectively baseless because it lacks any substantive merit. *See id.* (finding Southcoast "failed to demonstrate a likelihood of prevailing on the merits"). Southcoast contends the circular is invalid because it "changed existing regulations regarding the licensing of cardiac catheterization services," and DPH did not "comply with the public hearing and notice provisions" of the Massachusetts Administrative Procedures Act ("MAPA").  Mem. at 12-15.  But whether or not the ACO Exception Circular is valid, the lawsuit by Southcoast is still "objectively baseless."

Southcoast's attack on the ACO Exception Circular fails.  It is true that, under state law, the "adoption, amendment or repeal of any regulation" requires either notice and an opportunity to comment or a public hearing.  M.G.L. c. 30A,  §§ 2-3.  When DPH issued the ACO Exception Circular, however, it did not adopt, amend or repeal any licensing *regulation*.  DPH did not establish a new regulatory "pathway," and the ACO Exception Circular does not permit DPH to "approve a cardiac catheterization service while bypassing [existing] requirements."  Mem. at 13-14 (citing 105 CMR 130.000-130.982).  Although the ACO Exception Circular modified the Moratorium Circular, DPH left in place all of the requirements and processes for reviewing applications and issuing licenses.

Moreover, "it is well-established that process or procedure manuals and information bulletins are to be distinguished from regulations that must be promulgated in accordance with [M.G.L. c.] 30A."  *Cox v. Comm'r of Corr.*, No. 12-P-201, 83 Mass. App. Ct. 1107, at *2 (2013).

- 13 -

In an effort to get around this "well-established" principle, Southcoast cites only *Massachusetts General Hospital v. Rate Setting Commission*, 371 Mass. 705 (1977), in which the SJC held an "information bulletin" about rate-setting procedures was *not* a regulation and, therefore, not subject to formal rule-making requirements.  *Id.* at 712-13.  That case hardly proves a reasonable party could have realistically expected a court to reach the opposite conclusion in this case.

On their face, the circular letters are not full-blown regulations, but brief notices to regulated entities.  The Moratorium Circular summarized how DPH planned to "implement[]" statewide triage criteria for certain cardiac services.  Compl., Ex. A.  Then, the ACO Exception Circular announced "updated policies" concerning the moratorium in "limited circumstances," Compl., Ex. B, as Southcoast concedes, *see* Mem. at 2 (stating "the ACO Exception Circular creates an exception to the moratorium imposed by the Moratorium Circular").  Far from adopting or amending any licensing regulations, DPH simply modified its earlier guidance about the implementation of existing regulations for cardiac centers.  *See Tribbett v. Comm'r of Corr.*, No. 08-P-1021, 2009 Mass. App. Unpub. LEXIS 875, at *7 (June 26, 2009) (agency announcements that "merely flesh[] out existing regulations" or "serve[] as a . . . blueprint" for applying them are not subject to MAPA).  Southcoast does not cite any case that holds such administrative activity is subject to formal rule-making requirements.  Therefore, no reasonable litigant could have realistically expected to prove the ACO Exception Circular is invalid.

Regardless, Southcoast's criticism of the ACO Exception Circular would also apply to the Moratorium Circular.  If the ACO Exception Circular (allowing Steward to open its cardiac catheterization center at Saint Anne's Hospital) is invalid, so too is the Moratorium Circular (prohibiting Steward from providing those services at Saint Anne's Hospital in the first place).  In such a world, Steward would be free to operate its planned center, and there would be no moratorium to stop Steward (or give Southcoast any basis to sue about it).  Because either both circular letters are valid or both are invalid, Southcoast's state action is objectively baseless.  In other words, even if Southcoast were to win this point, it would still lose its case.

- 14 -

B4510511.1

**B.      In Order to Prevent Competition, Southcoast Has Also Defamed Steward.**

Southcoast tries to avoid antitrust liability for its defamatory statements by characterizing them as commercial disparagement.  *See* Mem. at 16.  That gambit confuses the relevant legal concepts and ignores the content of Southcoast's statements, which impugn Steward's reputation as a health care organization.   Southcoast also asserts its defamatory statements were "incidental" to its state action and, thus, immune from liability.  *Id.* at 15-16.  That argument, which fares no better, mischaracterizes the cited cases and the *Noerr-Pennington* doctrine.

"[A]nti-competitive conduct" under the Sherman Act includes "making false statements about a rival to potential investors and customers."  *W. Penn Allegheny Health Sys. v. UPMC*, 627 F.3d 85, 109 (3d Cir. 2010) (reversing in part dismissal of antitrust claims).  "Defamation, which plainly is not competition on the merits, can give rise to antitrust liability, especially when it is combined with other anticompetitive acts."  *Id.* at 109 n.14; *see Int'l Travel Arrangers, Inc. v. Western Airlines, Inc.*, 623 F.2d 1255, 1278 (8th Cir. 1980) (upholding treble damages award).

"A communication is defamatory if it discredits the plaintiff in the minds of any considerable and respectable segment in the community."  *Picker Int'l, Inc. v. Leavitt*, 865 F. Supp. 951, 964 (D. Mass. 1994) (quoting *Draghetti v. Chmielewski*, 416 Mass. 808, 812 n.4 (1994) (internal quotations omitted)).  Thus, statements about "a rival's services or product" are "not considered libelous unless [they] 'impute[] to the corporation fraud, deceit, dishonesty, or reprehensible conduct.'"  *Id.* (quoting *U.S. Healthcare, Inc. v. Blue Cross of Greater Phila.*, 898 F.2d 914, 923 (3d Cir. 1990)).  In *Picker*, an antitrust case, this Court found that, because the defendant had only criticized the plaintiff's services (not its reputation), the defendant committed "commercial disparagement" rather than "defamation."  *Id.*; *see HipSaver, Inc. v. Kiel*, 464 Mass. 517, 524 n.7 (2013) (distinguishing defamation and disparagement).

Here, however, the complaint clearly alleges that Southcoast defamed Steward, because the statements at issue tended to "discredit" Steward itself, as a trustworthy, ethical and law-abiding health care provider.  *See* Compl., ¶¶ 77-102.  The statements did not relate to the quality of services that Steward will provide at Saint Anne's Hospital (or provides at any other facility).

- 15 -

Instead, they falsely suggested Steward engaged in reprehensible conduct in trying to open that center in the first place.  *See U.S. Healthcare, Inc.*, 898 F.2d at 926 (holding advertisements by Blue Cross were "capable of defamatory meaning" because they "[went] beyond the comparative quality of HMO health care to suggest reprehensible conduct by U.S. Healthcare").  Thus, these statements were defamatory, and they cannot be excused as commercial disparagement.[3]

Even if the *Noerr-Pennington* doctrine applied to Southcoast's state action, immunity would not extend to Southcoast's defamatory statements in the media.  In the judicial context, *Noerr-Pennington* immunity covers only litigation activities, not general publicity campaigns. *See, e.g.*, *Freeman v. Lasky, Haas & Cohler, PC*, 410 F.3d 1180, 1184 (9th Cir. 2005) (cited by Mem. at 15) (holding "discovery" and "settlement talks" were "incidental" to legitimate litigation).  Publicity campaigns may be protected only to the extent that they attempt to influence legislative or executive action.  *See, e.g.*, *Mercatus Grp., LLC v. Lake Forest Hosp.*, 641 F.3d 834, 848-49 (7th Cir. 2011) (also cited by Mem. at 15) (holding publicity campaign was incidental to lobbying local zoning board).  Southcoast has cited no case that immunized a publicity campaign under the *Noerr-Pennington* doctrine as incidental to a judicial proceeding.

A newspaper column in Fall River is not "incidental" to a civil action in Boston.  It would be highly unethical (and possibly illegal) for Southcoast to use the media to influence the court or potential jurors.  *See* Mem. at 15 (discussing immunity for a "public relations campaign to influence government action").  And there was no legal need for Southcoast to explain in the press why it sued DPH and Steward.  While the defamatory statements at issue may have related to the state action, they were not "incidental" to it and, thus, do not merit antitrust immunity.

---

[3] Steward has adequately pled that the alleged defamation caused antitrust injury.  *See* Compl., ¶¶ 108-10, 116-19. Moreover, the presumption that false advertising has a *de minimis* effect on competition applies only to commercial disparagement, not defamation.  *See* Mem. at 2, 16.  In suggesting otherwise, Southcoast selectively quoted *Innovation Ventures, LLC v. N.V.E., Inc.*, 694 F.3d 723 (6th Cir. 2012), by omitting the italicized words from the following sentence:  "Isolated business torts, such as falsely disparaging *another's product*, do not typically rise to the level of a Section 2 violation unless there is a harm to competition itself."  *Id.* at 741 (emphasis added).

III.   **STEWARD HAS ADEQUATELY PLED THAT SOUTHCOAST MADE DEFAMATORY STATEMENTS OF FACT.**

Defamation claims are subject to the liberal pleading requirements of Rule 8(a), not the heightened requirements of Rule 9(b).  *See Joyce v. The Upper Crust, LLC*, No. 10-12204-DJC, 2012 U.S. Dist. LEXIS 103101, at *21-22 (D. Mass. July 25, 2012) (denying motion to dismiss). A plaintiff is "required only to set forth such allegations in support of its defamation claim that [a]re sufficient to give [the defendant] 'fair notice' of its claim and the grounds upon which it rests." *N. Shore Pharm. Serv., Inc. v. Breslin Assocs. Consulting LLC*, 491 F. Supp. 2d 111, 124 (D. Mass. 2007) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002)).  Thus, "[a] motion to dismiss should be denied if a plaintiff has shown 'a plausible entitlement to relief.'" *Coughlin v. Town of Arlington*, No. 10-10203-MLW, 2011 U.S. Dist. LEXIS 146285, at *13 (D. Mass. Dec. 19, 2011) (quoting *Bell Atl. Corp.*, 550 U.S. at 559).  Here, Steward has given fair notice to Southcoast and shown a plausible entitlement to relief.

Southcoast has accurately recited the four elements of defamation, *see* Mem. at 17-18 (citing *Yohe v. Nugent*, 321 F.3d 35, 40 (1st Cir. 2003)), and it has conceded three of them: Steward has adequately alleged (1) Southcoast made defamatory statements, (2) Southcoast published those statements in the media, and (3) Steward suffered damages.  *See* Compl. ¶¶ 76-102, 121-24.  There is no dispute Southcoast's statements "could damage [Steward]'s reputation in the community," *Shay v. Walters*, 702 F.3d 76, 81 (1st Cir. 2012) (quoting *Ravnikar v. Bogojavlensky*, 438 Mass. 627, 629 (2003)); *see* Compl., ¶ 102, because Southcoast falsely suggested that Steward secretly schemed to open its new center without appropriate oversight or regulatory approval and that Steward manipulated the licensing scheme for its own unfair and exclusive benefit, *see* Compl., ¶¶ 89, 97.  Nevertheless, Southcoast claims its statements were not "false" because they expressed "opinions."  Mem. at 17-18.  That defense misconstrues the law of defamation and ignores the content of the statements.

"A statement couched as an opinion that presents or implies the existence of facts which are capable of being proven true or false can be actionable." *Levinsky's, Inc. v. Wal-Mart Stores*,

127 F.3d 122, 127 (1st Cir. 1997) (holding a critical statement by Wal-Mart about Levinsky's, a local retailer, was actionable because the stores were "locked in hand-to-hand combat for shoppers' dollars" and the statement had "a particularized factual component").  Thus, "the relevant question is not whether the challenged language may be described as an opinion, but whether it reasonably would be understood to declare or imply provable assertions of fact." *Phantom Touring, Inc. v. Affiliated Pubs.*, 953 F.2d 724, 727 (1st Cir. 1992).  Readers of Southcoast's statements about Steward's effort to open a cardiac catheterization center would reasonably understand them to "declare or imply provable assertions of fact." *Id.*

Regarding CEO Hovan's statements, Southcoast contends that, because they appeared in a "'Guest opinion' column," no reader could "reasonably understand them to be statements of fact, rather than opinion."  Mem. at 18.  The First Circuit has flatly rejected that contention as a "gross oversimplification" of defamation law.  *Garrett v. Tandy Corp.*, 295 F.3d 94, 103 (1st Cir. 2002) (reversing dismissal of defamation claims).  The law does not allow a person to commit defamation with impunity, under the guise of "opinion," in an op-ed piece.  In fact, the Supreme Court's landmark decision in *Milkovich v. Lorain Journal Co.*, 497 U.S. 1 (1990), which rejected "an artificial dichotomy between 'opinion' and fact," arose from defamatory statements in an opinion column.  *Id.* at 19.  Even the cases which Southcoast cites make clear "the appearance of [a] column on the op-ed page, without more, is not at all dispositive" of whether statements constitute defamation.  *Aldoupolis v. Globe Newspaper Co.*, 398 Mass. 731, 735 (1986).[4]

Moreover, Hovan wrote (falsely) that Steward sought to open its new center "without Public Health Council approval or a public process."  Compl., Ex. D.  That statement asserted facts.  Either PHC approval was required (as Southcoast falsely implied), or not.  And either Steward engaged in a public process (as Southcoast falsely denied), or not.  Hovan also wrote (falsely) that Steward executive John Polanowicz, "played a key role in creating a special

---

[4] Even if Southcoast's statements were not "unambiguously" assertions of fact—and, thus, clearly actionable as defamation—their supposed status as protected opinion would present a jury question, as Southcoast concedes. Mem. at 18 (quoting *Scholz v. Delp*, 473 Mass. 242, 250 (2015) (internal quotations omitted)).

exception" to the Moratorium Circular.  *Id.*  That statement, too, could be proven true or false.

For example, evidence that Polanowicz recused himself from decisions about Steward, or that

the "special exception" applied to all ACOs, would tend to disprove the statement.

Regarding CFO Bodenmann's statements, Southcoast offers a similar excuse, noting they

were framed as "concerns."  Mem. at 19.  Yet qualifying assertions of fact as expressions of

"concern" does not give one license to defame.  *See Milkovich*, 497 U.S. at 19 (holding one

cannot escape liability for accusations of [defamation] simply by using, explicitly or implicitly,

the words 'I think.'"); *Garrett*, 295 F.3d at 104 (holding "preface such as 'I suspect' or 'I

believe' or 'I think' [is] non-dispositive").[5]  Bodenmann expressed "concerns" that Steward

"attempt[ed] to circumvent existing regulations."  Compl., Ex. E.  Her comment did not use

"loose, figurative language that no reasonable person would believe presented facts," *Levinsky's*,

127 F.3d at 128.  To the contrary, she asserted that, in opening its new center, Steward tried to

get around applicable regulations.  Because the asserted fact can be proven true or false—

Steward either tried to circumvent regulations or not—the statement is actionable defamation.

## IV.   STEWARD HAS ADEQUATELY PLED THAT SOUTHCOAST TORTIOUSLY INTERFERED WITH BUSINESS RELATIONSHIPS.

Southcoast argues that because Steward has not identified in its complaint each and every

third-party with whom Steward had a business relationship and with which Southcoast

interfered, Steward has not adequately pled tortious interference.  *See* Mem. at 10.  Such

specificity is not required, however.

The cases that Southcoast cites do not suggest otherwise.  In *Boxcar Media LLC v.

RedneckJunk LLC*, 345 F. Supp. 2d 76 (D. Mass. 2004), the plaintiffs "offer[ed] no supporting

allegations of fact" for their tortious interference claim and failed to plead *any* of the elements.

That is not this case:  Steward has adequately detailed Southcoast's wrongful conduct.  *See, e.g.*,

---

[5] On this point, Southcoast cites *Martin v. Lefkowitz*, No. 93-7454, 1994 Mass. Super. LEXIS 37 (Mass. Super. Ct. Aug. 3, 1994), *see* Mem. at 19, but the Appeals Court summarily reversed that decision and remanded the case for further proceedings, *see Martin v. Lefkowitz*, No. 94-P-1944, 40 Mass. App. Ct. 1113 (1996) (Rule 1:28 Order).

Compl., ¶¶ 65-67, 76, 102, 127.  Further, in *Moving and Storage, Inc. v. Panayotov*, No. 12-12262, 2014 U.S. Dist. LEXIS 31546 (D. Mass. Mar. 12, 2014), the plaintiffs vaguely alleged interference with potential customers, a group that was "not at all defined but could include any individual who may need moving services in the future."  *Id.* at *9.  There, the court distinguished *Guest-Tek Interactive Entertainment, Inc. v. Pullen*, 731 F. Supp. 2d 80 (D. Mass. 2010), in which a complaint that did not "denominate by name specific customers or relations" was, nevertheless, found to be adequate, because it was "more specific than allegations simply of interference with the employment market at large."  *Id.* at 88; *see also Encompass Ins. Co. of Mass. v. Giampa*, 522 F. Supp. 2d 300, 315 (D. Mass. 2007) (holding allegation of interference with "patients, prospective patients and other insurers" was sufficient for notice pleading).  By specifying that Southcoast interfered with "physicians, patients and insurers," Compl., ¶ 126, Steward has given fair notice of its tortious interference claim.

Moreover, on a motion to dismiss, Steward is entitled to all reasonable inferences, *see Brandt v. Advance Cell Tech., Inc*., 349 F. Supp. 2d 54, 57 (D. Mass. 2003), including that Southcoast, by reason of its monopoly in the regional market for cardiac catheterization services, is familiar with physicians, patients, and insurers in that market, and their existing or potential relationships with Steward, *see Guest-Tek Interactive Entmt., Inc.*, 731 F. Supp. 2d at 87.

Southcoast also tries to minimize its tortious interference as a "general effort[] to compete for prospective customers."  Mem. at 20.  That argument ignores the allegations that Southcoast also interfered with "physicians [] and insurers" by "engaging in sham litigation" and "defaming Steward."  Compl., ¶¶ 126-127.  Such tactics, which constitute "improper means," *G.S. Enters., Inc. v. Falmouth Marine, Inc*., 410 Mass. 262, 273 (1991), relate not only to "prospective customers," but also to Steward's existing and potential business partners.

<u>CONCLUSION</u>

For the foregoing reasons, Plaintiff Steward Health Care System LLC respectfully requests that the Court deny the motion to dismiss by Defendant Southcoast Health System, Inc.

- 20 -

B4510511.1

Respectfully submitted,

STEWARD HEALTH CARE SYSTEM LLC

By its attorneys,

/s/ Daniel N. Marx
Daniel N. Marx (BBO#674523)
Kevin C. Conroy (BBO#644894)
Jeremy W. Meisinger (BBO#688283)
FOLEY HOAG LLP
155 Seaport Boulevard
Boston, MA  02210
Tel: (617) 832-1000
Fax: (617) 832-7000
dmarx@foleyhoag.com

Dated: February 8, 2016

## CERTIFICATE OF SERVICE

I, Daniel N. Marx, certify that on this 8th day of February, 2016, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system.

/s/ Daniel N. Marx
Daniel N. Marx
*Counsel for Steward Health Care System LLC*

B4510511.1