UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

———————————————————
                                        )
STEWARD HEALTH CARE SYSTEM   )
LLC,                                    )
                                        )
              Plaintiff,                )
                                        )         Civil Action No. 15-14188-MLW
        v.                              )
                                        )
SOUTHCOAST HEALTH SYSTEM, INC., )
                                        )
              Defendant,                )
———————————————————  )

### REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION TO DISMISS

[Dkt. No. 7]

September 2, 2016

Boal, M.J.

       Plaintiff Steward Health Care System LLC ("Steward") brings this action against

defendant Southcoast Health Systems, Inc. ("Southcoast") alleging federal and state antitrust

claims as well as tort claims.  Dkt. No. 1.  Steward alleges, inter alia, that Southcoast filed a

"sham" lawsuit in state court and publicly defamed Steward in order to maintain its monopoly

over cardiac catheterization services in Southeastern Massachusetts.  Id. ¶ 5.  Southcoast has

moved to dismiss the Complaint pursuant to Rule 12(b)(6) of the Federal Rules of Civil

Procedure.  Dkt. No. 7.  For the reasons discussed below, this Court recommends that the District

Court dismiss the antitrust claims.  Because it recommends dismissal of the only federal claim,

this Court further recommends that the District Court decline to exercise supplemental

jurisdiction. However, if the District Court decides to exercise supplemental jurisdiction over

Steward's state law claims, the Court recommends that the District Court deny Defendant's

motion to dismiss as it relates to the defamation claim, and grant the motion as it relates to the tortious interference with advantageous business relationships claim.[1]

## I.       FACTUAL AND PROCEDURAL BACKGROUND[2]

Steward is a community-based Accountable Care Organization ("ACO") that offers a wide range of health care services throughout Massachusetts and operates numerous hospitals, including Saint Anne's Hospital in Fall River.  Complaint ("Compl.") ¶ 7.  Southcoast, also an ACO, serves patients in Southeastern Massachusetts and operates three hospitals, including Charlton Memorial Hospital in Fall River and St. Luke's Hospital in New Bedford.  Id. ¶ 8. Steward alleges that in Southeastern Massachusetts, which includes the greater Fall River and New Bedford areas, the incidence of cardiac illness is nearly twice that of Massachusetts as a whole.  Id. ¶¶ 19-20.  Steward further states that cardiac catheterization is a critical component of providing comprehensive cardiac care.[3]  Id. ¶ 23.  At the time that the complaint was filed, there were only two facilities, Charlton Memorial and St. Luke's, which offered cardiac catheterization services in Southeastern Massachusetts.  Id. ¶¶ 24, 57-59.  Accordingly, Steward claimed that in this region, Southcoast—which owns and operates both hospitals—had a monopoly over these critical services, including cardiac diagnostic testing.  Id. ¶¶ 48, 54-60.

---

[1] On March 1, 2016, the District Court referred this case to the undersigned for full pretrial proceedings and for a report and recommendation on any dispositive motions.  Dkt. No. 13.

[2] Because this case is presently before the Court on a motion to dismiss, the Court sets forth the facts taking as true all well-pleaded allegations in the complaint and drawing all reasonable inferences in Steward's favor.  See Morales-Tañon v. Puerto Rico Electric Power Authority, 524 F.3d 15, 17 (1st Cir. 2008).

[3] Cardiac catheterization is an out-patient procedure in which a physician inserts a catheter through a major blood vessel into the heart to perform diagnostic tests and/or provide therapeutic treatments.  Id. ¶ 23.

### A.      Steward's Efforts To Open A New Cardiac Center

On May 5, 2008, the Massachusetts Department of Public Health ("DPH") established a limited moratorium on new cardiac catheterization centers within 30 minutes travel time (via emergency ambulance) of certain hospitals, including Charlton Memorial.  Id. ¶ 30; Compl., Ex. A ("Moratorium Circular") at 4.  On July 14, 2014, the DPH created an exception to the moratorium and allowed ACOs to transfer cardiac catheterization services within their networks.  Id. ¶ 30; Compl., Ex. B ("ACO Exception Circular") at 3-4.[4]  On August 21, 2014, pursuant to the ACO Exception Circular, Steward sought approval to transfer its cardiac catheterization service license within its ACO from Quincy Medical Center to Saint Anne's.  Compl. ¶¶ 31-32.  On January 20, 2015, after Governor Baker's election, DPH suspended the ACO Exception Circular, and, after conducting a thorough review, reinstated it on April 28, 2015.  Id. ¶¶ 38-39.  Thereafter, DPH approved Steward's plan to renovate the vascular lab at Saint Anne's.  Id. ¶ 43.[5]

### B.      The State Court Action

On October 16, 2015, Southcoast sued Steward, DPH, and others in Massachusetts state court.  See Dkt. No. 7, Ex. 1 at 2-29 ("State Court Complaint"); see Southcoast Hosp. Grp., Inc. v. Mass. Dep't of Pub. Health, SUCV2015-03139-D, Dkt. No. 1 (Mass. Super. Ct.) (the "State Court Action").  Among other things, Southcoast sought declaratory relief as well as a preliminary injunction preventing Saint Anne's from operating a cardiac catheterization service center.  Compl. ¶¶ 64-65.  Southcoast argued it was entitled to this relief because the DPH

---

[4] When referring to the parties' pleadings and exhibits, the Court cites to the docket (ECF) page numbers rather than the page numbers in the original documents.

[5] As of the date of the filing of the complaint, Steward had not yet started to offer diagnostic services at its proposed cardiac catheterization center at Saint Anne's, but on January 11, 2016, DPH approved Steward's request to transfer its license to Saint Anne's.  Id. ¶ 47; Dkt. No. 7 at 5; Dkt. No. 17-1 at 16.

adopted the ACO Exception Circular in violation of the Massachusetts Administrative Procedures Act ("APA") and, even if the ACO Exception Circular did not violate the APA, Steward did not qualify under its terms to receive a license to operate a cardiac catheterization center at Saint Anne's because it no longer held a license to transfer.  Dkt. No. 7, Ex. 1 at ¶ 7.

On December 17, 2015, the state court denied Southcoast's motion for preliminary injunctive relief because it failed to demonstrate a likelihood of success on the merits of its claims.  Compl., Ex. C (Memorandum of Decision on Motion for Preliminary Injunction (the "PI Order")) at 4.  In doing so, the court found there were legitimate questions regarding "the appropriateness of th[e] court's intruding into a matter affecting public policy that is within the exclusive domain of DPH."  Id.  The court also determined that the public was better served by a denial of the preliminary injunction.  Id. at 5.  On March 14, 2016, the state court dismissed all claims against Steward without prejudice.[6]  Dkt. No. 17-1 (Memorandum of Decision and Order on Steward Defendants' Motion to Dismiss (the "MTD Order")).

**C.    Southcoast's Alleged Defamatory Publicity Campaign**

Steward also alleges that Southcoast launched a publicity campaign to defame Steward and its executives in order to protect Southcoast's monopoly.  Compl. ¶ 76.  In support of this allegation, Steward claims that on November 10, 2015, Southcoast's Chief Executive Officer Keith Hovan published a "Guest Opinion" column in the Herald News which contained numerous defamatory and false statements, including that Steward had sought to establish a cardiac catheterization center "without Public Health Council approval or a public process."  Id. ¶¶ 77-80; Compl., Ex. D.  Steward also alleges that on May 14, 2015, Southcoast's Chief Financial Officer, Linda Bodenmann, also made false statements when she was quoted in a

_____

[6] The action remains pending against the state government defendants.  Dkt. No. 24 at 2.

Boston Globe article stating that Steward attempted to circumvent existing regulations.  Id. ¶¶
98-99; Compl., Ex. E at 3.  Accordingly, Steward alleges that Southcoast has harmed Steward's
reputation as a health care system that complies with applicable laws and regulations.  Id. ¶¶ 97,
102.

### D.    Procedural Background

On December 21, 2015, Steward filed the present action.  Dkt. No. 1.  Southcoast moved
to dismiss Steward's claims on January 25, 2016.  Dkt. No. 7.  Steward opposed the motion on
February 8, 2016.  Dkt. No. 9.  On March 25 and April 5, 2016, Steward and Southcoast
respectively filed supplemental memoranda in support of their positions.  Dkt. Nos. 17, 19.  The
Court heard oral argument on July 27, 2016.  On August 3, 2016, Steward filed a supplemental
opposition.  Dkt. No. 30.

## III.   STANDARD OF REVIEW

### A.    Rule 12(b)(6)

"To survive a motion to dismiss, a complaint must contain sufficient factual matter,
accepted as true, to 'state a claim to relief that is plausible on its face.'"  Ashcroft v. Iqbal, 556
U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  "A
claim has facial plausibility when the plaintiff pleads factual content that allows the court to
draw the reasonable inference that the defendant is liable for the misconduct alleged."  Id.  "The
plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer
possibility that a defendant has acted unlawfully."  Id.

The Court must accept all factual allegations in the complaint as true and draw all
reasonable inferences in the plaintiff's favor.  Decotiis v. Whittemore, 635 F.3d 22, 28–29 (1st
Cir. 2011) (citation omitted).  While the court must accept as true all of the factual allegations

contained in the complaint, that doctrine is not applicable to legal conclusions.  Iqbal, 556 U.S. at 678.  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  Id.; see also Sanchez v. Pereira-Castillo, 590 F.3d 31, 48 (1st Cir. 2009) ("In other words, a plaintiff must offer 'more than an unadorned, the-defendant-unlawfully-harmed-me accusation,' in order to claim a 'plausible entitlement to relief.'") (citations omitted).  Accordingly, a complaint does not state a claim for relief where the well-pleaded facts fail to warrant an inference of any more than the mere possibility of liability. Iqbal, 556 U.S. at 679.

When deciding a motion to dismiss in the context of an antitrust action, a court applies no special pleading requirements.  In re Carbon Black Antitrust Litig., C.A. No. 03-10191-DPW, 2005 WL 102966, *5 (D. Mass. Jan. 18, 2005).  However, a court must balance a number of competing interests unique to antitrust litigation.  On the one side, "the costs of modern federal antitrust litigation and the increasing caseload of the federal courts counsel against sending the parties into discovery when there is no reasonable likelihood that the plaintiffs can construct a claim from the events related in the complaint."  Id. (quoting Car Carriers, Inc. v. Ford Motor Co., 745 F.2d 1101, 1106 (7th Cir. 1984)).  On the other side, where the proof is largely in the hands of the alleged conspirators, dismissals prior to giving the plaintiff ample opportunity for discovery should be granted sparingly.  Hosp. Bldg. Co. v. Trustees of Rex. Hosp., 425 U.S. 738, 746 (1976) (internal citations omitted); see also In re Carbon Black Antitrust Litig., 2005 WL 102966 at *5.

### B.    Scope Of The Record

In their pleadings, the parties rely upon various documents outside the four corners of the complaint.  See Compl., Exs. A-E; Dkt. No. 7, Exs. 1-4.  "If, on a motion under Rule 12(b)(6) or

12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56."  Fed. R. Civ. P. 12(d).  However, exhibits attached to the complaint are properly considered part of the pleading for all purposes, including Rule 12(b)(6).  Trans-Spec Truck Serv., Inc. v. Caterpillar Inc., 524 F.3d 315, 321 (1st Cir. 2008) (citing Fed. R. Civ. P. 10(c)).

In addition, "under certain 'narrow exceptions,' some extrinsic documents may be considered without converting a motion to dismiss into a motion for summary judgment." Freeman v. Town of Hudson, 714 F.3d 29, 36 (1st Cir. 2013) (citing Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993)).  "These exceptions include documents the authenticity of which are not disputed by the parties; official public records; documents central to plaintiffs' claim; and documents sufficiently referred to in the complaint."  Id. (internal quotations, modifications, and citations omitted).  Accordingly, if "a complaint's factual allegations are expressly linked to— and admittedly dependent upon—a document (the authenticity of which is not challenged), that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6)."  Trans-Spec Truck Serv, 524 F.3d at 321 (quoting Beddall v. State St. Bank & Trust Co., 137 F.3d 12, 16-17 (1st Cir. 1998)).

With respect to official public records, the First Circuit has held that prior state court adjudications may be considered and are susceptible to judicial notice.  See Freeman, 714 F.3d at 37; see also Giragosian v. Ryan, 547 F.3d 59, 66 (1st Cir. 2008).  Federal courts may take judicial notice of proceedings in other courts if those proceedings have relevance to the matters at hand.  Martin v. Mead Johnson Nutrition Co., C.A. No. 09-11609, 2010 WL 3928710, at *2 (D. Mass. Sept. 13, 2010) report and recommendation adopted in part, rejected in part on other grounds, C.A. No. 09-11609, 2010 WL 3928707 (D. Mass. Sept. 30, 2010).

Steward has attached the following materials to its complaint: the Moratorium Circular, the ACO Exception Circular, the PI Order, and the articles published in the Herald News and the Boston Globe.  See Compl., Exs. A-E.  Because these exhibits are attached to the complaint, the Court will consider them in deciding the motion to dismiss.

Southcoast also seeks judicial notice of the following State Court Action documents, which it attached as exhibits to its motion to dismiss: the State Court Complaint and its attachments, the docket, and the state defendants' answer.  Dkt. No. 7 at 6, n.3; see Dkt. No. 7, Exs. 1-3.  In addition, both parties refer to and rely upon the March 14, 2016 MTD Order.  Dkt. Nos. 17-1, 19-1.  Finally, Southcoast attaches a January, 2016 press release issued on Saint Anne's website.  Dkt. No. 7 at 5, n.2, Ex. 4.

The Court will consider the docket and pleadings in the state court proceeding.  Indeed, the state court complaint is a core component of Steward's sham litigation charge.  The Court will not consider the January 2016 press release.  Southcoast has not justified the Court's consideration of the press release on a motion to dismiss and the Court declines to do so.

## IV.    DISCUSSION

### A.      The Sherman Act, 15 U.S.C. § 2

To state a violation of Section 2 of the Sherman Act, 15 U.S.C. § 2 ("Section 2"), a plaintiff must show "both that the defendant has monopoly power in a relevant market and that it has maintained or increased that power through anticompetitive conduct."[7]  SMS Sys. Maint.

---

[7] Section 2 provides: "Every person who shall monopolize, or attempt to monopolize, or combine or conspire with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations, shall be deemed guilty of a felony, and, on conviction thereof, shall be punished by fine not exceeding $100,000,000 if a corporation, or, if any other person, $1,000,000, or by imprisonment not exceeding 10 years, or by both said punishments, in the discretion of the court."  15 U.S.C. § 2.

Serv., Inc. v. Digital Equip. Corp., 188 F.3d 11, 15 (1st Cir. 1999).  In other words, although a monopoly power may be obtained through legitimate means, an antitrust problem arises when an improper use of that power, to the detriment of the forces of competition, occurs.  Id. at 25. Thus, to make out a Section 2 claim, a plaintiff must show that the alleged monopolist has engaged in improper exclusionary conduct.  Id.

For purposes of its motion to dismiss only, Southcoast does not dispute that it has an antitrust monopoly as alleged by Steward.  Dkt. No. 7 at 8, n. 5.  With respect to the second prong of its Section 2 claim, Steward alleges that Southcoast engaged in anticompetitive conduct when it filed a "sham" lawsuit in furtherance of its monopoly and to prevent, or at least delay, Steward from opening its proposed cardiac catheterization center at Saint Anne's.  Compl. ¶ 62. Southcoast denies this allegation and relies on the Noerr-Pennington doctrine as a ground for dismissal of Steward's claim.  Dkt. No. 7 at 9.  For the reasons stated herein, this Court finds that the Noerr-Pennington doctrine bars Steward's antitrust claims.

1.    The Noerr-Pennington Doctrine

There is no question that the pursuit of litigation may, in some circumstances, constitute a form of anti-competitive activity.  In re Fresh Del Monte Pineapple, No. 4-1628-RMB, 2007 WL 64189, *16 (S.D.N.Y. Jan. 4, 2007).  However, the Noerr-Pennington doctrine limits the liability-creating consequences of litigation by immunizing a market participant's appeal for government action that might have anti-competitive consequences.  Id. (citing Prof'l Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc., 508 U.S. 49, 56-57 (1993)).  Specifically, the Noerr-Pennington doctrine, which derives from United Mine Workers of Am. v. Pennington, 381 U.S. 657 (1965), and Eastern R.R. Presidents Conference v. Noerr Motor Freight, Inc., 365 U.S. 127 (1961), shields from antitrust liability entities who join together to influence government

action, even if they seek to restrain competition or damage competitors.  Davric Maine Corp. v.

Rancourt, 216 F.3d 143, 147 (1st Cir. 2000) (citations omitted).  The doctrine applies to petitions

before legislatures, administrative agencies, and the courts.  Id. (citations omitted).  It was

originally formulated by the Supreme Court and rests on two separate grounds.  First, it relies on

a statutory interpretation of the Sherman Act that limits the scope of the Act so as to not reach

activity associated with the political process.  Noerr, 365 U.S. at 137-38.  Second, it rests on the

First Amendment right of citizens to petition the government.  Id.

Under the Noerr-Pennington doctrine, a party who files a lawsuit or otherwise petitions

the government for redress is generally immune from antitrust liability unless such litigation or

activity is a "sham."  Prof'l Real Estate Investors, Inc., 508 U.S. at 56-60.  To be a "sham," the

litigation (1) must be "objectively baseless in the sense that no reasonable litigant could

realistically expect success on the merits;" and (2) must "conceal[ ] an attempt to interfere

directly with the business relationships of a competitor."  Id. at 60-61.  "Only if challenged

litigation is objectively meritless may a court examine the litigant's subjective motivation."  Id.

at 60.  The "sham" exception applies only where the litigation was intended to burden a rival

with the process itself, and where that process—as opposed to the outcome of that process—was

used as an anticompetitive weapon.  Davric Maine Corp., 216 F.3d at 147-48.

"The existence of probable cause to institute legal proceedings precludes a finding that an

antitrust defendant has engaged in sham litigation."  See Prof'l Real Estate Investors, Inc., 508

U.S. at 62.  To determine probable cause, a court should decide whether "the defendant lacked

probable cause to institute an unsuccessful civil lawsuit and whether the defendant pressed the

action for an improper, malicious purpose."  Id.  Probable cause to institute civil proceedings

requires "no more than a reasonable belief that there is a chance that a claim may be held valid

upon adjudication."  Id. at 62-63 (citing Hubbard v. Beatty & Hyde, Inc., 343 Mass. 258, 262 (1961)).  That a sham depends on the existence of anticompetitive intent, however, does not transform the sham inquiry into a purely subjective investigation.  Id. at 57, n.4.

      2.   Analysis

      a.  State Court Action

Steward claims that the State Court Action was "objectively baseless" for at least four reasons: (1) Southcoast lacked standing to challenge the DPH's decision to allow catheterization services at Saint Anne's; (2) no actual controversy existed when the lawsuit was filed because Steward had not begun to offer cardiac catheterization services at Saint Anne's; (3) the DPH complied with applicable laws and regulations; and (4) the request for preliminary and permanent injunctive relief was procedurally improper because if it had suffered actual damages, Southcoast could have sought to recover them.  Compl. ¶ 66.

Although the state court dismissed the claims alleged against Steward, the fact that Southcoast was unsuccessful in its underlying litigation does not automatically mean the action was unreasonable or without foundation.  See Prof'l Real Estate Investors, Inc., 508 U.S. at 60, n.5.  Indeed, despite granting Steward's motion to dismiss, the state court disagreed with a number of the legal arguments put forth by Steward.  For example, because the DPH regulations require a 300 minimum annual procedure threshold, the state court found that the regulations presume that a reduction in volume adversely affects the quality of cardiac catheterizations.  Dkt. No. 17-1 at 11.  Southcoast asserted that if St. Anne's was authorized to perform diagnostic catheterizations given its proximity to Charlton (within two miles), the number of procedures performed at St. Anne's would likely fall below the minimum threshold.  Id.  As such, the state court found that Southcoast's alleged injury fell "squarely within the scope of the statutory

concern regarding the regulation of hospitals" and the injury was "inconsistent with the aims and purposes of the entire regulatory scheme."  MTD Order at 11-12.  Accordingly, the state court determined that "Southcoast ha[d] shown sufficient injury within the zone of concern of the applicable statute and DPH regulations to establish standing."  Id. at 12.

In addition, the state court disagreed with Steward's assertion that no actual controversy existed when the lawsuit was filed.  Rather, the state court explained that Southcoast's request for declaratory relief regarding the legality of the license transfer was rendered moot when the DPH amended Saint Anne's license to include cardiac catheterization services effective January 12, 2016.  Id. at 16.  The state court further stated that the administrative action, which was taken over a year after Southcoast filed suit, "may be challenged under the applicable procedure, if any, for review of administrative decisions."  Id.

The state court did rule in Steward's favor on Southcoast's challenge to the adoption and application of the ACO Exception Circular.  However, that ruling alone is not dispositive for this Court's sham litigation analysis.  The state court did not adopt Southcoast's legal theory but this Court's independent review does not find it to be baseless.  The Court further notes that the state court dismissed the counts without prejudice to a separate amended complaint challenging the substance of DPH's actions.  Id. at 16-17.  Nor does this Court find Steward's argument that Southcoast inappropriately sought injunctive relief as a basis, either alone, or in combination with Steward's other arguments, renders the state court action baseless.

After reviewing the parties' arguments and the state court materials, including the state court's MTD Order, the Court finds that Southcoast had a reasonable belief that its claim would be successful and, therefore, there was probable cause for Southcoast to institute legal proceedings.

b. Southcoast's Statements In The Press

Steward also maintains that Southcoast's exclusionary conduct included defamatory statements.  Compl. ¶ 108.  However, "even false advertising would not damage competition and hence be a violation of the Sherman Act unless it was so difficult for the plaintiff to counter that it could potentially exclude competition."  Innovation Ventures, LLC v. N.V.E., Inc., 694 F.3d 723, 741 (6th Cir. 2012).  Therefore, isolated business torts, such as falsely disparaging another's product, do not typically rise to the level of a Section 2 violation unless there is a harm to competition itself.  Id. (citing Conwood Co., L.P. v. U.S. Tobacco Co., 290 F.3d 768, 783 (6th Cir. 2002)).  "There can be no harm to competition, such as the exclusion of competitors, when the victims of false advertising are able to counter it."  Id.  The Sherman Act protects competition, not competitors.  Id. (citing Spectrum Sports, Inc. v. McQuillan, 506 U.S. 447, 458 (1993)).

Without more, Steward's allegations of defamation do not support its claim that the sham exception applies.  The newspaper articles could logically be considered a publicity campaign, which is immune from antitrust liability, even where unethical and deceptive methods are employed.  See Mercatus Grp., LLC v. Lake Forest Hosp., 641 F.3d 834, 849 (7th Cir. 2011). In addition, Steward had the ability to counter the statements.  For example, it was given the opportunity to comment for the Boston Globe article, but declined to do so. Dkt. No. 1-7 at 3. Absent an accompanying coercive enforcement mechanism, even false statements made by a competitor are outside the reach of antitrust laws because, inter alia, the effects of such statements are minimal at best.  Id. at 851-52.  Accordingly, Steward's defamation allegations do not support an antitrust violation.

Accordingly, the Court finds Steward has failed to state a federal antitrust claim and recommends that the District Judge grant the defendant's motion with respect to Count I.

### B.    Massachusetts Antitrust Act, Mass. Gen. Laws. c. 93, § 5

In Count II, Steward asserts a state antitrust claim pursuant to Mass. Gen. Laws. c. 93, § 5 ("Section 5"). Southcoast argues that Count I and II are based on the same alleged facts and exclusionary conduct. Dkt. No. 7 at 20 n.14. Because the statutes at issue in the two counts, are directly comparable, Southcoast argues that if Count I fails to state a claim, so does Count II. Id. Steward does not directly or separately oppose the dismissal of Count II.

Section 5 provides that it is "unlawful for any person or persons to monopolize, or attempt to monopolize or combine or conspire with any other person or persons to monopolize any part of trade or commerce in the commonwealth." Mass. Gen. Laws. c. 93, § 5. The Massachusetts Antitrust Act is to be construed in harmony with judicial interpretations of comparable federal antitrust statutes in so far as practicable. Mass. Gen. Laws c. 93, §1; see also Whitinsville Plaza, Inc. v. Kotseas, 378 Mass. 85, 103 (1979)(referring to Noerr, and stating that absent oppressive or vexatious misuse of legal process, filing suit is not the basis for a state antitrust violation). Section 5 of the Massachusetts Act is directly comparable to section 2 of the Sherman Act. C.R. Bard, Inc. v. Med. Elecs. Corp., 529 F. Supp. 1382, 1391 (D. Mass. 1982). Accordingly, for the reasons outlined above, this Court recommends that the District Judge grant the defendant's motion with respect to Count II.

### C.    Other State Law Claims

Steward has also brought claims for defamation and tortious interference with advantageous business relations. In light of this Court's recommendation that the only federal claim be dismissed, this Court also recommends that the district court decline to exercise its

supplemental jurisdiction over the remaining state law claims.  See Camelio v. American Fed'n, 137 F.3d 666, 672 (1st Cir. 1998) ("Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law.").  Where, as here, the federal claims are being dismissed at an early stage of the litigation, "the balance of competing factors ordinarily weigh strongly in favor of declining jurisdiction over state law claims[.]"  Id.  In the instant case, no party has put forth any reason why this Court should not follow the ordinary rule and decline to exercise jurisdiction over the state law claims.  Accordingly, this Court recommends that the entire complaint be dismissed.

Should the District Court decide to retain jurisdiction, this Court recommends that it deny Southcoast's motion to dismiss the defamation claim, and grant the claim for tortious interference with advantageous business relations.

      1.   Defamation

In Count II, Steward asserts a stand-alone defamation claim based on statements by Southcoast officials in two separate newspaper pieces.  Compl. ¶¶ 120-124.

"Defamation is the publication, either orally or in writing, of a statement concerning the plaintiff which is false and causes damage to the plaintiff."  Yohe v. Nugent, 321 F.3d 35, 39-40 (1st. Cir. 2003) (citing McAvoy v. Shufrin, 401 Mass. 593, 597 (1988)).  To establish a claim of defamation under Massachusetts law, Steward must prove (1) a false and defamatory communication (2) of and concerning the plaintiff which is (3) published or shown to a third party.  Taylor v. Swartwout, 445 F. Supp. 2d 98, 102 (D. Mass. 2006).  Steward must also show that it suffered special damages and must set forth these damages specifically.  Yohe, 321 F.3d at

40 (citation omitted); <u>Alba v. Sampson</u>, 44 Mass. App. Ct. 311, 312 (1998) (proof required of special damages, which consist of economic, as distinguished from general, damages).

"The court is not called upon to determine the ultimate issue of whether the statement is defamatory, but to answer the threshold question of whether the communication is reasonably susceptible of a defamatory meaning." <u>Damon v. Moore</u>, 520 F.3d 98, 103 (1st Cir. 2008) (internal quotation omitted); <u>see also</u> <u>Amrak Prod., Inc. v. Morton</u>, 410 F.3d 69, 72 (1st Cir. 2005) ("[W]hether a communication is reasonably susceptible of a defamatory meaning, is a question of law for the court.") (citation omitted).

A defamatory statement is one that "hold[s] the plaintiff up to contempt, hatred, scorn, or ridicule or tend[s] to impair his standing in the community, at least to his discredit in the minds of a considerable and respectable class in the community." <u>Yohe</u>, 321 F.3d at 40 (citation omitted). Statements of opinion, however, are not defamatory. <u>Id.</u> at 41. Whether a statement constitutes fact or opinion is a question of law for the Court. <u>Lyons v. Globe Newspaper Co.</u>, 415 Mass. 258, 262 (1993). "To determine whether or not a statement is an opinion, a court must examine the statement in its totality and in the context in which it was uttered or published. The court must consider all the words used and must give weight to cautionary terms used by the person publishing the statement." <u>Yohe</u>, 321 F.3d at 41 (internal modifications omitted). The court must also consider all of the circumstances surrounding the statement. <u>Id.</u> However, a statement of opinion nevertheless may be actionable if it communicates a defamatory meaning by implying the existence of undisclosed facts that have no basis in truth. <u>Id.</u> <u>See also</u> <u>Milkovich v. Loarain Journal Co.</u>, 497 U.S. 1, 21 (1990) (rejecting assertion that statement enjoyed First Amendment protection simply because it appeared in an opinion piece). In determining whether a statement constitutes an opinion, the dispositive question is whether the

challenged statement would be understood to declare or imply provable assertions of fact.  See

Garrett v. Tandy Corp., 295 F.3d 94, 103 (1st Cir. 2002).

Steward objects to the following statements, made in the November 10, 2015 Herald

News "Guest Opinion" column written by Southcoast CEO Keith Hovan:

a.   Steward is seeking state approval to spend millions of dollars to establish a
catheterization center at Saint Anne's Hospital in Fall River *without Public
Health Council approval or a public process*.

b.   It was a former Steward hospital president—who was appointed Secretary of
Health and Human Services in 2013, and has since returned to Steward as a
senior executive—who *played a key role* in creating a special exception to
what was otherwise a thoughtful moratorium, endorsed by an expert advisory
committee of an interventional cardiologists and sanctioned by the
Department of Public Health.  Records show that the then-Secretary *was
instrumentally* involved in developing a significant rule change directly
beneficial to Steward—as an accountable care organization with an
underperforming cardiac catheterization service—and has been pursued only
by Steward.

Compl. ¶ 121 (a-b) (emphasis in the original), Exhibit D.

Steward also objects to the following quotation, attributed by the Boston Globe to

Southcoast CFO Linda Bodenmann in or around May 14, 2015: "Southcoast continues to have

significant concerns, dating back to last year, regarding the process surrounding Steward's

attempts to circumvent existing regulation" in connection with its new cardiac catheterization

center at Saint Anne's Hospital.  See Compl. ¶ 121 (c), Exhibit E.

For purposes of its motion to dismiss, Southcoast challenges Steward's defamation claim

only on the basis that the statements are opinions protected by the First Amendment.  Dkt. No. 7

at 20-22.  However, Mr. Hovan's statements are not shielded from a defamation claim simply

because they appear in an opinion piece.  Indeed, the statements regarding Steward's actions to

avoid a public process and the role of a former Steward hospital president imply the existence of

facts that can be proven true or false.  The statements are therefore actionable.  Accordingly, this

Court recommends, should it decide to exercise supplemental jurisdiction, that it deny Southcoast's motion to dismiss this claim.

2.   <u>Tortious Interference With Advantageous Business Relations</u>

As a result of the State Court Action, as well as the allegedly defamatory statements, Steward claims that Southcoast intentionally interfered with business relationships between Steward and various third-parties, including physicians, patients, and insurers, in connection with the proposed cardiac catheterization center at Saint Anne's.  Compl. ¶¶ 125-128.

"To make out a claim for interference with advantageous business relations, the plaintiff must prove that (1) it had a business relationship for economic benefit with a third party, (2) the defendant knew of the relationship, (3) the defendant interfered with the relationship through improper motive or means, and (4) the plaintiff's loss of advantage resulted directly from the defendants' conduct."  <u>Kurker v. Hill</u>, 44 Mass. App. 184, 191 (1985).  Southcoast only challenges the sufficiency of this claim on the basis that Steward has failed to allege interference with a specific business relationship.  Dkt. No. 7 at 22-23.

Where there is not an actual or particular proposed contract or relationship at issue, the courts are split as to the level of specificity required.  On the one hand, courts have construed allegations of interference only with general efforts to compete for prospective customers in the market at large as lacking the requisite specificity.  <u>See</u> <u>Moving and Storage, Inc. v. Panayotov</u>, Civil Action No. 12-12262-GAO, 2014 WL 949830, * 3 (D. Mass. March 12, 2014) (insufficient specificity where manipulation of moving company review website allegedly affected potential customers); <u>Katin v. Nat'l Real Estate Info. Serv.</u>, Civil Action No. 07-10882-DPW, 2009 WL 929554, *8-9 (D. Mass. March 31, 2009) (insufficient specificity where unlicensed real estate settlement services company allegedly took business away from Massachusetts plaintiff); <u>Laser</u>

18

<u>Labs, Inc. v. ETL Testing Labs, Inc.</u>, 29 F. Supp. 2d 21, 23 (D. Mass. 1998) (insufficient specificity where plaintiff alleged relations with unspecified customers in North Carolina because it had distributed advertising flyers in that state).  On the other hand, some courts have found a "probable future relationship" will suffice as long as the plaintiffs "identify the business relations that have been affected . . . as those between the plaintiffs and their 'patients, prospective patients, and other insurers.'" <u>Guest-Tek Interactive Ent. Inc. v. Pullen</u>, 731 F. Supp. 2d 80, 86 (D. Mass. 2010) (citing <u>Encompass Ins. Co. of Mass. v. Giampa</u>, 522 F. Supp. 2d 300, 315 (D. Mass. 2007)).  The issue here is whether the identified relations fall within this range and therefore survive a motion to dismiss.

This Court finds that the allegations are insufficient.  The allegations are more definite here than in the <u>Moving and Storage, Inc.</u>, <u>Katin</u>, and <u>Laser Labs, Inc.</u> cases, in that the potential business relationships pertain to a defined geographic region and service.  Nevertheless the allegations suffer from the same defects noted by the judges in those cases.  As Judge O'Toole explained:

> The plaintiff's definition of "advantageous relations" for these purposes is too expansive.  It appears that the plaintiff's theory is that the existence of a potential market for a company's product is sufficient to create a prospective advantageous relationship with each potential customer in that market.  Massachusetts does not interpret this tort to reach so far.

<u>Laser Labs, Inc.</u>, 29 F. Supp. 2d at 23-24.  And as Judge Woodlock stated:  "[W]here a plaintiff alleges interference only with its general efforts to compete for prospective customers in the market at large, it has not satisfied even the first element of a tortious interference claim – the existence of an advantageous business relationship."  <u>Katin</u>, 2009 WL 929554. at *8.  Steward's allegations here suffer from the same defects.[8]

---

[8]  The Court also notes that, at the time of the filing of the complaint, Steward did not have the license necessary to pursue the business relationships at issue here.  Nevertheless, the Court

Accordingly, this Court finds that Steward has failed to plead a claim for tortious interference with advantageous business relations and therefore recommends that Count IV be dismissed should this Court decide to exercise supplemental jurisdiction.

## V.    RECOMMENDATION

For the reasons stated herein, this Court recommends that the District Judge assigned to this case dismiss Steward's federal and state antitrust claims (Counts I and II).  The Court further recommends that the Court decline to exercise supplemental jurisdiction with respect to the remaining state law claims.  Should the District Court decide to exercise supplemental jurisdiction, this Court recommends that the District Court deny Southcoast's motion to dismiss with respect to the defamation claim (Count III) and grant the motion with respect to the tortious interference with advantageous business relationships claim (Count IV).

## VI.   REVIEW BY DISTRICT JUDGE

The parties are hereby advised that under the provisions of Fed. R. Civ. P. 72(b), any party who objects to these proposed findings and recommendations must file specific written objections thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation.  The written objections must specifically identify the portion of the proposed findings, recommendations, or report to which objection is made, and the basis for such objections.  See Fed. R. Civ. P. 72.  The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Fed. R. Civ. P. 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation.  See Phinney v. Wentworth Douglas Hosp., 199 F.3d 1 (1st Cir. 1999);

---

recognizes that Steward alleges in effect that Southcoast's conduct was intended to preclude and/or delay the issuance of a license.

Sunview Condo. Ass'n v. Flexel Int'l, Ltd., 116 F.3d 962 (1st Cir. 1997); Pagano v. Frank, 983

F.2d 343 (1st Cir.1993).

/s/ Jennifer C. Boal
JENNIFER C. BOAL
United States Magistrate Judge