UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| STEWARD HEALTH CARE SYSTEM LLC,<br><br>Plaintiff,<br><br>v.<br><br>SOUTHCOAST HEALTH SYSTEM, INC.,<br><br>Defendant. | CIVIL ACTION NO. 1:15-cv-14188 |

**DEFENDANT SOUTHCOAST HEALTH SYSTEM, INC.'S
MEMORANDUM IN OPPOSITION TO PLAINFTIFF'S OBJECTIONS TO THE
REPORT AND RECOMMENDATION OF THE MAGISTRATE JUDGE**

SOUTHCOAST HEALTH SYSTEM, INC.

By its attorneys,

Dated:  October 6, 2016

Thomas O. Bean, BBO No. 548072
John W. Van Lonkhuyzen, BBO No. 545278
Rachel Wertheimer, BBO No. 625039
Jeffrey L. Heidt, BBO No. 228960
VERRILL DANA, LLP
One Boston Place, Suite 1600
Boston, Massachusetts  02108
(617) 309-2600
tbean@verrilldana.com
jvanlonkhuyzen@verrilldana.com
rwertheimer_@verrilldana.com
jheidt@verrilldana.com

**INTRODUCTION**

Steward Health Care, LLC's ("Steward") Objections to the Magistrate Judge's *Report and Recommendation on Defendant's Motion to Dismiss* (Doc. 33) (the "Report") merely rehash arguments made to and properly rejected by the Magistrate. They provide no grounds for this Court to reject the Magistrate's well-reasoned Report. Accordingly, this Court should adopt the recommendations of the Report.

In brief, the Magistrate Judge correctly concluded that:

- Steward's claims of monopolization under federal and state antitrust law in Counts I and II fail because, even assuming the truthfulness of the allegations of Steward's Complaint ("Compl."), (a) Southcoast Health System, Inc.'s ("Southcoast") state court action is not "objectively baseless," and therefore does not fit within the "sham" litigation exception to *Noerr-Pennington* antitrust immunity (*id*. at 11-12), and (b) the three statements alleged by Steward to be defamatory do not provide a basis for antitrust liability even if they are defamatory. *Id*. at 13.

- Steward's claim for tortious interference with prospective business relations fails for lack of specificity of the alleged advantageous business relationships. *Id.* at 18-20.

- The Court should not exercise supplemental jurisdiction over any remaining state law claims because the federal claims are being dismissed at an early stage of the litigation. *Id.* at 14-15.

1

Steward's objections to these holdings lack merit.  Accordingly, this Court should adopt the Magistrate Judge's Report and Recommendation, dismiss Counts I, II and IV, and decline to exercise supplemental jurisdiction over any surviving state law claims.

## FACTS ON REVIEW OF THE REPORT AND RECOMMENDATION

The factual and procedural background are accurately set forth in the Report and will not be repeated here.  *See* Report, at 2-5.[1]

## STANDARD OF REVIEW

A District Court reviews a Magistrate Judge's Report and Recommendation on a question of law *de novo*, such that this Court should apply the standards applicable under Federal Rule of Civil Procedure 12(b)(6).  *See Partners Healthcare Sys., Inc. v. Copeland Corp.*, 2016 WL 4467884 (D. Mass. Aug. 22, 2016) (affirming magistrate's report and recommendation on motion to dismiss).  Rule 12(b)(6) principles apply with equal force to antitrust cases – the seminal case *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007), is itself a Sherman Act Section 1 case.  *See also Covad Commc'ns Co. v. Bell Atl. Corp.*, 398 F.3d 666, 676-77 (D.C. Cir. 2005) (affirming Rule 12(b)(6) dismissal of antitrust claim on *Noerr-Pennington* grounds); *DM Research, Inc. v. Coll. of Am. Pathologists*, 170 F.3d 53, 58 (1st Cir. 1999) (affirming dismissal of conclusory Sherman Act complaint for failure to state a claim).  Here, the Magistrate Judge properly applied those standards.[2]

---

[1] Additional facts are set forth in detail in Southcoast's *Memorandum in Support of its Motion to Dismiss the Complaint Pursuant to Rule 12(b)(6)* (Doc. 7), at 1-4.  Certain additional later factual developments regarding the State Court Action are set out in Southcoast's *Status Report* (Doc. 23) and its *Updated Status Report* (Doc. 28).

[2] *See* Report at 6. If anything, the Magistrate was too generous to Steward.  The principle that "where the proof is largely in the hands of the alleged conspirators, dismissals prior to giving the plaintiff ample opportunity for discovery should be granted sparingly," *Hosp. Bldg. Co. v. Trustees of Rex Hosp.*, 425 U.S. 738, 746 (1976) (internal citation and quotation marks omitted), recognized by the Magistrate and quoted in the Report, at 6, applies with less force here, where plaintiff is not entitled to discovery on

2

**ARGUMENT**

I.   **THE REPORT CORRECTLY RECOMMENDS THAT THE FEDERAL AND STATE ANTITRUST CLAIM SHOULD BE DISMISSED BECAUSE OF SOUTHCOAST'S *NOERR-PENNINGTON* IMMUNITY**

The Report recommends that Counts I and II of the Complaint, which seek to allege monopolization claims in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2 and the Massachusetts state law equivalent,[3] be dismissed because the *Noerr-Pennington* doctrine bars Steward's antitrust claims. Report, at 9.

To prove a Section 2 violation, Steward must show not only that Southcoast has "monopoly power in a relevant market," but also that it "maintained or increased that power through anticompetitive conduct." *SMS Sys. Maint. Serv., Inc. v. Digital Equip. Corp.*, 188 F.3d 11, 15 (1st Cir. 1999).[4] Steward alleges that Southcoast engaged in anticompetitive conduct by filing a "sham" lawsuit challenging the state administrative process and by making three isolated statements. Report, at 9, 11, *citing Compl.*, ¶¶ 62, 108. However, as the Report correctly concludes, these actions are protected by the *Noerr-Pennington* doctrine, which provides that "[t]hose who petition government for redress are generally immune from antitrust liability," *Prof. Real Estate Investors, Inc. v. Columbia Pictures Indus., Inc.*, 508 U.S. 49, 56 (1993)

---

the second element of *Noerr-Pennington* immunity, defendant's subjective economic intent, until and unless it has established the first element. *See Profession Real Estate Investors Inc. v. Columbia Pictures Industries, Inc.,* 508 U.S. 49, 65-66 (1993) (*"Prof. R.E. Inv."*). *See infra*, p. 4 n. 5.

[3] Steward's state antitrust claim is based on the same alleged facts and exclusionary conduct as its federal Sherman Act claim. *See* Report, at 14. Steward did not object to the Magistrate Judge's conclusion that the Massachusetts Antitrust Act be construed in harmony with the Sherman Act. Accordingly, the two claims will be addressed together.

[4]  The first element is not at issue here. Southcoast does not dispute, solely for purpose of the Motion, but does not concede, that it has an antitrust monopoly as alleged. The alleged monopoly is not, in any event, illegal, as it is the result of the Moratorium Circular promulgated by DPH and is thus immune from antitrust liability under the state action doctrine. *See, e.g., North Carolina State Bd. of Dental Examiners v. FTC*, 135 S.Ct. 1101, 1109-12 (2015) (explaining state action immunity).

("*Prof. R.E. Inv.*"), and extends both to those who petition administrative agencies and those who resort to the courts, *Cal. Motor Transport Co. v. Trucking Unlimited*, 404 U.S. 508, 510 (1972); *Davric Maine Corp. v. Rancourt*, 216 F.3d 143, 147 (1st Cir. 2000).

There is an exception to *Noerr-Pennington* immunity for so-called "sham" litigation. *See Prof. R.E. Inv.*, 508 U.S. at 56-57; *Davric Maine*, 216 F.3d at 147-48. To establish this "sham litigation" exception, Steward must allege and prove that Southcoast's State Court Action is "objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits." *Prof. R.E. Inv.*, 508 U.S. at 60.[5] The Magistrate Judge correctly concluded that the State Court Action is not objectively baseless. Accordingly, the antitrust claim fails. Report, at 8-14. Steward's Objections provide no reason to overturn this conclusion. Objections, at 11-14.

### A. The Report Correctly Held That Southcoast's State Court Action Is Not Objectively Baseless.

For the State Court Action to be a "sham," Steward must prove that Southcoast did not have "probable cause" to bring it. *Prof. R.E. Inv.*, 508 U.S. at 62; *Davric Maine*, 216 F.3d at 148. Probable cause "'requires no more than a reasonable belief that there is a chance that a claim may be held valid upon adjudication.'" *Davric Maine*, 216 F.3d at 148 (quoting *Prof. R.E. Inv.*, 508 U.S. at 62-63). The question is not whether Southcoast itself subjectively had such a belief, but whether an objectively "reasonable litigant in [Southcoast's] position could realistically expect success on the merits of the challenged lawsuit." *Prof. R.E. Inv.*, 508 U.S. at 63. This requires only a reasonable belief that the litigant has "some chance of winning" the suit. *Id.* at 65. Even a lawsuit that ultimately fails is not a sham if it is "arguably 'warranted by

---

[5] If Steward is able to prove this, it must then prove Southcoast's subjective motivation for bringing the suit. *Prof. R.E. Inv.*, 508 U.S. at 60; *Davric Maine,* 216 F.3d at 148. Steward may take discovery on Southcoast's subjective or economic motivation in bringing the lawsuit only after establishing that the lawsuit is not objectively reasonable. Southcoast's motivation is irrelevant if the suit is objectively reasonable. *Prof. R.E. Inv.*, 508 U.S. at 65-66; *Davric Maine*, 216 F.3d at 148 n. 8.

4

existing law' or at the very least was based on an objectively 'good faith argument for the extension, modification or reversal of existing law.'" *Id.* at 65 (*quoting* Fed. Rule Civ. Proc. 11). That is certainly the case here.

In the State Court Action, Southcoast sought a declaration that the Massachusetts Department of Public Health ("DPH") failed to promulgate the ACO Exception Circular in compliance with the Massachusetts Administrative Procedures Act, G.L. c. 30A, § 1, *et seq*. ("APA"), and that even if lawfully issued, the ACO Exception Circular did not permit Steward to open a cardiac catheterization service at St. Anne's. *See* Doc. 7, Ex. 1 (State Complaint), ¶¶ 1, 7, 85-101. DPH answered Steward's complaint, thereby implying that Southcoast's complaint was *not* baseless.[6] Steward nevertheless alleged four reasons the State Court Action is "objectively baseless" and thus a "sham": that (i) Southcoast lacked standing to bring the State Court Action; (ii) the State Court Action did not raise an "actual controversy"; (iii) Southcoast's challenge to the adoption and application of the ACO Exception Circular lacked merit; and (iv) that Southcoast's requests for injunctive relief were "improper" because if had suffered damages it could have sought to recover them. Report, at 11, citing *Compl.*, ¶ 66. The Magistrate Judge considered each of these reasons and the state court's ruling on the motion to dismiss in the State Court Action (referred to as the "MTD Order" in the Report, at 4), noted that the state court agreed with certain of Southcoast's arguments and disagreed with a number of Steward's arguments, conducted its own independent analysis, and correctly concluded that the State Court Action was not "objectively baseless." Report, at 11-12.

In its Objections, Steward presses only the second and third reasons it had asserted, abandoning its claims that the State Court Action was a sham because Steward lacked standing

---

[6] See Doc. 7, Ex. 2 (docket in State Court Action, item 13, docketing answer by DPH and its commissioner).

and because it sought and failed to get injunctive relief. *See* Objections, at 11-14.  Steward makes three arguments in its Objections towards these two claims: (1) that the Report "focuses" too much (Objections, at 5, 11) on the fact the state court judge disagreed with one of Steward's arguments and dismissed the action *without* prejudice, and does not place enough weight on the fact that the state court judge adopted other of Steward's arguments; (2) that Southcoast's lawsuit not merely lacks merit, but suffers from a "fundamental inconsistency"; and (3) there was no actual case or controversy between Southcoast and Steward when the lawsuit was filed, and that the Report incorrectly concluded that the state court disagreed with Steward's argument that no actual controversy existed when the lawsuit was filed.  Objections, at 11-12, 12-13 & 13-14, respectively.

  Steward's first argument is that the Magistrate focuses too much (Objections, at 5, 11) on the fact the state court judge disagreed with Steward's argument that Southcoast did not have standing and dismissed the action without prejudice, and does not place enough weight on the fact that the state court judge adopted other of Steward's arguments.  This argument, to the extent it is not subsumed in the second, is simply beside the point.  The Magistrate Judge did not engage in any weighing or counting of who won which arguments in her Report.   Because the state court judge ruled that Southcoast did have standing, Steward's original reason that the State Court Action was a sham, because Southcoast lacked standing, failed, *see Davric Maine*, 216 F.3d at 148, and Steward does not now pursue it.  Moreover, the state court's dismissal of the State Complaint *without* prejudice is at, a minimum, an indication that it recognized the potential validity of some of Southcoast's arguments. On the other hand, the argument that the Magistrate Judge should have put more weight on Steward's arguments with which the state court judge

agreed adds nothing to, and is effectively encompassed within, Steward's next two arguments in its Objections.

Steward's second argument, and its first real objection, is that the State Court Action is a sham because it is "fundamentally inconsistent" – as it depends on the assertion that one of the circulars at issue in the State Court Action was properly issued despite a lack of public notice or hearing while the other circular could not be issued without public notice or hearing. Objections, at 12. Steward complains that the Magistrate Judge did not adequately address this fact in finding that the State Court Action was not baseless. *Id.* As a threshold matter, this alleged inconsistency, even if it exists, applies to only one of the counts of the State Court Action. The other count alleges that Steward could not avail itself of the ACO Exception Circular *even if that circular was properly adopted* and therefore cannot suffer from the "inconsistency" Steward identifies.

Moreover, while Southcoast's assertion in the State Court Action that differences between the two circulars were such that one had to be adopted pursuant to the APA while the other did not was ultimately rejected by the state court, the Magistrate Judge properly concluded that Southcoast's assertion was not objectively baseless. Southcoast reasonably alleged that the ACO Exception Circular effectively amended regulations because it allowed for the transfer of a license (something not provided for in the regulations) and the approval of a new cardiac catheterization facility without the applicant establishing that the new facility meets all regulatory requirements whereas the Moratorium Circular attempted no such amendments.[7]

---

[7] In addition, Southcoast has amended its complaint in the State Court Action asserting a refined claim based on DPH's failure to adopt the ACO Exception Circular in accordance with the APA. *See* Southcoast's *Updated Status Report* (Doc. 28), Ex. 1 to Ex. B. Southcoast's amended claim is based on, among other things, well-established law that a freeze in the acceptance of applications (like that instituted by the Moratorium Circular) does not constitute a material change to regulations requiring

Steward's third argument (and second objection) is that the state court action did not assert an actual case or controversy between Southcoast and Steward, and that the Report's finding that the state court held otherwise is incorrect. Objections, at 13-14. As an initial matter, Southcoast does not dispute that it did and does not have a claim for damages against Steward. Steward was named in the original complaint because its interests in its cardiac catheterization lab were directly implicated by Southcoast's administrative action against DPH and Southcoast did not want its motion for a preliminary injunction delayed by Steward's motion to intervene or litigation over whether Steward was an indispensable party to that litigation. Southcoast's decision to name Steward does not render its claims objectively baseless.

Further, the Magistrate Judge correctly found that state court did not adopt Steward's argument that there was no actual controversy. The Superior Court dismissed Count I for failure to state a claim, *not* for lack of an actual controversy (MTD Order, at 15), and Count II because the controversy had become moot during the period between the time Southcoast had filed the complaint and the time the Superior Court rendered its decision, *not* because there was not an actual controversy at the case's inception (*id.*, at 14-15). Further, although the Superior Court dismissed Southcoast's complaint, it did so *without* prejudice to Southcoast bringing a separate or amended complaint challenging the substance of DPH's actions. *Id.*, at 15. Southcoast has since done so. *See* Doc. 28, Ex. 1 to Ex. B.

Because none of Steward's objections establish that the Magistrate Judge erred in concluding that the State Court Action was not a "sham" or "objectively baseless," Steward cannot overcome Southcoast's *Noerr-Pennington* immunity.

---

adoption in accordance with the APA, whereas a change in long-standing policy, like that reflected in the ACO Exception Circular, does.

B.     **The Report Correctly Held That Southcoast's Allegedly Defamatory Statements Do Not Give Rise to Antitrust Liability.**

The Report also correctly concludes that Steward cannot predicate a claim for antitrust liability on the three allegedly defamatory and anticompetitive statements. Report, at 13. At issue are three isolated statements made six months apart—a one-sentence responsive comment contained in a May 14, 2015, *Boston Globe* article about a Massachusetts Public Health Commission public meeting the night before, published five months before the State Court Action was filed; and two statements in a "Guest Opinion" piece in the November 10, 2015, *Herald News,* published shortly after the State Court Action was filed. *See* Report, at 4-5, citing *Compl.*, ¶¶ 76-80, 97-99, 102 & Exs. D & E. The Report correctly recognized that these statements, even if defamatory, are immune from antitrust liability and not proper predicates for an antitrust claim. Report, at 13. The Magistrate Judge properly recognized that the statements could logically be considered part of a publicity campaign; that Steward had the ability to counter the statements; and that there was no accompanying coercive mechanism, and concluded that they did not support antitrust liability. Report at 13.

As a general matter, conduct "incidental" to protected *Noerr-Pennington* petitioning activity is itself immune. *Freeman v. Lasky, Haas & Cohler, PC*, 410 F.3d 1180, 1184 (9th Cir. 2005). Thus, a public relations campaign to influence government action is beyond the reach of the Sherman Act. *Mercatus Grp., LLC v. Lake Forest Hospital,* 641 F.3d 834, 849 (7th Cir. 2011) (citing *Noerr*, 365 U.S. at 140-42). Here, the alleged defamatory statements are incidental to Southcoast's petitioning activity and enjoy antitrust immunity even if the campaign employs unethical or deceptive methods, and even if they cause the other party injury unrelated to the governmental action that is sought. *See Mercatus Grp.*, 641 F.3d at 849 (citing *Allied Tube & Conduit Corp. v. Indian Head, Inc.,* 486 U.S. 492, 499-500 (1988)); *see also Davric Maine,* 216

9

F.3d at 147.  Relying on *Mercatus*, the Magistrate Judge correctly held that the statements did not rise to the level of a Section 2 violation.

Steward argues first that the Magistrate Judge erred because Southcoast was attempting to influence a judicial proceeding, not an administrative proceeding as was the case in *Mercatus.* Objections, at 7-8.  But all of Southcoast statements were made while DPH was considering Steward's application to open a cardiac catheterization lab at St. Anne's.  Indeed, the May statement in the *Boston Globe* was a comment in an article about a public administrative meeting held the night before.  See *Compl.*, Ex. E.  These statements are just as protected as the statements in *Mercatus,* which were made to influence the town's consideration of a new physician center.  *See* 641 F.3d at 837-39.  That Southcoast had commenced the State Court Action by the time the opinion piece was published, and explains that litigation, does change the analysis.

Second, as the Magistrate Judge recognized, statements disparaging a competitor or rival are, as a general matter, "outside the reach of the antitrust laws," even if false.  *Mercatus Group,* 641 F.3d at 851-52.  Such statements are presumed to have a "*de minimis* effect on competition." *Duty Free Americas, Inc. v. Estee Lauder Cos.*, 797 F.3d 1248, 1268-69 (11th Cir. 2015); *Mercatus Grp.,* 641 F.3d at 852.  Report, at 13.  Steward concedes that the Report sets out a "correct statement of the law," but objects that because the statements are alleged to be defamatory, rather than merely false advertising or trade disparagement, it does not apply and they are not immune from antitrust liability.  Objections, at 8-10.

Courts, however, do not make this distinction.  *See Hipsaver, Inc. v. Kiel*, 464 Mass. 517, 521 n. 5, 523 n. 7 (2013) (noting how closely related the elements of the two torts are and that the distinctions between them are narrowing).  Indeed, in *Mercatus Group*, relied on by the

Magistrate Judge, the Seventh Circuit applied the *de minimis* presumption to a statement by the defendant that the plaintiff had violated federal anti-kickback law, and held it did not constitute a predicate for antitrust liability. *Mercatus Group*, 641 F.3d at 850. This is a statement of alleged violation of law no different from those Steward complains about in the allegedly libelous statements it sets out as the basis of its antitrust claim.

Moreover, none of the three cases on which Steward relies in its Objections supports its argument for such a bright line distinction between allegedly libelous statements and allegedly disparaging statements, and are easily distinguishable from the facts here. In *Picker International, Inc. v. Leavitt*, 865 F. Supp. 951 (D. Mass 1994), the plaintiff alleged that defamatory statements to five customers constituted or contributed to exclusionary conduct. 865 F. Supp. at 964. The court did not rule in plaintiff's favor, as Steward suggests, but held that the claim of defamation "did not have sufficient substance to constitute or contribute to a finding of exclusionary conduct." *Id.* The Court held that the statements constituted at most commercial disparagement, and thus were considered to be conditionally privileged. *Id.* Far from announcing a *per se* rule that defamatory statements are anticompetitive, or support an antitrust claim simply because they are alleged to be defamatory, *Picker* is entirely consistent with the Magistrate Judge's reasoning and conclusion here.

*International Travel Arrangers, Inc. v. Western Airlines Inc.,* 623 F.2d 1255, 1268 (8th Cir. 1980), concerned an organized campaign by an airline and its travel agent, involving multiple newspaper ads, repeated radio advertising, mass-mailed letters, and other actions, over an extended period of time, to preserve its monopoly over certain charter flight routes. 623 F.2d at 1260-64. That is a far cry from two isolated instances of publication of single-sentence comments in newspaper articles as is alleged here. Further, the *International Travel* court was

not asked to determine if any of these activities were unreasonable restraints of trade individually.  623 F.2d at 1267.  Thus it does not support Steward's objection that there is a material difference between defamation and disparagement for purposes of antitrust law.

The third case cited by Steward, *West Penn Allegheny Health System, Inc. v. UPMC,* 627 F.3d 85, 109 n. 14 (3rd Cir. 2010), provides no help to Steward's objection.  Objections, at 10.  The court in *West Penn*, in recognizing that it was perhaps "overly broad" when it said in a prior case that "'deception . . . can be of no consequence so far as the Sherman Act is concerned,'" simply noted that "in some cases" defamatory statements "can give rise to antitrust liability, especially when [they are] combined with other anticompetitive acts."  *West Penn,* 627 F.3d at 109 n. 14.  Among the other anticompetitive actions alleged against UPMC in that case were: conspiring with the dominant insurer to drive West Penn out of business; hiring West Penn employees at bloated salaries, admittedly not because it needed the employees but to deprive West Penn of them, and trying to hire others, so that West Penn was forced to raise their salaries to supra-competitive levels to retain them; successfully threatening community hospitals to build satellite facilities next to them unless they stopped referring patients to West Penn; and on several occasions making false statements about West Penn's financial health to potential investors, causing West Penn to pay artificially inflated financing costs.  627 F.3d at 109-110.  The *West Penn* court did not say that defamatory statements were *per se* anticompetitive, simply that in some contexts they *might* be.  And this is a far different context than the situation described in *West Penn*.

The foregoing demonstrates that the Magistrate Judge correctly applied *Mercatus* and related cases in ruling that the complained-of statements did not support an antitrust violation.  Report, at 13.

## II. THE REPORT CORRECTLY RECOMMENDS STEWARD'S TORTIOUS INTERFERENCE CLAIM BE DISMISSED

Count IV of the Complaint purports to allege a state law claim of tortious interference with advantageous contractual relations. As recognized by the Magistrate, this count does not adequately allege a claim upon which relief could be granted under state law, because Steward fails to identify sufficiently a business relationship or contemplated contract of economic benefit — the first element of the tort.[8] Instead, Steward identified only a generalized potential market in which it hopes to compete, *not* any existing advantageous business relationships that were allegedly impaired. Report, at 18-20, citing, among other cases, *Katin v. Nat'l Real Estate Info. Servs., Inc.*, 2009 WL 929554, at *8 (D. Mass. Mar. 31, 2009), and *Laser Labs, Inc. v. ETL Testing Laboratories, Inc.*, 29 F.Supp.2d 21 (D. Mass. 1998).

In its Objections, Steward complains that it has specified the potential market – current patients of Southcoast who might be willing to move to Steward. Objections, at 16. But that is backwards - Steward does not have *any* relationship with those patients, let alone an advantageous business relationship. It has only the generalized – and speculative – potential to lure them away from Southcoast, which does have a business relationship with them, if it enters the market.

Moreover, the Report correctly recognizes and applies the principle that a claim for tortious interference cannot be based on a plaintiff's "general efforts to compete for prospective customers in the market at large." *Katin*, 2009 WL 929554, at *8 (D. Mass. Mar. 31, 2009).

---

[8] The four elements of tortious interference are: (1) a business relationship or contemplated contract of economic benefit; (2) Southcoast's knowledge of such relationship; (3) Southcoast's intentional interference with the relationship through improper motive or means; and (4) Steward's loss of advantage as a direct result of the defendant's conduct. *Swanset Dev. Corp. v. City of Taunton*, 423 Mass. 390, 397, 668 N.E.2d 333, 338 (1996); *Moving and Storage, Inc. v. Panayotov*, 2014 WL 949830, at *3 (D. Mass. Mar. 12, 2014). The first element is at issue here.

13

Report at 18-19.  The Magistrate Judge noted that Steward's allegations were more definite than those in *Katin, Laser Labs* and another case "in that the potential business relationships pertain to a defined geographic region and service," but correctly concluded that they suffered from the "same defects noted by the judges in those cases." Report at 19.  That is, even if more specific geographically and in type of service about the potential customer, Steward still has no relationship with any prospective patient other than mere market possibility.

Steward's attempt to distinguish *Katin* fails.  Objections, at 16-17.  Although Steward specifies a geographically narrower class of potential customers than in *Katin*, *i.e.*, patients who might leave Southcoast's cardiac catheterization facilities in Southeastern Massachusetts, as contrasted with those who might leave the *Katin* defendant's real estate conveyancing businesses anywhere in the Commonwealth, *Katin*, 2009 WL 929554, at *8 n. 14, Steward has no more of a *relationship* with its potential customers than did the plaintiffs in *Katin*.  Steward argues that the *Katin* court distinguished the situation before it from that in *Chemewa Country Golf, Inc. v. Wnuk*, 9 Mass. App, Ct. 506 (1980), as if Steward's situation were more like the latter than the former.  But *Chemewa* provides no support for Steward's objection.  In *Chemewa*, the plaintiff alleged that it had lost members from its own golf club due to defendants' actions, *Katin*, 2006 WL 9295544, at *9, n. 17.  Steward has not alleged that it lost any current or former patients; indeed, it cannot because it did not have any cardiac catheterization patients.  Nor does *Laser Labs*, cited by the Magistrate Judge, provide any support for Steward's objection.  In *Laser Labs*, the plaintiff had sent flyers to prospective customers in North Carolina and received numerous inquiries about its product in response, but the court held that that was not a sufficient relationship.  *Laser Labs*, 29 F.Supp.2d at 23-24.

14

As the Magistrate Judge recognized, even if the allegations here are slightly more specific than those in *Katin*, they still fail the principle set out in *Katin* and *Laser Labs*. That is, the while the class of potential customers may be narrower, there is no relationship beyond the *prospect* of a relationship. Having failed to allege any specific business relationships with which Southcoast has allegedly interfered, Steward's tortious interference claim fails.[9]

## III. THE REPORT CORRECTLY RECOMMENDS THAT THIS COURT DECLINE TO EXERCISE SUPPLEMENTAL JURISDICTION OVER THE REMAINING STATE LAW CLAIMS.

The Report, having recommended dismissal of the only federal claim in this action (and the parallel state antitrust claim), further and correctly recommends that this Court decline to exercise supplemental jurisdiction over the remaining state law claims. Report, at 14-15. Steward's objection provides no reason to overturn that recommendation. Objection, at 17-18.

The Magistrate Judge properly recognized that the general rule is that "[w]here as here, the federal claims are being dismissed at an early stage of the litigation, 'the balance of competing factors ordinarily weigh strongly in favor of declining jurisdiction over state law claims.'" Report, at 15 (*quoting Camelio v. American Fed'n*, 137 F.3d 666, 672 (1st Cir. 1998)). *See also Rivera-Diaz v. Humana Insurance of Puerto Rico, Inc.,* 748 F.3d 387 (1st Cir. 2014). As further noted by the Magistrate Judge, Steward did not "put forth any reason why this Court should not follow the ordinary rule and decline to exercise jurisdiction over the state law claims." Report, at 15.

This case is, as the Report states, truly at an "early stage of the litigation." The case is before this court on a motion to dismiss for failure to state a claim, based in large part on the

---

[9] To the extent the Court is inclined to reject the Magistrate Judge's recommendation that this count be dismissed for failure to state a claim, it should instead decline to exercise supplemental jurisdiction over the claim for the reasons set forth below.

15

assertion of a legal defense, the *Noerr-Pennington* immunity doctrine. There has been no discovery in this matter –indeed Steward itself sought and obtained a stay of all discovery, and claims that there has not even been a Rule 26(f) discovery conference. *See* Steward's Motion to Stay Discovery (Doc. 11), at 17-20.

Nevertheless, Steward claims that this Court "is already familiar with the facts of this case,"[10] and suggests that provides a reason for exercising supplemental jurisdiction. Objections, at 18. That is absurd. All that is before the Court as "facts" are the *allegations* of the Complaint and certain documents attached thereto or from the State Court Action. *See* Report, at 6-8. There has been no discovery, *at Steward's request*, no summary judgment motion practice, and no trial is on the horizon, much less imminent. The parties have invested no time in pretrial discovery because Steward sought and obtained a stay of discovery. Nor have the parties invested time in trial preparation or the like. *Rivera-Diaz*. 748 F.3d at 392. No party will be unfairly prejudiced by the Court's decision not to exercise supplemental jurisdiction over any state law claims that survive Southcoast's motion to dismiss. *Camelio*, 137 F.3d at 672.

Steward also argues that the state law claims are not based on complex or voluminous facts, do not require extensive discovery, and do not present novel or complex issues of state

---

[10] Neither of the cases Steward cites in support of its contention that this Court is "already familiar with the facts," Objections, at 18, and should therefore exercise supplemental jurisdiction is apposite here. In *King v. Kelly Ayotte*, 860 F. Supp.2d 118, 129-30 (D.N.H. 2012), the District Court exercised supplemental jurisdiction over state common law claims that raised "issues similar" to the federal claims to *dismiss* the state claims on the merits, thus serving the interest of judicial economy and the litigants receiving expeditious resolution of the claims, not to allow the state claims to proceed. In *Perez-Traverso v. Hosp. Communitario Buen Samaritano, Inc*, 2014 WL 1320263 (D.P.R. April 1, 2014), the District Court decided to exercise supplemental jurisdiction over all state law claims after dismissing all federal law claims on summary judgment but retaining diversity claims, where the case was four years old, discovery had been complete for some time, the case was ready for trial, defendant's motions for summary judgment on the federal claims had been filed six months after the deadline for dispositive motions, and the lead plaintiff had been diagnosed with cancer. None of these factors is present here.

law.  Objections, at 17.  While the *opposite* of one or more of these might be a reason to decline supplemental jurisdiction, none is a reason to deviate from the general rule and instead *exercise* supplemental jurisdiction over the state law claims.  None of fairness, judicial economy, convenience or comity point to retention of this case in this court.  *Camelio*, 137 F.3d at 672.  This is, therefore, a "usual case," in which the balance of factors "weigh strongly" toward declining to exercise jurisdiction over the remaining state law claims.  *Id.; Rivera-Diaz*, 748 F.3d at 392.  There is absolutely no reason to deviate from the standard rule in this matter.  This Court should adopt the recommendation of the Report and decline to exercise supplemental jurisdiction over any remaining state law claims.  *Camelio*, 137 F.3d at 672 (reversing for abuse of discretion exercise of supplemental jurisdiction over state law claims, dismissing some on merits, where federal claims were dismissed on Rule 12(b)(6) motion well before trial).

## **CONCLUSION**

For the foregoing reasons, this Court should adopt the Magistrate Judge's *Report and Recommendation on Defendant's Motion to Dismiss,* dismiss Counts I, II and IV, and decline to exercise supplemental jurisdiction over any surviving remaining state law claims.

Respectfully submitted,

SOUTHCOAST HEALTH SYSTEM, INC.

By its attorneys,

Dated:  October 6, 2016

　/s/　*John W. Van Lonkhuyzen*
Thomas O. Bean, BBO No. 548072
John W. VanLonkhuyzen, BBO No. 545278
Rachel Wertheimer, BBO No. 625039
VERRILL DANA, LLP
One Boston Place, Suite 1600
Boston, Massachusetts  02108
(617) 309-2600
tbean@verrilldana.com
jvanlonkhuyzen@verrilldana.com
rwertheimer @verrilldana.com
jheidt@verrilldana.com

### **Certificate of Service**

This document was filed electronically on the above date and is available for viewing and downloading from the Court's ECF system.  Service was made on that date on counsel of record for plaintiff through the Court's ECF system.

　/s/　*John W. Van Lonkhuyzen*
John W. Van Lonkhuyzen